RIMON, P.C.
Michael F. Heafey (SBN 153499)
michael.heafey@rimonlaw.com
Zheng Liu (SBN 229311)
zheng.liu@rimonlaw.com
545 Middlefield Road, Suite 250
Menlo Park, California 94025
Telephone: (650) 461-4433
Facsimile: (650) 461-4433

John E. Handy (Admitted *Pro Hac Vice*)
john.handy@rimonlaw.com
484 Westpark Drive, Suite 810
McLean, Virginia 22102
Telephone: (703) 559-7360
Facsimile: (703) 559-7360

Attorneys for Plaintiff LuxCreo Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUXCREO INC.,<br><br>Plaintiff,<br><br>v.<br><br>CARBON, INC.,<br><br>Defendant. | Case No. 3:26-cv-01635-JSC<br><br>**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS


Page

I. NATURE OF ACTION .... 1
II. PARTIES .... 1
A. Plaintiff LuxCreo Inc. .... 1
B. Defendant Carbon, Inc. .... 1
III. JURISDICTION AND VENUE .... 2
A. Subject Matter Jurisdiction .... 2
B. Declaratory Judgment Jurisdiction .... 2
C. Personal Jurisdiction .... 2
IV. FACTS .... 3
A. Declaratory Judgment Facts .... 3
1. Letter From Daralyn J. Durie, Morrison Forrester .... 3
2. Letter From Karrie Rexford, Carbon, Inc. .... 4
3. Letter From Kathi Vidal, Winston Strawn (Now Winston Taylor) .... 5
4. Email From Dustin Edwards .... 6
B. Patents Defendant Has Asserted Against Plaintiff .... 7
C. Defendant's Relevant Founders, Directors, Officers, And Agents .... 7
1. Joseph DeSimone .... 7
2. Jason Rolland .... 10
3. Lori Herman .... 11
D. The Asserted Patents .... 12
1. U.S. Patent No. 9,205,601 .... 12
2. U.S. Patent No. 9,453,142 .... 13
3. U.S. Patent No. 9,498,920 .... 14
4. U.S. Patent No. 9,598,606 .... 16
5. U.S. Patent No. 9,676,963 .... 17
7. U.S. Patent No. 10,144,181 .... 19
8. U.S. Patent No. 10,240,066 .... 20
9. U.S. Patent No. 10,471,699 .... 21
10. U.S. Patent No. 10,647,880 .... 22
11. U.S. Patent No. 10,792,856 .... 24
12. U.S. Patent No. 10,899,868 .... 25

13. U.S. Patent No. 11,235,516 ........ 26
14. U.S. Patent No. 11,358,342 ........ 27
15. U.S. Patent No. 12,151,073 ........ 28
16. U.S. Patent No. 10,016,938 ........ 29
17. U.S. Patent No. 12,629,895 ........ 30

E. Patent Families ........ 31
1. The “Continuous Liquid Interphase” Family ........ 31
2. The “Dual Cure” Family ........ 32
a. Priority Date for Select Claim Terms Related To Dual Cure Materials ........ 33
b. Non-Asserted Patents In The Dual Cure Family ........ 33

F. Significant Prior Art ........ 34
1. U.S. Patent No. 8,372,330 ........ 34
2. U.S. Patent No. 5,122,441 ........ 35
3. "High-Performance UV-Curable Urethane Acrylates Via Deblocking Chemistry," By Sachin Velankar, Jose Pazos, And Stuart L. Cooper (Velankar) ........ 36
4. "Effect Of the Diisocyanate On the Structure And Properties Of Polyurethane Acrylate Prepolymers," By Ph. Barbeau, J. F. Gérard, B. Magny, And J. P. Pascault (Barbeau) ........ 36
5. U.S. Patent No. 8,158,728 ........ 37
6. U.S. Patent Application Publication No. US 2007/0178133 ........ 38

G. Plaintiff Has No Burden To Plead Non-Infringement Beyond Generally ........ 39
H. Claims Of The Asserted Patents Are Invalid ........ 39
I. The ‘601 Patent ........ 40
1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘601 Patent ........ 40
2. Claims Of The ‘601 Patent Are Invalid ........ 40
J. The ‘142 Patent ........ 41
1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘142 Patent ........ 41
2. Claims Of The ‘142 Patent Are Invalid ........ 41
K. The ‘920 Patent ........ 41
1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘920 Patent ........ 42
2. Claims Of The ‘920 Patent Are Invalid ........ 42

L. The ‘606 Patent ....................................................................................42

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘606 Patent ....................................................43

2. Claims Of The ‘606 Patent Are Invalid ..................................................43

M. The ‘963 Patent ....................................................................................44

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes or Has Infringed The ‘963 Patent ....................................................44

2. Claims Of The ‘963 Patent Are Invalid ..................................................44

a. Invalidity By The ‘728 Patent ......................................................44

b. Invalidity By Rolland ‘133 ..........................................................45

3. The ‘963 Patent Is Unenforceable For Inequitable Conduct In Its Prosecution ............................................................................................45

a. The Prosecution Of The ‘963 Patent ............................................46

i. The ‘728 Patent ...........................................................47

ii. Rolland ‘133 ...............................................................49

iii. December 31, 2015 Information Disclosure Statement .....52

iv. January 6, 2016 Information Disclosure Statement ...........52

v. January 26, 2016 Information Disclosure Statement .........56

vi. January 27, 2016 Information Disclosure Statement .........56

vii. February 22, 2016 Information Disclosure Statement .......58

viii. March 23, 2016 Information Disclosure Statement ...........58

ix. April 29, 2016 Information Disclosure Statement .............59

x. May 17, 2016 Office Action ............................................59

xi. August 16, 2016 Amendment And Response ....................59

xii. August 16, 2016 Information Disclosure Statement ..........60

xiii. September 13, 2016 Office Action ...................................61

xiv. October 6, 2016 Information Disclosure Statement ..........61

xv. October 10, 2016 Response .............................................62

xvi. October 21, 2016 Information Disclosure Statement .........62

xvii. October 26, 2016 Information Disclosure Statement .........63

xviii. November 10, 2016 Information Disclosure Statement .....63

xix. January 25, 2017 Office Action .......................................63

xx. February 15, 2017 Amendment And Response .................64

xxi. February 15, 2017 Information Disclosure Statement .......64

xxii. February 17, 2017 Notice Of Allowance ..........................64

xxiii. April 11, 2017 Information Disclosure Statement after Notice of Allowance ........ 65

xxiv. The '728 Patent And Rolland '133 Disclose Elements Used To Allow Claims ........ 67

b. DeSimone's Inequitable Conduct With Respect To The '728 Patent ........ 70

c. Rolland's Inequitable Conduct With Respect To The '728 Patent 71

d. The '728 Patent Is But-For Material To The '963 Patent ........ 72

e. DeSimone's Inequitable Conduct With Respect To Rolland '133 79

f. Rolland's Inequitable Conduct With Respect To Rolland '133 ........ 81

g. Rolland '133 Is But For Material To The '963 Patent ........ 82

h. DeSimone Recognized Materiality Of The '728 Patent ........ 89

i. Rolland Recognized Materiality Of The '728 Patent ........ 89

j. DeSimone Intended To Deceive The Patent Office By Not Disclosing The '728 Patent ........ 90

k. Rolland Intended To Deceive The Patent Office By Not Disclosing The '728 Patent ........ 90

l. DeSimone Recognized Materiality Of Rolland '133 ........ 90

m. Rolland Recognized Materiality Of Rolland '133 ........ 91

n. DeSimone Intended To Deceive The Patent Office By Not Disclosing Rolland '133 ........ 91

o. Rolland Intended To Deceive The Patent Office By Not Disclosing Rolland '133 ........ 92

p. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office ........ 92

N. The '164 Patent ........ 93

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '164 Patent ........ 93

2. Claims Of The '164 Patent Are Invalid ........ 93

O. The '181 Patent ........ 94

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '181 Patent ........ 94

2. Claims Of The '181 Patent Are Invalid ........ 95

P. The '066 Patent ........ 95

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed the '066 Patent ........ 95

2. Claims Of The '066 Patent Are Invalid ........ 96

Q. The ‘699 Patent ..... 96
1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘699 Patent ..... 96
2. Claims Of The ‘699 Patent Are Invalid ..... 97
R. The ‘880 Patent ..... 97
1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘880 Patent ..... 97
2. Claims Of The ‘880 Patent Are Invalid ..... 98
a. Invalidity By The ‘728 Patent ..... 98
3. The ‘880 Patent Is Unenforceable for Inequitable Conduct In Its Prosecution ..... 99
a. The Prosecution Of The ‘880 Patent ..... 100
i. The ‘728 Patent ..... 100
ii. “Excessively Lengthy Information Disclosure Statement” ..... 103
iii. December 11, 2019 Information Disclosure Statement ..... 105
iv. January 16, 2020 Notice of Allowance ..... 109
v. January 21, 2020 Information Disclosure Statement And Amendment After Notice Of Allowance ..... 110
vi. January 31, 2020 Information Disclosure Statement ..... 110
vii. February 10, 2020 Notice of Allowance ..... 110
b. DeSimone’s Inequitable Conduct With Respect To The ‘728 Patent ..... 112
c. Rolland’s Inequitable Conduct With Respect To The ‘728 Patent ..... 114
d. The ‘728 Patent Is But-For Material To The ‘880 Patent ..... 115
e. DeSimone Recognized Materiality Of The ‘728 Patent ..... 121
f. Rolland Recognized Materiality Of The ‘728 Patent ..... 122
g. DeSimone Intended To Deceive The Patent Office By Not Disclosing The ‘728 Patent ..... 122
h. Rolland Intended To Deceive The Patent Office By Not Disclosing The ‘728 Patent ..... 122
i. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office ..... 123
S. The ‘856 Patent ..... 123
1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘856 Patent ..... 123

2. Claims Of The ‘856 Patent Are Invalid ..... 124

T. The ‘868 Patent ..... 124

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes or Has Infringed the ‘868 Patent ..... 125

2. Claims Of The ‘868 Patent Are Invalid ..... 125

a. Invalidity By The ‘728 Patent ..... 126

3. The ‘868 Patent Is Unenforceable for Inequitable Conduct In Its Prosecution ..... 126

a. The Prosecution of the ‘868 Patent ..... 127

i. The ‘728 Patent ..... 127

ii. “Excessively Lengthy Information Disclosure Statement” ..... 130

iii. February 27, 2020 Information Disclosure Statement ..... 132

iv. April 30, 2020 Information Disclosure Statement ..... 138

v. May 11, 2020 Office Action ..... 138

vi. August 7, 2020 Response ..... 138

vii. August 7, 2020 Information Disclosure Statement ..... 139

viii. August 26, 2020 Notice of Allowance ..... 140

b. DeSimone’s Inequitable Conduct With Respect To The ‘728 Patent ..... 142

c. Rolland’s Inequitable Conduct With Respect To The ‘728 Patent ..... 143

d. The ‘728 Patent Is But-For Material To The ‘868 Patent ..... 144

e. DeSimone Recognized Materiality Of The ‘728 Patent ..... 150

f. Rolland Recognized Materiality Of The ‘728 Patent ..... 151

g. DeSimone Intended To Deceive The Patent Office By Not Disclosing The ‘728 Patent ..... 151

h. Rolland Intended To Deceive The Patent Office By Not Disclosing The ‘728 Patent ..... 152

i. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office ..... 152

U. The ‘516 Patent ..... 153

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed the ‘516 Patent ..... 153

2. Claims Of The ‘516 Patent Are Invalid ..... 154

V. The ‘342 Patent ..... 154

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '342 Patent ..... 154
2. Claims Of The '342 Patent Are Invalid ..... 155
   a. Invalidity based on the '728 Patent ..... 155
   b. Invalidity based on Rolland '133 ..... 155
3. The '342 Patent is Unenforceable For Inequitable Conduct In Its Prosecution ..... 156
   a. The Prosecution Of The '342 Patent ..... 157
      i. The '728 Patent ..... 157
      ii. Rolland '133 ..... 160
      iii. August 30, 2019 Information Disclosure Statement ..... 164
      iv. September 24, 2019 Information Disclosure Statement ..... 168
      v. January 6, 2020 Information Disclosure Statement ..... 171
      vi. February 4, 2020 Information Disclosure Statement ..... 172
      vii. June 24, 2020 Information Disclosure Statement ..... 172
      viii. July 20, 2020 Information Disclosure Statement ..... 173
      ix. October 22, 2020 Information Disclosure Statement ..... 173
      x. November 24, 2020 Information Disclosure Statement ..... 174
      xi. January 13, 2021 Information Disclosure Statement ..... 174
      xii. February 1, 2021 Information Disclosure Statement ..... 175
      xiii. February 26, 2021 Information Disclosure Statement ..... 175
      xiv. March 26, 2021 Information Disclosure Statement ..... 176
      xv. April 28, 2021 Office Action ..... 176
      xvi. May 5, 2021 Information Disclosure Statement ..... 176
      xvii. June 16, 2021 Information Disclosure Statement ..... 177
      xviii. July 27, 2021 Amendment and Response ..... 177
      xix. September 10, 2021 Information Disclosure Statement ..... 177
      xx. September 23, 2021 Information Disclosure Statement ..... 178
      xxi. October 12, 2021 Information Disclosure Statement ..... 178
      xxii. October 26, 2021 Office Action ..... 179
      xxiii. November 2, 2021 Information Disclosure Statement ..... 179
      xxiv. December 16, 2021 Information Disclosure Statement ..... 179
      xxv. December 23, 2021 Information Disclosure Statement ..... 180
      xxvi. January 12, 2022 Information Disclosure Statement ..... 180

xxvii. January 25, 2022 Response ... 181

xxviii. February 15, 2022 Notice of Allowance ... 181

b. DeSimone's Inequitable Conduct With Respect To The '728 Patent ... 184

c. Rolland's Inequitable Conduct With Respect To The '728 Patent ... 185

d. The '728 Patent Is But-For Material To The '342 Patent ... 186

e. DeSimone's Inequitable Conduct With Respect To Rolland '133 ... 195

f. Rolland's Inequitable Conduct With Respect To Rolland '133 ... 196

g. Rolland '133 Is But-For Material To The '342 Patent ... 197

h. DeSimone Recognized Materiality Of The '728 Patent ... 205

i. Rolland Recognized Materiality Of The '728 Patent ... 206

j. DeSimone Intended To Deceive The Patent Office By Not Disclosing The '728 Patent ... 206

k. Rolland Intended To Deceive The Patent Office By Not Disclosing The '728 Patent ... 206

l. DeSimone Recognized Materiality Of Rolland '133 ... 207

m. Rolland Recognized Materiality Of Rolland '133 ... 207

n. DeSimone Intended To Deceive The Patent Office By Not Disclosing Rolland '133 ... 208

o. Rolland Intended To Deceive The Patent Office By Not Disclosing Rolland '133 ... 208

p. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office ... 209

W. The '073 Patent ... 210

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed the '073 Patent ... 210

2. Claims Of The '073 Patent Are Invalid ... 210

X. The '938 Patent ... 211

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed the '938 Patent ... 211

2. Claims Of The '938 Patent Are Invalid ... 211

Y. The '895 Patent ... 212

1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '895 Patent ... 212

2. Claims Of The '895 Patent Are Invalid ... 213

3. The ‘895 Patent Is Unenforceable for Inequitable Conduct In Its Prosecution ....... 213

a. The Prosecution Of The ‘895 Patent ....... 214

i. The ‘728 Patent ....... 215

ii. “Excessively Lengthy Information Disclosure Statement” ....... 218

iii. November 8, 2023 Information Disclosure Statement ....... 219

iv. January 10, 2024 Information Disclosure Statement ....... 223

v. February 12, 2024 Information Disclosure Statement ....... 224

vi. April 17, 2024 Information Disclosure Statement ....... 224

vii. June 6, 2024 Information Disclosure Statement ....... 224

viii. August 15, 2024 Information Disclosure Statement ....... 225

ix. October 10, 2024 Information Disclosure Statement ....... 225

x. November 11, 2024 Information Disclosure Statement ....... 225

xi. February 2, 2025 Information Disclosure Statement ....... 226

xii. April 3, 2025 Information Disclosure Statement ....... 226

xiii. June 25, 2025 Information Disclosure Statement ....... 226

xiv. August 14, 2025 Information Disclosure Statement ....... 227

xv. August 27, 2025 Office Action ....... 227

xvi. November 26, 2025 Response ....... 227

xvii. November 26, 2025 Information Disclosure Statement ....... 228

xviii. January 16, 2026 Notice of Allowance ....... 228

xix. January 19, 2026 Information Disclosure Statement ....... 228

xx. February 4, 2026 Corrected Notice Of Allowance ....... 228

xxi. March 13, 2026 Information Disclosure Statement ....... 229

xxii. March 18, 2026 Corrected Notice Of Allowance ....... 229

b. DeSimone’s Inequitable Conduct With Respect To The ‘728 Patent ....... 231

c. Rolland’s Inequitable Conduct With Respect To The ‘728 Patent ....... 232

d. The ‘728 Patent Is But-For Material To The ‘895 Patent ....... 234

e. DeSimone Recognized Materiality Of The ‘728 Patent ....... 242

f. Rolland Recognized Materiality Of The ‘728 Patent ....... 242

g. DeSimone Intended To Deceive The Patent Office By Not Disclosing The ‘728 Patent ....... 242

h. Rolland Intended To Deceive The Patent Office By Not Disclosing The ‘728 Patent ....... 243

i. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office ....... 243

V. LEGAL CLAIMS ....... 244

A. The ‘601 Patent ....... 244

1. Legal Claim I Non-Infringement Of The ‘601 Patent ....... 244

2. Legal Claim II Invalidity Of Claims Of The ‘601 Patent ....... 244

B. The ‘142 Patent ....... 245

1. Legal Claim III Non-Infringement Of The ‘142 Patent ....... 245

2. Legal Claim IV Invalidity Of Claims Of The ‘142 Patent ....... 245

C. The ‘920 Patent ....... 245

1. Legal Claim V Non-Infringement Of The ‘920 Patent ....... 245

2. Legal Claim VI Invalidity Of Claims Of The ‘920 Patent ....... 246

D. The ‘606 Patent ....... 246

1. Legal Claim VII Non-Infringement Of The ‘606 Patent ....... 246

2. Legal Claim VIII Invalidity Of Claims Of The ‘606 Patent ....... 247

E. The ‘963 Patent ....... 247

1. Legal Claim IX Non-Infringement Of The ‘963 Patent ....... 247

2. Legal Claim X Invalidity Of Claims Of The ‘963 Patent ....... 248

a. Invalidity based on the ‘728 Patent ....... 248

b. Invalidity based on Rolland ‘133 ....... 248

3. Legal Claim XI Unenforceability Of The ‘963 Patent For Inequitable Conduct ....... 248

a. The ‘728 Patent Was But-For Material To The ‘963 Patent ....... 249

b. Rolland ‘133 Was But-For Material To The ‘963 Patent ....... 249

c. DeSimone Specifically Intended To Deceive The Patent Office ....... 250

i. DeSimone Owed A Duty To The Patent Office ....... 250

ii. DeSimone Knew About The ‘728 Patent ....... 250

iii. DeSimone Recognized The Materiality Of The ‘728 Patent ....... 250

iv. DeSimone Deliberately Withheld The ‘728 Patent From The Patent Office ....... 251

d. DeSimone Specifically Intended To Deceive The Patent Office ....... 251

i. DeSimone Owed A Duty To The Patent Office ....... 251

ii. DeSimone Knew About Rolland ‘133 ............................251

iii. DeSimone Recognized The Materiality of Rolland ‘133 .251

iv. DeSimone Deliberately Withheld Rolland ‘133 From The Patent Office ....................................................252

e. Rolland Specifically Intended To Deceive The Patent Office .....252

i. Rolland Owed A Duty To The Patent Office ..................253

ii. Rolland Knew About The ‘728 Patent ............................253

iii. Rolland Recognized The Materiality Of The ‘728 Patent 253

iv. Rolland Deliberately Withheld The ‘728 Patent From The Patent Office ....................................................253

f. Rolland Specifically Intended To Deceive The Patent Office .....254

i. Rolland Owed A Duty To The Patent Office ..................254

ii. Rolland Knew About Rolland ‘133 ................................254

iii. Rolland Recognized The Materiality of Rolland ‘133 .....254

iv. Rolland Deliberately Withheld Rolland ‘133 From The Patent Office ....................................................255

F. The ‘164 Patent .......................................................................................255

1. Legal Claim XII Non-Infringement Of The ‘164 Patent.........................255

2. Legal Claim XIII Invalidity Of Claims Of The ‘164 Patent ...................256

G. The ‘181 Patent .......................................................................................256

1. Legal Claim XIV Non-Infringement Of The ‘181 Patent.......................256

2. Legal Claim XV Invalidity Of Claims Of The ‘181 Patent ....................256

H. The ‘066 Patent .......................................................................................257

1. Legal Claim XVI Non-Infringement Of The ‘066 Patent.......................257

2. Legal Claim XVII Invalidity Of Claims Of The ‘066 Patent..................257

I. The ‘699 Patent .......................................................................................258

1. Legal Claim XVIII Non-Infringement Of The ‘699 Patent ....................258

2. Legal Claim XIX Invalidity Of Claims Of The ‘699 Patent ...................258

J. The ‘880 Patent .......................................................................................258

1. Legal Claim XX Non-Infringement Of The ‘880 Patent ........................258

2. Legal Claim XXI Invalidity Of Claims Of The ‘880 Patent ...................259

3. Legal Claim XXII Unenforceability Of The ‘880 Patent For Inequitable Conduct ....................................................................................259

a. The ‘728 Patent Was But-For Material To The ‘963 Patent ........259

b. DeSimone Specifically Intended To Deceive The Patent Office .260

i. DeSimone Owed A Duty To The Patent Office ..... 260
ii. DeSimone Knew About The '728 Patent ..... 260
iii. DeSimone Recognized The Materiality Of The '728 Patent ..... 260
iv. DeSimone Deliberately Withheld The '728 Patent From The Patent Office ..... 261
c. Rolland Specifically Intended To Deceive The Patent Office ..... 261
i. Rolland Owed A Duty To The Patent Office ..... 261
ii. Rolland Knew About The '728 Patent ..... 262
iii. Rolland Recognized The Materiality Of The '728 Patent ..... 262
iv. Rolland Deliberately Withheld The '728 Patent From The Patent Office ..... 262
K. The '856 Patent ..... 263
1. Legal Claim XXIII Non-Infringement Of The '856 Patent ..... 263
2. Legal Claim XXIV Invalidity Of Claims Of The '856 Patent ..... 263
L. The '868 Patent ..... 264
1. Legal Claim XXV Non-Infringement Of The '868 Patent ..... 264
2. Legal Claim XXVI Invalidity Of Claims Of The '868 Patent ..... 264
3. Legal Claim XXVII Unenforceability Of The '868 Patent For Inequitable Conduct ..... 264
a. The '728 Patent Was But-For Material To The '868 Patent ..... 265
b. DeSimone's Specifically Intended To Deceive The Patent Office ..... 265
i. DeSimone Owed A Duty To The Patent Office ..... 265
ii. DeSimone Knew About The '728 Patent ..... 266
iii. DeSimone Recognized The Materiality Of The '728 Patent ..... 266
iv. DeSimone Deliberately Withheld The '728 Patent From The Patent Office ..... 266
c. Rolland's Specifically Intended To Deceive The Patent Office ..... 267
i. Rolland Owed A Duty To The Patent Office ..... 267
ii. Rolland Knew About The '728 Patent ..... 267
iii. Rolland Recognized The Materiality Of The '728 Patent ..... 267
iv. Rolland Deliberately Withheld The '728 Patent From The Patent Office ..... 268
M. The '516 Patent ..... 268

1. Legal Claim XXVIII Non-Infringement Of The ‘516 Patent ..................268
2. Legal Claim XXIX Invalidity Of Claims Of The ‘516 Patent .................269

N. The ‘342 Patent ..................269
1. Legal Claim XXX Non-Infringement Of The ‘342 Patent ......................269
2. Legal Claim XXXI Invalidity Of Claims Of The ‘342 Patent .................269
3. Legal Claim XXXII Unenforceability Of The ‘342 Patent For Inequitable Conduct ..................270
a. The ‘728 Patent Was But-For Material To The ‘342 Patent ........270
b. Rolland ‘133 Was But-For Material To The ‘342 Patent............270
c. DeSimone Specifically Intended To Deceive The Patent Office .271
i. DeSimone Owed A Duty To The Patent Office...............271
ii. DeSimone Knew About The ‘728 Patent .........................271
iii. DeSimone Recognized The Materiality Of The ‘728 Patent ..................271
iv. DeSimone Deliberately Withheld The ‘728 Patent From The Patent Office ..................272
d. DeSimone Specifically Intended To Deceive The Patent Office .272
i. DeSimone Owed A Duty To The Patent Office...............272
ii. DeSimone Knew About Rolland ‘133 ............................272
iii. DeSimone Recognized The Materiality of Rolland ‘133 .273
iv. DeSimone Deliberately Withheld Rolland ‘133 From The Patent Office..................274
e. Rolland Specifically Intended To Deceive The Patent Office .....274
i. Rolland Owed A Duty To The Patent Office..................274
ii. Rolland Knew About The ‘728 Patent ............................274
iii. Rolland Recognized The Materiality Of The ‘728 Patent 274
iv. Rolland Deliberately Withheld The ‘728 Patent From The Patent Office..................275
f. Rolland Specifically Intended To Deceive The Patent Office .....275
i. Rolland Owed A Duty To The Patent Office..................275
ii. Rolland Knew About Rolland ‘133.................................276
iii. Rolland Recognized The Materiality of Rolland ‘133 .....276
iv. Rolland Deliberately Withheld Rolland ‘133 From The Patent Office..................277

O. The ‘073 Patent ..................277
1. Legal Claim XXXIII Non-Infringement Of The ‘073 Patent .................277

2. Legal Claim XXXIV Invalidity Of Claims Of The '073 Patent .............. 278

P. The '895 Patent .............. 278

1. Legal Claim XXXV Non-Infringement Of The '895 Patent .............. 278

2. Legal Claim XXXVI Invalidity Of Claims Of The '895 Patent .............. 278

3. Legal Claim XXXVII Unenforceability Of The '895 Patent For Inequitable Conduct .............. 279

a. The '728 Patent Was But-For Material To The '895 Patent .............. 279

b. DeSimone's Specifically Intended To Deceive The Patent Office .............. 279

i. DeSimone Owed A Duty To The Patent Office .............. 279

ii. DeSimone Knew About The '728 Patent .............. 280

iii. DeSimone Recognized The Materiality Of The '728 Patent .............. 280

iv. DeSimone Deliberately Withheld The '728 Patent From The Patent Office .............. 280

c. Rolland Specifically Intended To Deceive The Patent Office .............. 281

i. Rolland Owed A Duty To The Patent Office .............. 281

ii. Rolland Knew About The '728 Patent .............. 281

iii. Rolland Recognized The Materiality Of The '728 Patent 281

iv. Rolland Deliberately Withheld The '728 Patent From The Patent Office .............. 282

Q. The '938 Patent .............. 282

1. Legal Claim XXXVIII Non-Infringement Of The '938 Patent .............. 282

2. Legal Claim XXXIX Invalidity Of Claims Of The '938 Patent .............. 283

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff brings this Amended Complaint against Defendant Carbon, Inc. who, on June 18, 2026, moved to dismiss the Original Complaint (Dkt. No. 24).

Plaintiff complains against Defendant:

## I. NATURE OF ACTION

1. This is an action for declaratory judgment, 28 U.S.C. sections 2201–2202, that Defendant cannot carry its burden that Plaintiff has infringed or is infringing any of the Asserted Patents, 35 U.S.C. section 282(b), that claims of the Asserted Patents are invalid, 35 U.S.C. sections 101, 102, 103 and 112, and that at least Asserted Patents Nos. 9,676,963; 10,647,880; 10,899,868; 11,358,342; and 12,629,895 are unenforceable for inequitable conduct.

## II. PARTIES

### A. Plaintiff LuxCreo Inc.

2. Plaintiff is a corporation organized and existing under the laws of the State of Delaware with a principal place of business and corporate headquarters at 350 W. Ontario Street, Chicago, Illinois 60654. Plaintiff is involved with developing systems and devices for additive manufacturing, also known as 3D Printing. Plaintiff works with systems for additively manufacturing dental devices that help design, create, and deliver same-day treatments that enhance patients’ smiles, health, and well-being.

### B. Defendant Carbon, Inc.

3. According to public records, Defendant is a corporation organized and existing under the laws of the State of Delaware and maintains a principal place of business and corporate headquarters at 1089 Mills Way, Redwood City, California. According to records that the California Secretary of State maintains, Carbon, Inc. has done business as Carbon3D, Inc.

4. The Defendant's co-founders include Joseph DeSimone, Steve Nelson, Edward Samulski, Alexander Ermoshkin, and Nikita Ermoshkin.

5. Defendant designs, develops, manufactures, and sells systems and services for manufacturing three dimensional objects by additive manufacturing including soles and inner soles for athletic footwear.

## III. JURISDICTION AND VENUE

6. Subject matter jurisdiction, declaratory judgment jurisdiction, personal jurisdiction, and venue are all proper in this Court.

### A. Subject Matter Jurisdiction

7. Subject matter jurisdiction exists in this Court under 28 U.S.C. sections 1331 and 1338(a) because this action arises under the patent laws of the United States and concerns the parties' respective rights and obligations under the Asserted Patents within the meaning of 35 U.S.C. section 1 *et seq*.

### B. Declaratory Judgment Jurisdiction

8. This Complaint seeks declaratory relief. This Court has jurisdiction to grant such relief pursuant to the Declaratory Judgment Act, 28 U.S.C. sections 2201–2202 because Defendant has made explicit, detailed charges of patent infringement, including "willful infringement," in writing, asserting that Plaintiff's devices, products, and methods infringe the Asserted Patents.

9. Plaintiff contends that Defendant cannot carry its burden that Plaintiff has or is infringing any of the Asserted Patents, directly or indirectly, literally or under the doctrine of equivalents.

10. Plaintiff also contends that the Asserted Patents' claims are invalid under at least 35 U.S.C. sections 101, 102, 103, and 112.

11. Plaintiff further contends that Asserted Patents Nos. 9,676,963; 10,647,880; 10,899,868; 11,358,342; and 12,629,895 are unenforceable for inequitable conduct under federal decisional law.

12. There is an actual case or controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

### C. Personal Jurisdiction

13. This Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters and principal place of business in Redwood City, California and because Defendant regularly transacts business in California. Defendant has registered with the

California Secretary of State to do business in California and has designated a registered agent in California.

**D. <u>Venue</u>**

14. Venue is proper in this Court pursuant to 28 U.S.C. section 1391(b) because Defendant resides in this District by maintaining its principal place of business and corporate headquarters in Redwood City, California – within the Northern District of California.

15. In addition, a substantial part of the events giving rise to this action occurred in the Northern District of California as Defendant's attorneys have transmitted letters from their offices in San Francisco, California or Menlo Park, California that accuse Plaintiff of infringing the Asserted Patents. Defendant addressed the first of its accusatory letters to Plaintiff's chief executive officer at an address in Belmont, California.

## IV. <u>FACTS</u>

### A. <u>Declaratory Judgment Facts</u>

16. This Court possesses declaratory judgment jurisdiction because at least by a series of three letters and one email, Defendant made explicit charges of patent infringement, including willful infringement, and identified accused products.

#### 1. Letter From Daralyn J. Durie, Morrison Forrester

17. On October 25, 2023, an attorney, who identified herself as Daralyn J. Durie of the law firm Morrison Forrester, wrote to Mike Yang, Plaintiff's chief executive officer.

18. Ms. Durie's letter stated that she represented Carbon, Inc. and that:

> based on <u>our preliminary analysis, including an inspection of LuxCreo's printer, LuxCreo, Inc. and/or its affiliates (collectively, "LuxCreo") has infringed and is infringing Carbons patents by making, using, selling, and or/offering for sale in the United States or importing into the United States products that embody or that are produced using one or more of Carbon's patented inventions or by contributing to or inducing such infringement</u>.

Durie Letter (emphasis added) (a copy of Ms. Durie's letter is attached as **Exhibit A** hereto)[1]. Ms. Durie's letter identified specific LuxCreo products that Carbon accused of infringement including LuxCreo's EM+23 resin and products made from such resin. Durie Letter.

---

[1] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

19. Ms. Durie's letter identified specific patents that Defendant alleges Plaintiff infringes:

| | |
|---|---|
| U.S. Patent No. 9,205,601 | U.S. Patent No. 10,144,181 |
| U.S. Patent No. 9,453,142 | U.S. Patent No. 10,471,699 |
| U.S. Patent No. 9,498,920 | U.S. Patent No. 10,647,880 |
| U.S. Patent No. 9,598,606 | U.S. Patent No. 10,792,856 |
| U.S. Patent No. 9,676,963 | U.S. Patent No. 11,235,516 |
| U.S. Patent No. 9,982,164 | U.S. Patent No. 11,358,342 |
| U.S. Patent No. 10,240,066 | |

Ms. Durie's letter concluded with a specific and unambiguous threat of litigation "Carbon intends to pursue litigation":

> We expect that further analysis would show that additional Carbon patents are implicated by LuxCreo's activities. Please immediately cease all infringing activities, including (a) the manufacture, use, sale, offer for sale, and importation of any and all printers incorporating Carbon's patented CLIP technology, (b) the sale of LuxCreo'sEM+23 resin, and (c) the manufacture, use, sale, offer for sale, and importation of any and all products made using LuxCreo's EM+23 resin. **If LuxCreo refuses to do so, Carbon intends to pursue litigation to address LuxCreo's ongoing infringement of its patents**. Given the high degree of similarity between LuxCreo's products and Carbon's patented materials, apparatuses, and methods, Carbon is confident that it will prevail.

Durie Letter (emphasis added).

**2. Letter From Karrie Rexford, Carbon, Inc.**

20. On March 21, 2025, an attorney who identified herself as Karrie Rexford the Senior Vice President and General Counsel at Carbon, Inc., wrote to Mr. Yang and to Tao Feng, Plaintiff's chief intellectual property officer. Rexford Letter (emphasis added) (a copy of Ms. Rexford's letter is attached as **Exhibit B** hereto)[2].

21. Ms. Rexford's letter included a charge of infringement:

> Carbon maintains that LuxCreo, Inc. ('LuxCreo') has infringed, and is infringing, several of Carbon's patents, as detailed in the Notification Letter. Accordingly, Carbon again demands that LuxCreo immediately cease all infringing activities, including (a) the manufacture, use, sale, offer for sale, and importation of any and all printers incorporating Carbon's patented technology, (b) the sale of LuxCreo's

[2] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

> EM+23 resin and any other resin incorporating Carbon's patented technology, and (c) the manufacture, use, sale, offer for sale, and importation of any and all products made using LuxCreo's EM+23 resin or any other resin incorporating Carbon's patented technology.

Rexford Letter. Ms. Rexford's letter also identified accused products "printers" and "EM+23 resin" and identified "Exemplary Patents" that LuxCreo accused Carbon of infringing:

> Attached are claim charts for exemplary claims of four different U.S. patents being infringed by LuxCreo, namely U.S. Patent Nos. 9,598,606; 10,647,880; 11,235,516; and 12,151,073 ('Exemplary Patents')."

*Id* (emphasis added). Ms. Rexford's letter attached claim charts that identified accused products including "LuxCreo Insole sold by LuxCreo direct to consumers," "Porsche Design 3D MTRX II Shoe sold by Puma," "Porsche Design 3D MTRX Trainers Shoe sold by Porsche," and "ActiBreeze 3D Sandal sold by Asics;" Plaintiff attaches the claim charts hereto as **Exhibit C**.

### 3. Letter From Kathi Vidal, Winston Strawn (Now Winston Taylor)

22. On December 12, 2025, an attorney, who identified herself as Kathi Vidal of the law firm Winston Strawn (now Winston Taylor), wrote to Mr. Yang and to Ms. Feng. Ms. Vidal began her letter:

> I have been retained by Carbon, Inc. ("Carbon") due to your continuing **willful infringement** of Carbon's intellectual property . . ..

Vidal Letter (emphasis added) (a copy of Ms. Vidal's letter is attached as **Exhibit D** hereto)[3]. Ms. Vidal's letter included a specific and unambiguous charge of "willful infringement." Ms. Vidal's letter restated the patents stated in Ms. Durie's letter except for three patents:

| | |
|---|---|
| U.S. Patent No. 9,676,963 | U.S. Patent No. 9,982,164 |
| U.S. Patent No. 10,792,856 | |

23. Ms. Vidal's letter included two patents not stated in Ms. Durie's letter:

| | |
|---|---|
| U.S. Patent No. 11,235,516 | U.S. Patent No. 12,151,073 |

24. Ms. Vidal's letter identified accused products and included a charge of infringement:

> Exemplary infringing activities include without limitation infringement of the '073, '606, '516, and '880 Patents by manufacturing, using, selling, offering for

[3] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

sale, and/or importing the insoles in the following products:

- LuxCreo Insole sold by LuxCreo direct to consumers
- Porsche Design 3D MTRX II Shoe sold by Puma
- Porsche Design 3D MTRX Trainers Shoe sold by Porsche
- ActiBreeze Hybrid Sandal 2 sold by Asics

Vidal Letter (emphasis added).

#### 4. Email From Dustin Edwards

25. On June 11, 2026, Dustin Edwards, who identified himself as a partner at Winston Taylor and counsel for Defendant, emailed Michael Heafey, counsel for Plaintiff.

26. Mr. Edwards' email accused Plaintiff of infringing U.S. Patent No. 12,629,895 (the "'895 Patent"):

> Carbon intends to assert a counterclaim for infringement of attached U.S. Patent No. 12,629,895 (the "'895 Patent"), which recently issued on May 19, 2026. For the reasons articulated in Carbon's letters dated October 25, 2023, March 21, 2025, and December 12, 2025, including as reflected in the March 21, 2025 exemplary claim chart for like method claim 1 of the U.S. Patent No. 9,598,606, Carbon maintains that LuxCreo is infringing, directly and/or indirectly, at least claim 1 of the '895 Patent through using the infringing method (e.g., via using LuxCreo printers (Lux 3 and iLux series) and resins (EM+23 and substantially similar)) and through using, offering for sale, selling, and/or importing products for use in or made by the infringing method (*e.g.*, LuxCreo insoles, Asics ActiBreeze sandals, and substantially similar).

Edwards' Email at 1 (emphasis added) (A copy of Mr. Edwards' email is attached as **Exhibit E** hereto).[4] Mr. Edwards email included a specific and unambiguous charge of infringement of the '895 Patent and identified accused products – "LuxCreo printers (Lux3 and iLux series) and resins (EM+23 and substantially similar)" and "LuxCreo insoles, Asics ActiBreeze sandals and substantially similar." *Id.*

27. Mr. Edwards' email also accused Plaintiff of infringing U.S. Patent No. 10,016,938 (the "'938 Patent"):

> Carbon also intends to assert a counterclaim for infringement of attached U.S. Patent No. 10,016,938 (the "'938 Patent"). For the reasons articulated in Carbon's letters dated October 25, 2023, March 21, 2025, and December 12, 2025,

[4] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

> including as exemplified by the March 21, 2025 exemplary claim chart for method claim 1 [a-c] of the U.S. Patent No. 12,151,073, Carbon maintains that LuxCreo is infringing, directly and/or indirectly, at least claim 1 of the '938 Patent through making, using, offering for sale, selling, and/or importing infringing printers (*e.g*., LuxCreo printers (Lux 3 and iLux series)), where the "support" is the printer frame/base, the "polymerizable liquid supply" is the build chamber, and the "overhang" is exemplified by the bridging element between two supporting bodies in dental aligners and Asics ActiBreeze 3D sandal.

Edwards' Email at 1 (emphasis added). Mr. Edwards email included a specific and unambiguous charge of infringement of the '938 Patent and identified accused products – "printers (e.g., LuxCreo printers (Lux 3 and iLux series)), where the support is the printer frame/base, the 'polymerizable liquid supply' is the build chamber, and the 'overhang is exemplified by the bridging element between two supporting bodies in dental aligners and Asics ActiBreeze 3D sandal." *Id.*

**B. Patents Defendant Has Asserted Against Plaintiff**

28. The "Asserted Patents" are:

| | |
|---|---|
| U.S. Patent No. 9,205,601 (the '601 Patent) | U.S. Patent No. 10,471,699 (the '699 Patent) |
| U.S. Patent No. 9,453,142 (the '142 Patent) | U.S. Patent No. 10,647,880 (the '880 Patent) |
| U.S. Patent No. 9,498,920 (the '920 Patent) | U.S. Patent No. 10,792,856 (the '856 Patent) |
| U.S. Patent No. 9,598,606 (the '606 Patent) | U.S. Patent No. 10,899,868 (the '868 Patent) |
| U.S. Patent No. 9,676,963 (the '963 Patent) | U.S. Patent No. 11,235,516 (the '516 Patent) |
| U.S. Patent No. 9,982,164 (the '164 Patent) | U.S. Patent No. 11,358,342 (the '342 Patent) |
| U.S. Patent No. 10,144,181 (the '181 Patent) | U.S. Patent No. 12,151,073 (the '073 Patent) |
| U.S. Patent No. 10,240,066 (the '066 Patent) | U.S. Patent No. 10,016,938 (the '938 Patent) |
| U.S. Patent No. 12,629,895 (the '895 Patent) | |

**C. Defendant's Relevant Founders, Directors, Officers, And Agents**

29. There are two founders of Defendant who are especially relevant to Plaintiff's legal claims: Joseph DeSimone and Jason Rolland; also Lori Herman has represented Defendant in the prosecution of the Asserted Patents.

**1. Joseph DeSimone**

30. DeSimone co-founded Defendant in 2013, served as Defendant's chief executive

officer from 2014 to 2019, and is now a member of Defendant's board of directors.

31. DeSimone received his B.S. in chemistry from Ursinus College in 1986 and his Ph.D. in chemistry from Virginia Tech in 1990. Before co-founding Defendant, DeSimone held professorships in chemistry at the University of North Carolina and in chemical engineering at North Carolina State University, and DeSimone co-founded Liquidia Technologies with Rolland. DeSimone has been a founder of other start-ups.

32. DeSimone is a named inventor on all but one of the Asserted Patents – all Asserted Patents except the '856 Patent.

33. DeSimone has stated that he views patents as a driver of innovation and that he personally engages with the patent process at a detailed level. In an interview recorded in 2017, DeSimone declared:

> I love patents I'm in the camp - a lot of people think patents stifle innovation — **I think patents drive innovation** because it articulates what people do and how they protect their ideas. When you write a patent you've got to [give a] full disclosure [of] what it is.

*Joseph DeSimone on Founding Carbon*, An Evening with Joseph DeSimone (hosted by the National Science & Technology Medals Foundation at Stanford University) (November 9, 2017) (hereinafter "An Evening With Joseph DeSimone") (emphasis added).[5] Plaintiff incorporates An Evening With Joseph DeSimone here as if fully set forth here.[6]

34. Before founding Defendant, DeSimone directed his co-founder Ermoshkin to conduct a patent search on five specific keywords, which returned approximately 800 patents filed in just three years. *Id*. DeSimone then personally analyzed those patents, describing the process:

> when you start looking [at] all the patents, we put them in different buckets and what you see is claim by claim, everything was layer by layer.

*Id*. DeSimone described this claim-by-claim patent analysis as leading directly to Carbon's founding technology that is referred to as "continuous liquid interface production." *Id.* DeSimone

[5] https://youtu.be/ikfZ8gIF_0U?si=pieX-qcmXR7PKLoh (last accessed on June 09, 2026).
[6] Publicly available documents incorporated into a complaint are fully plead in the complaint. *U.S. v. Ritchie*, 342 F.3d 903, 908 – 09 (9th Cir. 2003). The Court may take judicial notice of publicly available documents. Fed. R. Evid. 201.

has described filing patents as an integral, ongoing part of his research and company-building process.

35. In an interview with American Scientist, DeSimone described his lab's practices, stating:

again we're filing patents I thought it was going to be important.

*Joseph DeSimone Interview*, American Scientist (Sigma Xi Society 2012 Walston Chubb Award) (hosted by Cathy Clabby) (January 15, 2013) (hereinafter "American Scientist").[7] Plaintiff incorporates American Scientist here as if fully set forth here.[8]

36. DeSimone described a similar pattern with carbon dioxide surfactant technology, where his students first considered licensing their patents and, when, in 1995-96, no suitable licensee existed, they formed Micell Technologies to commercialize the patented innovation. *Id*.

37. DeSimone has founded or co-founded multiple companies using this same patent-first model, including a biodegradable stent company (later acquired by Abbott), Liquidia Technologies (which he co-founded with Jason Rolland), and a battery company with non-flammable electrolytes. *Joseph DeSimone, Co-Founder and CEO of Carbon*, Entrepreneurial Thought Leaders, Stanford Speaker Series (October 5, 2016) (Hereinafter, "Thought Leaders") and *Joseph DeSimone Interview*, American Scientist. [9] Plaintiff incorporates Thought Leaders here as if fully set forth here.[10]

38. DeSimone is consistent: he personally directs patent searches before forming companies, he reads and analyzes patent claims himself, he files patents contemporaneously with research breakthroughs, and he uses patent landscapes strategically to identify whitespace for new ventures. His first question to a potential co-founder was not about market size or funding. It was:

Did you look up any patents?

An Evening with Joseph DeSimone. Each of the companies DeSimone has founded, spanning carbon dioxide cleaning, biodegradable stents, nanoparticle drug delivery, batteries, and 3D

[7] https://youtu.be/fKiQ57BHSDk?si=fEl1it2ruiQv0sKo (last accessed on June 09, 2026).
[8] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[9] https://youtu.be/7u19bPhkndA?si=U83NduPEFIiIbrCI (last accessed on June 09, 2026).
[10] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

printing, was built on technology for which DeSimone was actively filing patents during the research phase. Joseph DeSimone Interview, American Scientist; Founder Stories: Joseph DeSimone.

**2. Jason Rolland**

39. Jason Rolland is Defendant's Chief Technology Officer. As CTO, he is responsible for Defendant's research and product development functions. Rolland joined Defendant in approximately 2014 and was one of the company's early employees. He is a named inventor on patents related to Defendant's dual-cure resin platform. Prior to joining Defendant, Rolland co-founded Liquidia Technologies – with DeSimone.

40. Rolland earned his doctorate in chemistry from the University of North Carolina in 2005 where DeSimone was Rolland's faculty advisor, and where DeSimone signed Rolland's dissertation approving it to award a doctorate. Rolland also holds a B.S. in chemistry from Virginia Tech. Rolland is a named inventor on nine of the Asserted Patents.

41. In a March 2026 podcast interview, Rolland described DeSimone as the person who introduced him to entrepreneurship and the idea of using it as a

vehicle to get technologies out into the world.

*Interview with Jason Rolland*, Shape The System (hosted by Vincent Turner) (Mar. 2, 2026) (hereinafter "Shape The System").[11] Plaintiff incorporates Shape The System here as if fully set forth here.[12]

42. In Shape The System, Rolland explained that the mission of his team at Defendant was to make 3D printing a true manufacturing technology and not just a prototyping technology. The team wanted to make parts that had the mechanical properties needed for end-use manufacturing parts rather than just prototyping parts. According to Rolland, dual cure chemistry was the innovation that moved 3D printing from making prototypes to a true manufacturing technology. Rolland and his team

[11] https://youtu.be/-j-DCyNhoOU?si=I42J8aH2Wq1d5OCI (last accessed on June 09, 2026).
[12] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

> have taken a different approach where we have both UV curable and thermally curable chemistry within the formulation and that is ultimately what allows us to get to these really impressive final properties that give us things like great durability and compression set and tear strength.

*Id.*

43. Rolland has explained that part of his team's materials development process involves reviewing "the literature and the patent literature" to understand how others have approached similar problems:

> Part of what material science is, is you go into the literature and the patent literature and you look at how other people have approached similar problems.

*Id.*

**3. Lori Herman**

44. Lori Herman is Defendant's Assistant General Counsel – IP. Herman joined Defendant in April 2023 as Senior Counsel – Intellectual Property and moved to her current role in June 2024. Herman was a post-doctoral associate in DeSimone's Lab at the University of North Carolina from August 2000-August 2002.

45. Herman earned her J.D. from Duke University School of Law in 2005. Herman earned her doctorate in chemistry from the University of California in 2000. Herman also holds a B.S. in chemistry from Willamette University.

46. Herman overlapped with Rolland in DeSimone's Lab at the University of North Carolina. Rolland acknowledged Herman in his dissertation as his mentor when he first arrived at the University of North Carolina. Plaintiff incorporates Rolland's dissertation here as if fully set forth here. [13]

47. Herman was a patent attorney at Myers Bigel Sibley & Sajovec, PA from September 2005 to March 2012.

48. Herman left Myers Bigel in March 2012 and returned to Myers Bigel in an Of Counsel role in July 2020.

49. On information and belief, Herman was substantively involved in prosecution of

[13] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

and management of Defendant's patent portfolio at Myers Bigel upon her return to the firm in July 2020. Herman owed a duty of disclosure to the Patent Office under 37 C.F.R. §1.56.

50. Herman left Myers Bigel and joined Defendant as Senior Counsel-Intellectual Property in April 2023.

51. On information and belief, Herman was an attorney representing Defendant and was substantively involved in prosecution of and management of Defendant's patent portfolio since joining Defendant in April 2023. Herman owed a duty of disclosure to the Patent Office under 37 C.F.R. §1.56.

**D. <u>The Asserted Patents</u>**

**1. U.S. Patent No. 9,205,601**

52. The '601 Patent is a United States Patent that states that it issued on December 8, 2015 from an application filed on December 12, 2014, Application No. 14/569,202. A copy of the '601 Patent is attached as **Exhibit F-1** hereto.[14] The '601 Patent states that its assignee is Carbon3D, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the '601 Patent was originally assigned to Carbon3D, Inc. who subsequently changed its name to Carbon, Inc. of Redwood City, California. The Patent Office assignment records show that the '601 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office's Assignment Record is attached as **Exhibit F-2** hereto.[15]

53. The named inventors of the '601 Patent are Joseph DeSimone, Alexander Ermoshkin, Nikita Ermoshkin, and Edward Samulski. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[16]

54. On information and belief (as used herein, "on information and belief" includes

[14] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[15] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[16] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

without limitation the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, Fed. R. Civ. Proc. 11(b)(3)), DeSimone was substantially involved in preparing and prosecuting the application issued as the '601 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

55. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '601 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

56. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '601 Patent.

57. Plaintiff contends that one or more of the claims of the '601 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

**2. U.S. Patent No. 9,453,142**

58. The '142 Patent is a United States Patent that states that it issued on September 27, 2016 from an application filed on December 22, 2015, Application No. 14/827,974. A copy of the '142 Patent is attached as **Exhibit G-1** hereto.[17] The '142 Patent states that its assignee is Carbon3D, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the '142 Patent was originally assigned to Carbon3D, Inc. who subsequently changed its name to Carbon, Inc. of Redwood City, California. The Patent Office assignment records show that the '142 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office's Assignment Record is attached as **Exhibit G-2** hereto.[18]

[17] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[18] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

59. The named inventors of the '142 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert Pinschmidt, Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[19]

60. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the '142 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

61. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '142 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

62. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '142 Patent.

63. Plaintiff contends that one or more of the '142 Patent claims are invalid at least under 35 U.S.C. 102 or 103 by Velankar.

**3. U.S. Patent No. 9,498,920**

64. The '920 Patent is a United States Patent that states that it issued on November 22, 2016, from an application filed on January 14, 2014, Application No. 14/154,700. A copy of the '920 Patent is attached as **Exhibit H-1** hereto.[20] The '920 Patent states that its assignee is Carbon3D, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate the '920 Patent was originally assigned to EIPI Systems, Inc.

---

[19] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

[20] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

of Redwood City and then was "correctively" assigned to Carbon3D, Inc. of Redwood City, California. Carbon3D, Inc. changed its name to Carbon, Inc. also of Redwood City, California. The Patent Office assignment records indicate that '920 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office's Assignment Record is attached as **Exhibit H-2** hereto.[21]

65. The named inventors of the '920 Patent are Joseph DeSimone, Alexander Ermoshkin, and Edward Samulski. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[22]

66. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the '920 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

67. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '920 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

68. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '920 Patent.

69. Plaintiff contends that one or more of the '920 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

U.S. Patent No. 9,598,606

---

[21] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[22] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**4. U.S. Patent No. 9,598,606**

70. The ‘606 Patent is a United States Patent that states that it issued on March 20, 2017 from an application filed on December 22, 2015, Application No. 14/977,876. A copy of the ‘606 Patent is attached as **Exhibit I-1** hereto.[23] The ‘606 Patent states that its assignee is Carbon3D, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the ‘606 Patent was originally assigned to Carbon3D, Inc. who subsequently changed its name to Carbon, Inc. of Redwood City, California. The Patent Office assignment records show that the ‘606 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office’s Assignment Record is attached as **Exhibit I-2** hereto.[24]

71. The named inventors of the '606 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert Pinschmidt, Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[25]

72. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the ‘606 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

73. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the ‘606 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part

[23] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[24] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[25] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

of building and maintaining a company.

74. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the ‘606 Patent.

75. Plaintiff contends that one or more of the ‘606 Patent claims are invalid at least under 35 U.S.C. section 103 by Velankar in view of the ‘330 Patent.

**5. U.S. Patent No. 9,676,963**

76. The ‘963 Patent is a United States Patent that states that it issued on June 13, 2017 from an application filed on December 22, 2015, Application No. 14/977,822. A copy of the ‘963 Patent is attached as **Exhibit J-1** hereto.[26] The ‘963 Patent states that its assignee is Carbon3D, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the ‘963 Patent was originally assigned to Carbon3D, Inc. who subsequently changed its name to Carbon, Inc. of Redwood City, California. The Patent Office assignment records show that the ‘963 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office’s Assignment Record is attached as **Exhibit J-2** hereto.[27]

77. The named inventors of the ‘963 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert Pinschmidt, Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[28]

78. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the ‘963 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

[26] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[27] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[28] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

79. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '963 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

80. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '963 Patent.

81. Plaintiff contends that one or more of the '963 Patent claims are invalid at least under 35 U.S.C. section 103 by the '728 Patent in view of the '330 Patent or by Rolland '133 in view of the '330 Patent. DeSimone and Rolland are named inventors on the '728 Patent. Rolland is the sole named inventor on Rolland '133.

**6. U.S. Patent No. 9,982,164**

82. The '164 Patent is a United States Patent that states that it issued on May 29, 2018 from an application filed on August 18, 2016, Application No. 15/240,157. A copy of the '164 Patent is attached as **Exhibit K-1** hereto.[29] The '164 Patent states that its assignee is Carbon3D, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the '164 Patent was originally assigned to Carbon3D, Inc. who subsequently changed its name to Carbon, Inc. of Redwood City, California. The Patent Office assignment records show that the '164 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office's Assignment Record is attached as **Exhibit K-2** hereto.[30]

83. The named inventors of the '164 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert Pinschmidt, Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent

[29] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[30] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[31]

84. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the '164 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

85. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '164 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

86. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '164 Patent.

87. Plaintiff contends that one or more of the '164 Patent claims are invalid at least under 35 U.S.C. 102 or 103 by Velankar.

**7. U.S. Patent No. 10,144,181**

88. The '181 Patent is a United States Patent that states that it issued on December 4, 2018, from an application filed on November 10, 2015, Application No. 14/937,304. A copy of the '181 Patent is attached as **Exhibit L-1** hereto.[32] The '181 Patent states that its assignee is Carbon3D, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the '181 Patent was originally assigned to Carbon3D, Inc. who subsequently changed its name to Carbon, Inc. of Redwood City, California. The Patent Office assignment records show that the '181 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office's Assignment Record is attached as **Exhibit L-**

[31] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[32] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

**2** hereto.[33]

89. The named inventors of the '181 Patent are Joseph DeSimone, Alexander Ermoshkin, Nikita Ermoshkin, and Edward Samulski. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[34]

90. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the '181 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

91. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '181 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

92. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '181 Patent.

93. Plaintiff contends that one or more of the '181 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

**8. U.S. Patent No. 10,240,066**

94. The '066 Patent is a United States Patent that states that it issued on March 26, 2019 from an application filed on February 9, 2017, Application No. 15/428,708. A copy of the '066 Patent is attached as **Exhibit M** hereto.[35] The '066 Patent states that its assignee is CARBON, INC., Redwood City, California. The assignment records maintained at the United

[33] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[34] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[35] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

States Patent Office include no assignment information for the ‘066 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the ‘066 Patent is currently assigned to Defendant.

95. The named inventors of the '066 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert Pinschmidt, Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[36]

96. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the ‘066 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

97. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the ‘066 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

98. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the ‘066 Patent.

99. Plaintiff contends that one or more of the ‘066 Patent claims are invalid at least under 35 U.S.C. section 103 by the ‘330 Patent in view of Velankar.

**9. U.S. Patent No. 10,471,699**

100. The ‘699 Patent is a United States Patent that states that it issued on April 12, 2019 from an application filed on June 18, 2015, Application No. 15/314,332. A copy of the ‘699 Patent is attached as **Exhibit N-1** hereto.[37] The ‘699 Patent states that its assignee is Carbon, Inc.,

[36] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

[37] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).

Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the ‘699 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office’s Assignment Record is attached as **Exhibit N-2** hereto.[38]

101. The inventors on the ‘699 Patent are Alexander Ermoshkin, David Shirvanyants, Nordstrom Kirk Phelps, Nikita Ermoshkin, Edward Samulski, and Joseph DeSimone. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[39]

102. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the ‘699 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

103. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the ‘699 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

104. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the ‘699 Patent.

105. Plaintiff contends that one or more of the ‘699 Patent claims are invalid at least under 35 U.S.C. section 103 by the ‘330 Patent in view of the ‘441 Patent.

**10. U.S. Patent No. 10,647,880**

106. The ‘880 Patent is a United States Patent that states that it issued on May 12, 2020 from an application filed on February 7, 2019, Application No. 16/264,710. A copy of the ‘880

[38] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[39] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Patent is attached as **Exhibit O** hereto.[40] The ‘880 Patent states that its assignee is Carbon, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office include no assignment information for the ‘880 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the ‘880 Patent is currently assigned to Defendant.

107. The named inventors of the '880 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert Pinschmidt, Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[41]

108. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the ‘880 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

109. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the ‘880 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

110. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the ‘880 Patent.

111. Plaintiff contends that one or more of the ‘880 Patent claims are invalid at least under 35 U.S.C. section 103 by the ‘728 Patent in view of the ‘330 Patent. DeSimone and Rolland are named inventors on the ‘728 Patent.

---

[40] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[41] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**11. U.S. Patent No. 10,792,856**

112. The ‘856 Patent is a United States Patent that states that it issued on October 6, 2020, from an application filed on March 11, 2016, Application No. 15/553,871. A copy of the ‘856 Patent is attached as **Exhibit P-1** hereto.[42] The ‘856 Patent states that its assignee is Carbon3 Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the ‘856 Patent was last recorded as assigned to Carbon, Inc. of Redwood City, California. A copy of the relevant page from the Patent Office’s Assignment Record is attached as **Exhibit P-2** hereto.[43]

113. The named inventors for the '856 Patent are John Tumbleston, Edward Samulski, and Robert K. Pinschmidt, Jr. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[44]

114. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the ‘856 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

115. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the ‘856 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

116. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the ‘856 Patent.

[42] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[43] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[44] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

117. Plaintiff contends that one or more of the ‘856 Patent claims are invalid at least under 35 U.S.C. section 103 by the ‘330 Patent in view of the ‘441 Patent.

**12. U.S. Patent No. 10,899,868**

118. The ‘868 Patent is a United States Patent that states that it issued on June 20, 2021 from an application filed on February 27, 2020, Application No. 16/803,047. A copy of the ‘868 Patent is attached as **Exhibit Q** hereto.[45] The ‘868 Patent states that its assignee is Carbon, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office include no assignment information for the ‘868 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the ‘868 Patent is currently assigned to Defendant.

119. The named inventors of the ‘868 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert K. Pinschmidt, Jr., Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[46]

120. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the ‘868 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

121. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the ‘868 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

122. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or

---

[45] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[46] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

has infringed the ‘868 Patent.

123. Plaintiff contends that one or more of the ‘868 Patent claims are invalid at least under 35 U.S.C. section 103 by the ‘728 Patent in view of the ‘330 Patent. DeSimone and Rolland are named inventors on the ‘728 Patent.

**13. U.S. Patent No. 11,235,516**

124. The ‘516 Patent is a United States Patent that states that it issued on February 1, 2022 from an application filed on March 19, 2020, Application No. 16/824,077. A copy of the ‘516 Patent is attached as **Exhibit R** hereto.[47] The ‘516 Patent states that its assignee is Carbon, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office include no assignment information for the ‘516 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the ‘516 Patent is currently assigned to Defendant.

125. The named inventors of the ‘516 Patent are Joseph DeSimone, Alexander Ermoshkin, and Edward Samulski. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[48]

126. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the ‘516 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

127. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the ‘516 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

---

[47] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[48] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

128. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '516 Patent.

129. Plaintiff contends that one or more of the '516 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

**14. U.S. Patent No. 11,358,342**

130. The '342 Patent is a United States Patent that states that it issued on June 14, 2022 from an application filed on August 30, 2019, Application No. 16/556,404. A copy of the '342 Patent is attached as **Exhibit S** hereto.[49] The '342 Patent states that its assignee is Carbon, Inc., Redwood City, California. The patent assignment records maintained at the United States Patent Office include no assignment information for the '342 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the '342 Patent is currently assigned to Defendant.

131. The named inventors of the '342 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert Pinschmidt, Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[50]

132. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the '342 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

133. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '342 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part

---

[49] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[50] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

of building and maintaining a company.

134. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '342 Patent.

135. Plaintiff contends that one or more of the '342 Patent claims are invalid at least under 35 U.S.C. section 103 by the '728 Patent in view of the '330 Patent or by Rolland '133 in view of the '330 Patent. DeSimone and Rolland are named inventors on the '728 Patent. Rolland is a named inventor on Rolland '133.

**15. U.S. Patent No. 12,151,073**

136. The '073 Patent is a United States Patent that states that it issued on November 26, 2024 from an application filed on August 8, 2023, Application No. 18/463,353. A copy of the '073 Patent is attached as **Exhibit T** hereto.[51] The '073 Patent states that its assignee is CARBON, INC., Redwood City, California. The patent assignment records maintained at the United States Patent Office include no assignment information for the '073 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the '073 Patent is currently assigned to Defendant.

137. The named inventors of the '073 Patent are Joseph DeSimone, Alexander Ermoshkin, Nikita Ermoshkin, and Edward Samulski. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[52]

138. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the '073 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

139. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '073 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get

[51] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[52] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

140. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '073 Patent.

141. Plaintiff contends that one or more of the '073 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent and Velankar.

**16. U.S. Patent No. 10,016,938**

142. The '938 Patent is a United States Patent that states that it issued on July 10, 2018, from an application filed on May 2, 2016, as Application No. 15/143,986. A copy of the '938 Patent is attached as **Exhibit U-1** hereto.[53] The '938 Patent states that its assignee is Carbon, Inc. of Redwood City, California. The patent assignment records maintained at the United States Patent Office indicate that the '938 Patent was assigned to Carbon, Inc., of Redwood City, California, by Carbon3D, Inc., due to a change of name. The Patent Office assignment records show that the '938 Patent was last recorded as assigned to Carbon, Inc. A copy of the relevant page from the Patent Office's Assignment Record is attached hereto as **Exhibit U-2**.[54]

143. The named inventors of the '938 Patent are Joseph DeSimone, Alexander Ermoshkin, Nikita Ermoshkin, and Edward Samulski. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[55]

144. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the '938 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

[53] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[54] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[55] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

145. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '938 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

146. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '938 Patent.

147. Plaintiff contends that one or more of the '938 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent and the '441 Patent.

**17. U.S. Patent No. 12,629,895**

148. The '895 Patent is a United States Patent that states that it issued on May 19, 2026, from an application filed on November 8, 2023, as Application No. 18/504,537. A copy of the '895 Patent is attached as **Exhibit V** hereto.[56] The '895 Patent states that its assignee is Carbon, Inc. of Redwood City, California. The Patent Office assignment records do not reflect any recorded assignment for the '895 Patent.

149. The named inventors of the '895 Patent are Jason Rolland, Kai Chen, Justin Poelma, James Goodrich, Robert Pinschmidt, Joseph DeSimone, and Lloyd Robeson. Each inventor signed an oath under 37 CFR § 1.63, attesting that they reviewed and understood the application and claims being filed and were aware that they owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates each oath signed by each inventor here as if fully set forth here.[57]

150. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in preparing and prosecuting the application issued as the '895 Patent because DeSimone has stated that he personally engages with the patent process at a detailed level at his companies because he believes that patents are an integral, ongoing part of the company-building process.

---

[56] An exhibit attached to a complaint is fully plead within the complaint. Fed. R. Civ. Proc. 10(c).
[57] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

151. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in preparing and prosecuting the application issued as the '895 Patent because, as stated by Rolland in Shape The System, Rolland learned how to use entrepreneurship as a way to get technology into the world from DeSimone, and DeSimone considers it vital for company leaders to be aware of and involved in the patenting process because patents are an integral, ongoing part of building and maintaining a company.

152. Plaintiff contends that Defendant cannot carry its burden that Plaintiff infringes or has infringed the '895 Patent.

153. Plaintiff contends that one or more of the '895 Patent claims are invalid at least under 35 U.S.C. section 103 by the '728 Patent in view of the '330 Patent and the '441 Patent. DeSimone and Rolland are named inventors on the '728 Patent.

### E. <u>Patent Families</u>

154. The Asserted Patents may be grouped into two patent families.

#### 1. The "Continuous Liquid Interphase" Family

155. The '601 Patent, the '920 Patent, the '181 Patent, the '516 Patent, the '073 Patent, the '699 Patent, the '856 Patent, and the '938 Patent are in the **"Continuous Liquid Interphase Printing (CLIP)"** patent family (the "CLIP Family"). Six of the patents in this family claim priority to one or more of U.S. Provisional Application Nos. 61/763,746, filed February 12, 2013; 61/865,841, filed August 14, 2013; 61/919,903, filed December 23, 2013; or 61/980,430, filed April 16, 2014.

156. Many of the independent claims in the CLIP family of patents have claims reciting "continuously maintaining a dead zone" and "continuously maintaining a gradient of polymerization zone." For this reason, the '699 Patent and the '856 Patent are also included in the CLIP family of patents even though they do not claim priority to the same group of provisional applications as the other CLIP family patents.

157. The Asserted Patents in the CLIP family are members of a larger group of Defendant's patents that includes additional related patents and applications sharing overlapping priority dates that are not asserted in this action. For example, the '516 Patent issued from the last

application in a chain of four continuing applications claiming priority to International Application No. PCT/US2017/015486. The other three applications in that chain are not asserted in this action. Additionally, the ‘073 Patent and the ‘938 Patent are in the same chain of continuing applications with three other applications that are not asserted in this action.

**2. The "Dual Cure" Family**

158. The ‘142 Patent, the ‘606 Patent, the ‘963 Patent, the ‘164 Patent, the ‘066 Patent, the ‘880 Patent, the ‘868 Patent, the ‘342 Patent, and the ‘895 Patent are in the **"Dual Cure"** patent family (the "Dual Cure Family"). The patents in this family claim priority to six common provisional applications: U.S. Provisional Application Nos. 62/015,780, filed June 23, 2014; 62/036,161, filed August 12, 2014; 62/101,671, filed January 9, 2015; 62/111,961, filed February 4, 2015; 62/129,187, filed March 6, 2015; and 62/133,642, filed March 16, 2015.

159. Three PCT applications, all filed on June 22, 2015, claimed priority to all six provisional applications. The three PCT applications share a common specification except for the claims, summaries of the invention, abstracts, and titles, each of which is modified according to the invention claimed in the respective application.

160. Three U.S. continuation-in-part applications were filed on December 22, 2015, each one claiming priority to one of the three PCT applications. The CIP applications shared a common specification except for the cross-reference sections, claims, summaries of the invention, abstracts, and titles, each of which is modified according to the invention claimed in the respective patent.

161. Each of the CIP applications serves as the first application in a chain of continuing applications that have issued at least 15 patents for Defendant. Every patent in the chain of patents claims priority back to one of the three PCT applications and back to all six provisional applications. Some of the patents in this larger group of patents were not asserted in this action.

162. The prosecution history in the non-asserted patents is relevant because at least one patent from every chain of the 3 chains has been asserted.

163. Many of the claims in the Dual Cure Family have claims reciting a polymerizable liquid comprising "(i) a light polymerizable liquid first component, and (ii) a second solidifiable

component that is different from said first component" and/or "a polymerizable liquid comprising at least one of … (ii) a blocked or reactive blocked diisocyanate."

**a. Priority Date for Select Claim Terms Related To Dual Cure Materials**

164. The claim term "(i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component" finds support at least as early as August 12, 2014, in U.S. Provisional Application No. 62/036,161.

165. The '161 Provisional contains section 8 titled "Dual hardening polymerizable liquids," which includes descriptions of Part A chemistry, which corresponds to the light polymerizable liquid first component and Part B chemistry, which corresponds to the second solidifiable component that is different from said first component.

166. The claim term "a polymerizable liquid comprising at least one of … (ii) a blocked or reactive blocked diisocyanate" finds support at least as early as January 9, 2015, in U.S. Provisional Application No. 62/101,671.

167. The '671 Provisional contains section B titled "Dual hardening polymerizable liquids employing blocked diisocyanates and thermally cleavable blocking groups," that includes a description of a method of forming a three-dimensional object comprising a polyurethane, wherein the method includes filling a build region with a polymerizable liquid comprising a blocked or reactive blocked diisocyanate.

168. The claim term reciting a polymerizable liquid comprising "(i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component" and/or "a polymerizable liquid comprising at least one of … (ii) a blocked or reactive blocked diisocyanate" has priority back to at least January 9, 2025.

**b. Non-Asserted Patents In The Dual Cure Family**

169. The '963 Patent and the '342 Patent are in the same chain of patents. The '606 Patent, the '066 Patent, the '880 Patent and the '895 Patent are in the same chain of patents, and the '142 Patent, the '164 Patent, and the '868 Patent are in the same chain of patents.

170. The three applications filed between the '963 Patent and the '342 Patent are not

asserted in this action.

171. The application filed between the '164 Patent and the '868 Patent was not asserted in this action. The prosecution history of this application, Application No. 15/963,550 (issued as U.S. Patent No. 10,647,879), is relevant to the Dual Cure patents because the Examiner, who is presumed to be reasonable, rejected claims over a prior art patent application publication naming Rolland as sole inventor. The Examiner found the reference anticipating. Rolland had failed to submit this reference to the Patent Office. The prosecution of the '550 Application is discussed further below.

## F. Significant Prior Art

172. Certain prior art is of particular significance; prior art that, either alone or in combination, invalidates at least one claim of the '963 Patent, the '342 Patent, the '868 Patent, the '880 Patent, and the '895 Patent - a subset of the Dual Cure Family.

173. Applying the broadest reasonable interpretation and a preponderance-of-the-evidence standard, the Patent Office would not have allowed at least one claim of each of the '963 Patent, the '342 Patent, the '868 Patent, the '880 Patent, and the '895 Patent had the Patent Office been aware of the significant prior art.

174. The significant prior art includes at least:

| | |
|---|---|
| U.S. Patent No. 8,372,330 | U.S. Patent No. 5,122,441 |
| U.S. Patent No. 8,158,728 | U.S. Application Publication No. 2007/0178133 |
| Effect of the Diisocyanate on the Structure and Properties of Polyurethane Acrylate Prepolymers | High-Performance UV-Curable Urethane Acrylates via Deblocking Chemistry |

### 1. U.S. Patent No. 8,372,330

175. The '330 Patent, titled "Resin Solidification Substrate and Assembly," issued on February 12, 2013. The inventors are Ali El-Siblani and Alexandr Shkolnik. The '330 Patent is assigned to Global Filtration Systems and claims priority to a provisional application filed October 19, 2009. Plaintiff incorporates the '330 Patent here as if fully set forth here.[58]

[58] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

176. The ‘330 Patent qualifies as prior art under 35 U.S.C. § 102(a)(1) as a publication available before the effective filing date of the Asserted Patents and under § 102(a)(2) based on its filing date.

177. The ‘330 Patent discloses systems and methods for manufacturing 3D objects using a solidification substrate assembly. The systems include a build platform, a pattern generator that supplies solidification energy, and a process of repeatedly solidifying sections and moving the build platform away from the substrate to build the 3D object.

**2. U.S. Patent No. 5,122,441**

178. The '441 Patent, titled "Method for Fabricating an Integral Three-Dimensional Object from Layers of a Photoformable Composition" issued on June 16, 1992. The inventors are John A. Lawton and Jerome T. Adams. The ‘441 Patent is assigned to E. I. Du Pont de Nemours and Company. Plaintiff incorporates the ‘441 Patent here as if fully set forth here.[59]

179. The ‘441 Patent qualifies as prior art under 35 U.S.C. § 102(a)(1) as a publication available before the effective filing date of the CLIP patents and under § 102(a)(2) based on its filing date.

180. The ‘441 Patent discloses an apparatus and method for fabricating 3D objects from a photoformable composition by exposing the composition to a radiation source through a semi-permeable film. The film is transparent, composition-inert, and composition-impermeable, but permeable to air/oxygen. Oxygen permeates through the film and diffuses into the photopolymer, inhibiting polymerization at the film/resin interface and creating a "deformable-composition-release-coating" that facilitates separation of the photoformed layer from the film without mechanical force.

181. The ‘441 Patent identifies fluoroelastomer films as having the greatest oxygen permeability while being substantially inert to the photoformation process.

182. The ‘441 Patent includes an IR reflectance study ranking contact surface/imaging atmosphere combinations by degree of polymerization at the film/photopolymer interface.

[59] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Fluoroelastomer film plus air showed the highest level of polymerization inhibition.

### 3. "High-Performance UV-Curable Urethane Acrylates Via Deblocking Chemistry," By Sachin Velankar, Jose Pazos, And Stuart L. Cooper (Velankar)

183. Velankar was published in the Journal of Applied Polymer Science, Vol. 62, pp. 1361–1376 (1996). The authors are affiliated with the University of Delaware and ARCO Chemical Inc. The paper was received February 26, 1996, and accepted May 28, 1996. Plaintiff incorporates the Velankar here as if fully set forth here.[60]

184. Velankar qualifies as prior art under 35 U.S.C. § 102(a)(1) as a publication available before the effective filing date of the Asserted Patents.

185. Velankar describes a method for producing high-performance UV-curable urethane acrylates by incorporating thermally labile bonds that can be broken after UV curing ("deblocking chemistry"). In Velankar, prepolymers are synthesized from polypropylene oxide (PPO), isophorone diisocyanate (IPDI), and t-butyl aminoethyl methacrylate (t-BAEMA), with reactive diluents (EGDMA or MMA) and chain extenders (H12MDA, BD, or TEA).

186. Velankar describes thermally annealing the materials after UV-curing to break the labile bonds thereby enabling incorporation of thermoplastic polyurethane (TPU) within the UV-cured network. This dual cure process achieves improved ultimate extension and strength compared to conventional UV-curables, without compromising the advantages of UV-cured materials. The resulting materials provide interpenetrating networks of polyurethanes and polyacrylates.

### 4. "Effect Of the Diisocyanate On the Structure And Properties Of Polyurethane Acrylate Prepolymers," By Ph. Barbeau, J. F. Gérard, B. Magny, And J. P. Pascault (Barbeau)

187. Barbeau was published in the Journal of Polymer Science: Part B: Polymer Physics, Vol. 38, pp. 2750–2768 (2000). The authors are affiliated with Cray Valley / Total Fina Elf and INSA Lyon / CNRS. Plaintiff incorporates the Barbeau here as if fully set forth here.[61]

188. Barbeau was received on December 1, 1999, and accepted July 31, 2000.

[60] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[61] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

189. Barbeau qualifies as prior art under 35 U.S.C. § 102(a)(1) as a publication available before the effective filing date of the Asserted Patents.

190. Barbeau investigates the role of diisocyanate structure on the properties of polyurethane acrylate prepolymers synthesized from polypropylene oxide (PPO) and various diisocyanates, including IPDI.

191. Barbeau shows that in this standard two-stage process, where a polyol is reacted with excess diisocyanate in the first step, unreacted diisocyanate inevitably remains after the first step and is reacted with a hydroxylacrylate capping agent in the second stage, producing blocked (capped) diisocyanate species.

192. Barbeau cites Velankar - Reference No. 8.

**5. U.S. Patent No. 8,158,728**

193. The '728 Patent, titled "Methods and Materials for Fabricating Microfluidic Devices," was issued on April 17, 2012. The inventors are DeSimone, Rolland, Ginger M. Denison Rothrock, and Paul Resnick. Plaintiff incorporates the ‘728 Patent here as if fully set forth here.[62]

194. The ‘728 Patent is assigned to The University of North Carolina and Liquidia Technologies, Inc. The ‘728 Patent was originally filed as International Application No. PCT/US2006/031067 on August 9, 2006, claiming earliest priority to a provisional filed February 13, 2004.

195. The ‘728 Patent qualifies as prior art under 35 U.S.C. § 102(a)(1) as a publication available before the effective filing date of the Asserted Patents and under § 102(a)(2) based on its filing date.

196. The ‘728 Patent discloses materials and methods for fabricating microfluidic devices using fluoropolymer compositions having multiple cure functional groups. The materials include both photocurable and thermally curable functional groups, enabling a dual-cure process where a first cure (*e.g.*, UV photocuring) forms a device shape and a second cure (*e.g.*, thermal

[62] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

curing) bonds layers together to form a 3D object. The ‘728 Patent discloses blocked diisocyanates as a thermally curable functional group.

197. A divisional application claiming priority to the ‘728 Patent was issued as U.S. Patent No. 8,444,899. The ‘899 Patent has the same disclosure as the ‘728 Patent. The ‘899 Patent was never submitted to the Patent Office during prosecution of the Dual Cure patents.

**6. U.S. Patent Application Publication No. US 2007/0178133**

198. U.S. Patent Application Publication No. 2007/178133, titled "Medical Device, Materials, and Methods," was published on August 2, 2007 (“Rolland ‘133”). Rolland ‘133 names Rolland as sole inventor and is assigned to Liquidia Technologies, Inc. Plaintiff incorporates Rolland ‘133 here as if fully set forth here.[63]

199. Rolland filed Rolland ‘133 November 9, 2006, claiming priority to a provisional application filed November 9, 2005.

200. Rolland ‘133 qualifies as prior art under 35 U.S.C. § 102(a)(1) as a publication available before the effective filing date of the Asserted Patents and under § 102(a)(2) based on its filing date.

201. Rolland ‘133 discloses dual thermal- and photo-curable materials for fabricating, functionalizing, and utilizing medical devices, surgical devices, and medical implants.

202. Rolland copied significant portions of the dual cure chemistry disclosure in Rolland ‘133 from the ‘728 Patent. Rolland copied at least Sections II.A through II.E (spanning over 70 paragraphs and including four data tables and six reaction schemes), every example (Examples 1–35), and every figure (Figs. 1–16C) from the ‘728 Patent into Rolland ‘133.

203. The dual cure chemistry disclosure found in Rolland ‘133 is also present in the ‘728 Patent.

204. The ‘728 Patent is not cumulative to Rolland ‘133 because Rolland ‘133 did not copy all the ‘728 Patent dual cure chemistry disclosure. The ‘728 Patent has additional disclosure that is not in Rolland ‘133 includes a blocked diisocyanate that cleaves at high temperature to

[63] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

expose previously blocked isocyanate. Rolland '133 has additional disclosure that is not in the '728 Patent that includes disclosure related to forming a medical or surgical device and for imparting chemical functionality to a medical or surgical device.

**G. Plaintiff Has No Burden To Plead Non-Infringement Beyond Generally**

205. Plaintiff is the accused infringer in this declaratory judgment action. As the accused infringer, Plaintiff bears no burden of proof as to non-infringement. To carry its burden as to any of the Asserted Patents, Defendant - only Defendant - must prove at least by a preponderance of the evidence that Plaintiff has infringed at least one valid and enforceable claim of that patent.

206. Plaintiff does not accept any burden of proof as to non-infringement.

207. Defendant has filed a motion to dismiss Plaintiff's original declaratory judgment complaint alleging that Plaintiff has not sufficiently plead that it does not infringe any of the Asserted Patents. Plaintiff bears no burden to plead non-infringement. Defendant alone bears the burden to plead infringement.

208. Nonetheless, Plaintiff is amending its Complaint and pleading additional facts as to non-infringement in this Amended Complaint; Plaintiff pleads such additional facts voluntarily without assuming any additional burden.

**H. Claims Of The Asserted Patents Are Invalid**

209. The Northern District Of California has issued Local Rules in patent cases that set forth the time for a declaratory judgment plaintiff or defendant asserting patent claim invalidity to serve contentions – both preliminary and final. The time for Plaintiff to serve invalidity contentions has not arrived.

210. Defendant has filed a motion to dismiss Plaintiff's original declaratory judgment complaint alleging that Plaintiff has not adequately plead invalidity of patent claims.

211. Under the Northern District's Local Rules, invalidity contentions are not now timely. Nonetheless, and without assuming any burden or agreeing to accelerate time under any Rule of Civil Procedure or Local Rule, Plaintiff is amending its Complaint to plead additional facts as to invalidity in this Amended Complaint.

## I. The '601 Patent

212. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '601 Patent and claims of the '601 Patent are invalid at least under Sections 101, 102, 103, and 112.

### 1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '601 Patent

213. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '601 Patent.

214. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

215. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product that includes at least all of:

> A method of forming a three-dimensional object, comprising irradiating said build region through said optically transparent member to form a solid polymer from said polymerizable liquid while concurrently advancing said carrier away from said build surface to form said three-dimensional object from said solid polymer, while also concurrently:
>
> (i) continuously maintaining a dead zone of polymerizable liquid in contact with said build surface, and
>
> (ii) continuously maintaining a gradient of polymerization zone between said dead zone and said solid polymer and in contact with each thereof, said gradient of polymerization zone comprising said polymerizable liquid in partially cured form.

### 2. Claims Of The '601 Patent Are Invalid

216. Claims of the '601 Patent are invalid.

217. Plaintiff contends that one or more of the '601 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

218. One or more of the claims of the '601 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

**J. <u>The '142 Patent</u>**

219. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '142 Patent and claims of the '142 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '142 Patent**

220. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '142 Patent.

221. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

222. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product that includes at least all of:

A polymerizable liquid comprising a mixture of:

a reactive blocked prepolymer comprising a compound of the formula A-X-A, where X is a hydrocarbyl group and each A is an independently selected substituent of Formula (X):

[Formula (X)]

where R is a hydrocarbyl group, R' is O or NH, and Z is a blocking group, said blocking group having a reactive epoxy, alkene, alkyne, or thiol terminal group,

a chain extender, and

a reactive blocked diisocyanate.

**2. Claims Of The '142 Patent Are Invalid**

223. Claims of the '142 Patent are invalid.

224. One or more of the claims of the '142 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

225. One or more of the claims of the '142 Patent claims are invalid at least under 35 U.S.C. 102 or 103 by Velankar.

**K. <u>The '920 Patent</u>**

226. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim

of the '920 Patent and claims of the '920 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '920 Patent**

227. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '920 Patent.

228. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

229. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product that includes at least all of:

An apparatus comprising:

a build plate comprising a fixed semipermeable member, said semipermeable member comprising a build surface and a feed surface separate from said build surface, with said build surface and said carrier defining a build region therebetween;

a polymerization inhibitor source in fluid communication with said feed surface; and

a controller operatively associated with said carrier and said light source for advancing said carrier and said build plate away from one another solely in the X and Y (horizontal) directions during or after polymerization of liquid in said build zone.

**2. Claims Of The '920 Patent Are Invalid**

230. Claims of the '920 Patent are invalid.

231. One or more of the claims of the '920 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

232. One or more of the claims of the '920 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

**L. <u>The '606 Patent</u>**

233. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '606 Patent and claims of the '606 Patent are invalid at least under Sections 101, 102, 103, and 112.

### 1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '606 Patent

234. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '606 Patent.

235. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

236. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object comprising:

filling said build region with a polymerizable liquid,

irradiating said build region with light through said optically transparent member to form a solid blocked polymer scaffold and advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said chain extender; wherein said irradiating and/or said advancing steps are carried out while also concurrently:

(i) continuously maintaining a dead zone of polymerizable liquid in contact with said build surface, and

(ii) continuously maintaining a gradient of polymerization zone between said dead zone and said solid blocked polymer scaffold and in contact with each thereof, said gradient of polymerization zone comprising said first component in partially cured form.

### 2. Claims Of The '606 Patent Are Invalid

237. Claims of the '606 Patent are invalid.

238. One or more of the claims of the '606 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

239. One or more of the claims of the '606 Patent claims are invalid at least under 35

U.S.C. section 103 by the ‘330 Patent in view of Velankar.

**M. <u>The ‘963 Patent</u>**

240. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the ‘963 Patent, claims of the ‘963 Patent are invalid at least under Sections 101, 102, 103, and 112, and the ‘963 Patent is unenforceable for inequitable conduct in its prosecution.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes or Has Infringed The ‘963 Patent**

241. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the ‘963 Patent.

242. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

243. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product that includes at least all of:

A method of forming a three-dimensional object, comprising

irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object.

**2. Claims Of The ‘963 Patent Are Invalid**

244. Claims of the ‘963 Patent are invalid.

245. One or more of the claims of the ‘963 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

**a. Invalidity By The ‘728 Patent**

246. One or more of the claims of the ‘963 Patent claims are invalid at least under 35

U.S.C. section 103 by the ‘728 Patent in view of the ‘330 Patent.

247. DeSimone intentionally withheld disclosure of the ‘728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the ‘728 Patent.

248. Rolland intentionally withheld disclosure of the ‘728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the ‘728 Patent.

**b. Invalidity By Rolland ‘133**

249. One or more of the claims of the ‘963 Patent claims are invalid at least under 35 U.S.C. 103 by Rolland ‘133 in view of the ‘330 Patent.

250. DeSimone intentionally withheld disclosure of Rolland ‘133 from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose Rolland ‘133.

251. Rolland intentionally withheld disclosure of Rolland ‘133 from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose Rolland ‘133.

**3. The ‘963 Patent Is Unenforceable For Inequitable Conduct In Its Prosecution**

252. The ‘963 Patent is unenforceable for inequitable conduct in its prosecution.

253. DeSimone committed inequitable conduct during prosecution of the ‘963 Patent.

254. Rolland committed inequitable conduct during prosecution of the ‘963 Patent.

255. Under 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability. Individuals associated with the filing or prosecution of a patent application are each inventor named in the application; each attorney or agent who prepares or prosecutes the application; and every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to

whom there is an obligation to assign the application.

256. DeSimone is a named inventor on the '963 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56. DeSimone fully understands the duty of disclosure, when he spoke at Stanford University in November 2017, he explained: "When you write a patent you've got to [give a] full disclosure [of] what it is." An Evening With Joseph DeSimone.

257. DeSimone signed an oath under 37 CFR § 1.63, for the '963 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56.

258. Rolland is a named inventor on the '963 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56.

259. Rolland signed an oath under 37 CFR § 1.63, for the '963 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56.

**a. The Prosecution Of The '963 Patent**

260. On December 22, 2015, Kenneth Sibley (USPTO Registration No. 31,665) of Myers, Bigel, Sibley, and Sajovec, P.A. filed Application No. 14/977,822 as a utility application, with a request for Track One prioritized examination, claiming benefit to PCT/US2015/036893, and a series of six provisionals (62/133,642 (3/16/2015); 62/129,187 (3/6/2015); 62/101,671 (1/9/2015); 62/036,161 (8/12/2014); 62/015,780 (6/23/2014)). The '822 Application claimed benefit to the '893 PCT as a continuation-in-part application. The '893 PCT was filed on June 22, 2015, claiming priority to the series of six provisionals.

261. DeSimone signed the Power of Attorney for the Applicant, Carbon3D, Inc. as Co-Founder & Chief Executive Officer. Plaintiff incorporates the Power Of Attorney here as if fully set forth here.[64]

262. During prosecution of the '963 Patent, Defendant submitted fourteen Information

[64] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Disclosure Statements with over 400 references collectively. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of all 14 IDSs. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of all 14 IDSs.

**i. The '728 Patent**

263. DeSimone did not disclose the '728 Patent in any IDS submitted to the Patent Office for the '963 Patent.

264. Rolland did not disclose the '728 Patent in any IDS submitted to the Patent Office for the '963 Patent.

265. DeSimone and Rolland filed the '728 Patent as the U.S. national stage application of a PCT Application filed on August 9, 2006. DeSimone and Rolland are named inventors on the '728 Patent. Liquidia Technologies, Inc. is a co-owner of the '728 Patent. The University of North Carolina is a co-owner of the '728 Patent.

266. DeSimone has stated that he views patents as a driver of innovation and that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), because DeSimone personally engaged with the patenting process at a detailed level in his companies, DeSimone had an active role in the patenting process at Liquidia Technologies. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the '728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia. DeSimone approved the preparation and filing of the '728 Patent because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in the prosecution of the '728 Patent. DeSimone knew about the '728 Patent and knew what the '728 Patent disclosed.

267. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone introduced Rolland to entrepreneurship and company creation using patents, and Rolland adopted DeSimone's belief that patents play a critical role in building and growing companies and adopted DeSimone's hands-on approach to patents. On information and belief, Fed. R. Civ. Proc. 11(b)(3),

Rolland personally engaged with the patenting process for at least patents on which he was an inventor. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland would have had to approve the preparation and filing of the ‘728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia Technologies. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland approved the preparation and filing of the ‘728 Patent because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the ‘728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in the prosecution of the ‘728 Patent.

268. Rolland knew about the ‘728 Patent and knew what the ‘728 Patent disclosed.

269. The specification of the ‘963 Patent includes a reference to the ‘728 Patent in a listing of patents describing perfluoropolyether polymer materials that form a thin film or sheet of material that is flexible and can be used as the semipermeable membrane of the build plate. The specification reads, in relevant part:

> In some embodiments the build plate may be formed from a thin film or sheet of material which is flexible when separated from the apparatus of the invention … Particular materials include TEFLON AF® fluoropolymers, commercially available from DuPont. Additional materials include perfluoropolyether polymers such as described in U.S. Pat. Nos. 8,268,446; 8,263,129; 8,158,728; and 7,435,495.

‘963 Patent, 17:16-26.

270. The duty to disclose material information under 37 C.F.R. § 1.56 is not satisfied merely by referring to a patent in a list of patents in the specification. A reference has not been properly submitted for consideration under Rule 56 unless the reference is submitted to the Patent Office in the manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. The “manner prescribed” by 37 C.F.R. §§ 1.97 and 1.98 requires a compliant information disclosure statement, including a list of the information submitted for consideration, separately listing U.S. patents and U.S. patent application publications, identifying each U.S. patent by inventor, patent number, and issue date, and otherwise satisfying the timing and content requirements of §§ 1.97 and 1.98.

271. DeSimone did not submit the ‘728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. DeSimone failed to properly submit the ‘728 Patent to

the Patent Office for consideration under Rule 56.

272. Rolland did not submit the ‘728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. Rolland failed to properly submit the ‘728 Patent to the Patent Office for consideration under Rule 56.

273. The ‘963 Patent lists the ‘728 Patent in a string of patents assertedly related to perfluoropolyether polymer materials useful for constructing a build plate. The ‘963 Patent does not include the ‘728 Patent in a list of patents in the polymerizable liquids section. On information and belief, Fed. R. Civ. Proc. 11(b)(3), including the ‘728 Patent in a list of patents disclosing materials useful for the semipermeable membrane rather than a list of patents for the polymerizable liquids would lead the Examiner to believe that the ‘728 Patent was not materially relevant to the polymerizable liquids.

274. The ‘728 Patent is not cumulative to Rolland ‘133 because Rolland did not copy all the ‘728 Patent dual cure chemistry disclosure into Rolland ‘133. The ‘728 Patent has additional disclosure that is not in Rolland ‘133, which includes a blocked diisocyanate that cleaves at high temperature to expose previously blocked isocyanate. Rolland ‘133 has additional disclosure that is not in the ‘728 Patent, such as disclosure related to forming a medical or surgical device and for imparting chemical functionality to a medical or surgical device.

275. DeSimone and Rolland filed a divisional application claiming priority to the ‘728 Patent. That application issued as U.S. Patent No. 8,444,899. DeSimone never submitted the ‘899 Patent for consideration by an examiner in any of the Dual Cure patents. Rolland never submitted the ‘899 Patent for consideration by an examiner in any of the Dual Cure patents.

**ii. Rolland ‘133**

276. DeSimone did not disclose Rolland ‘133 in any IDS submitted to the Patent Office for the ‘963 Patent. Rolland did not disclose Rolland ‘133 in any IDS submitted to the Patent Office for the ‘963 Patent.

277. Rolland filed Rolland ‘133 as a nonprovisional application on November 9, 2006, claiming priority to a provisional application filed on November 9, 2005. Rolland filed the nonprovisional application for Rolland ‘133 three months after the PCT Application for the ‘728

Patent was filed. Rolland is the sole named inventor on Rolland '133. Liquidia Technologies was the owner of Rolland '133.

278. DeSimone has stated that he views patents as a driver of innovation and that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), because DeSimone personally engaged with the patenting process at a detailed level in his companies, DeSimone had an active role in the patenting process at Liquidia Technologies and approved the preparation and filing of Rolland '133. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in the prosecution of Rolland '133.

279. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew about Rolland '133 and knew what Rolland '133 disclosed.

280. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone introduced Rolland to entrepreneurship and company creation using patents, and Rolland adopted DeSimone's belief that patents play a critical role in building and growing companies and adopted DeSimone's hands-on approach to patents. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland personally engaged with the patenting process for at least patents on which he was an inventor. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland would have had to approve the preparation and filing of Rolland '133 at least because he was a named inventor and he was actively involved in the patent process at Liquidia. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland approved the preparation and filing of Rolland '133 because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for Rolland '133. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in the prosecution of Rolland '133.

281. Rolland knew about Rolland '133 and knew what Rolland '133 disclosed.

282. During prosecution of Rolland '133, the Examiner rejected claims 1–12, 28–42, 52, 53, 63, 64, and 74–81 for obviousness-type double patenting over claims 1–168 and 209–257 of co-pending Application No. 12/063,284. The '284 Application issued as the '728 Patent.

283. The Examiner stated that claims 1–12, 28–42, 52, 53, 63, 64, and 74–81 of Rolland

‘133 were "**anticipated by**" claims 1–168 and 209–257 of the '284 application (issued as the ‘728 Patent) and therefore were not patentably distinct. Non-Final Rejection mailed October 27, 2009, pages 22-23. (emphasis added). Plaintiff incorporates the October 27, 2009 Office Action here as if fully set forth here.[65]

284. Liquidia abandoned Rolland ‘133 by failing to respond to the office action.

285. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the Examiner had rejected claims of Rolland ‘133 as anticipated by the ‘728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that Rolland ‘133 was abandoned for failure to respond to the office action where the Examiner had rejected Rolland ‘133’s claims as anticipated by the ‘728 Patent.

286. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland ‘133 was rejected because its claims were anticipated by the claims of the ‘728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland ‘133 was abandoned for failure to respond to an office action in which Rolland ‘133’s claims were rejected as anticipated by claims of the ‘728 Patent.

287. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the non-statutory double patenting rejection was not surprising to DeSimone because DeSimone knew Rolland copied or enabled copying of the dual cure chemistry disclosure in Rolland ‘133 from the ‘728 Patent and attempted to claim it. The ‘728 Patent was filed by Alston & Bird LLP, which is a different firm from the firm that filed Rolland ‘133. Morgan Lewis & Bockius LLP filed Rolland ‘133. The PCT application that became the ‘728 Patent published on February 22, 2007. Rolland filed Rolland ‘133 on November 9, 2006, over three months before the PCT application published. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland or someone else at Liquidia at the direction of Rolland provided the disclosure that was copied to Morgan Lewis & Bockius for inclusion in Rolland ‘133.

288. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the non-statutory double

[65] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

patenting rejection was not surprising to Rolland because Rolland copied or instructed copying of the dual cure chemistry disclosure in Rolland '133 from the '728 Patent and attempted to claim it.

289. Rolland copied at least Sections II.A through II.E (spanning over 70 paragraphs and including four data tables and six reaction schemes), every example (Examples 1–35), and every figure (Figs. 1–16C) of Rolland '133 from the '728 Patent.

290. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland copied large sections of disclosure from the '728 Patent into Rolland '133 including at least Sections II.A through II.E (spanning over 70 paragraphs and including four data tables and six reaction schemes), every example (Examples 1–35), and every figure (Figs. 1–16C) of Rolland '133.

**iii. December 31, 2015 Information Disclosure Statement**

291. On December 31, 2015, in the '963 Patent, Sibley filed an IDS submitting nine "related or potentially related cases" that were "brought to the attention of the examiner." Plaintiff incorporates the December 31, 2015 Information Disclosure Statement here as if fully set forth here.[66] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the December 31 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the December 31 IDS. DeSimone did not disclose the '728 Patent in the December 31 IDS. Rolland did not disclose the '728 Patent in the December 31 IDS. DeSimone did not disclose Rolland '133 in the December 31 IDS. Rolland did not disclose Rolland '133 in the December 31 IDS.

**iv. January 6, 2016 Information Disclosure Statement**

292. On January 6, 2016, Sibley filed an Information Disclosure Statement submitting 66 references. Plaintiff incorporates the January 6, 2016 Information Disclosure Statement here as if fully set forth here.[67] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 6 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the

[66] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[67] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

January 6 IDS. DeSimone did not disclose the '728 Patent in the January 6 IDS. Rolland did not disclose the '728 Patent in the January 6 IDS. DeSimone did not disclose Rolland '133 in the January 6 IDS. Rolland did not disclose Rolland '133 in the January 6 IDS.

293. In the January 6 IDS, DeSimone was inventor or author for 13 references. At least five of the DeSimone references were not prior art. Plaintiff incorporates the 13 references submitted with the January 6, 2016 Information Disclosure Statement here as if fully set forth here.[68] In the January 6 IDS, Rolland was inventor or author for 6 references. At least five of the Rolland references were not prior art. A listing of a portion of the non-prior art references that DeSimone and Rolland submitted include:

294. International application publication WO2015/200201, naming DeSimone, Rolland, and others as inventors. WO '201 is the publication of the international application that was nationalized in the U.S. and issued as the '142 Patent, the '164 Patent, and the '868 Patent. WO '201 shares the same six provisional applications as priority applications with the '963 Patent and is therefore not prior art to the '963 Patent. Plaintiff incorporates WO '201 here as if fully set forth here.[69]

295. International application publication WO2015/200189, naming DeSimone, Rolland, and others as inventors. WO '189 shares the same six provisional applications as priority applications with the '963 Patent and is therefore not prior art to the '963 Patent. Plaintiff incorporates WO '189 here as if fully set forth here.[70]

296. International application publication WO2015/200173, naming DeSimone, Rolland, and others as inventors. WO '173 is the publication of the international application that was nationalized in the U.S. and issued as the '963 Patent and the '342 Patent. WO '173 is the same application as that issued as the '963 Patent and is therefore not prior art to the '963 Patent. Plaintiff incorporates WO '173 here as if fully set forth here.[71]

297. International application publication WO2015/200179, naming DeSimone,

---

[68] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[69] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[70] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[71] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Rolland, and others as inventors. WO '179 is the publication of the international application that was nationalized in the U.S. and issued as the '606 Patent, the '066 Patent, and the '880 Patent, and the '895 Patent. WO '179 shares the same six provisional applications as priority applications with the '963 Patent and is therefore not prior art to the '963 Patent. Plaintiff incorporates WO '173 here as if fully set forth here.[72]

298. Tumbleston *et al.* "Continuous Liquid Interface Production of 3D Objects," Science, 347 (6228):1349-1352, 2015 (hereinafter "Tumbleston")[73]. Plaintiff incorporates Tumbleston here as if fully set forth here.[74] The Tumbleston reference - Tumbleston *et al.*, "Continuous Liquid Interface Production of 3D Objects," *Science*, 347(6228):1349-1352 (2015) - was submitted to the Patent Office in two separate Information Disclosure Statements. The first IDS, submitted January 6, 2016, cited the reference as a single entry, identified by the article's bibliographic information and a URL to the abstract page of the article. The second IDS, which is described below, was submitted January 27, 2016. It cited the reference as two separate entries: (1) the main article, identified with its publication date (March 16, 2015) and acceptance date (February 3, 2015), and (2) its Supplementary Materials, listed as an independent citation. Because the Supplementary Materials were listed separately only in the second IDS, and the first IDS's citation appears limited to the article's abstract page, the two IDSs do not appear to be fully coextensive. The main article is common to both, but the Supplementary Materials were separately made of record only in the second IDS. The Tumbleston reference, in either form, is not prior art. When used herein, "Tumbleston" refers to the main article. DeSimone and Rolland were listed as authors for Tumbleston. The submitted manuscript and submitted supplementary materials for Tumbleston were included as Appendices to U.S. Provisional Application No. 62/129187, filed on March 6, 2015. The '963 Patent claims priority to the '187 PROV, and therefore, Tumbleston and its supplementary materials are not prior art to the '963 Patent. Plaintiff incorporates Tumbleston

[72] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[73] http://www.sciencemag.org/content/347/6228/1349.abstract (last accessed on June 09, 2026)
[74] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

and its supplementary materials here as if fully set forth here.[75]

299. In the January 6 IDS, Sibley submitted U.S. Application Publication No. 2009/0061152, naming DeSimone, Rolland, and others as inventors. The ‘152 Publication, issued as U.S. Patent No. 8,420,124, is entitled “Methods for fabricating isolated micro- and nano-structures using soft or imprint lithography,” and is owned by the University of North Carolina. Plaintiff incorporates the ‘152 Publication here as if fully set forth here.[76]

300. The ‘152 Publication discloses the use of fluorinated elastomer-based materials, in particular perfluoropolyether (PFPE)-based materials, in high-resolution soft or imprint lithographic applications, such as micro- and nanoscale replica molding. It discloses a method for producing free-standing, isolated nanostructures of any shape using soft or imprint lithography technique. Perfluoropolyether chemistry was important underlying chemistry in the founding of Liquidia Technologies.

301. While the ‘152 Publication discloses perfluoropolyethers, it does not disclose dual cure chemistry applications in the context of perfluoropolyethers like Rolland ‘133 or the ‘728 Patent. Rolland ‘133 uses the term “dual cure” 45 times. The ‘728 Patent uses the term “dual cure” 48 times. The ‘152 Publication has no instances of the term “dual cure.”

302. DeSimone knew about Rolland ‘133 and knew what was disclosed in it. DeSimone knew about the ‘728 Patent and knew what was disclosed in it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone directed Sibley to submit the ‘152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone intentionally submitted to the Patent Office a patent document that did not include a dual cure chemistry disclosure even though patent documents existed that included dual cure chemistry disclosure and he knew about them. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed the ‘152 Publication while intentionally withholding

[75] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

[76] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Rolland '133 and the '728 Patent from the Patent Office.

303. Rolland knew about Rolland '133 and knew what was disclosed in it. Rolland knew about the '728 Patent and knew what was disclosed in it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland directed Sibley to submit the '152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland intentionally submitted to the Patent Office a patent document that did not include a dual cure chemistry disclosure even though patent documents existed that included dual cure chemistry disclosure and he knew about them. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed the '152 Publication while intentionally withholding Rolland '133 and the '728 Patent from the Patent Office.

**v. January 26, 2016 Information Disclosure Statement**

304. On January 26, 2016, Sibley filed an Information Disclosure Statement, submitting 14 references. Plaintiff incorporates the January 26, 2016 Information Disclosure Statement here as if fully set forth here.[77] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 26 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 26 IDS. DeSimone did not disclose the '728 Patent in the January 26 IDS. Rolland did not disclose the '728 Patent in the January 26 IDS. DeSimone did not disclose Rolland '133 in the January 26 IDS. Rolland did not disclose Rolland '133 in the January 26 IDS.

**vi. January 27, 2016 Information Disclosure Statement**

305. On January 27, 2016, Sibley filed six Information Disclosure Statements. Defendant submitted a total of 206 references with the six IDSs submitted on January 27. Plaintiff incorporates the January 27, 2016 Information Disclosure Statements here as if fully set forth here.[78] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of each of the January 27 IDS. On information and belief, Fed. R. Civ.

---

[77] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[78] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 27 IDS. DeSimone did not disclose the '728 Patent in the January 27 IDS. Rolland did not disclose the '728 Patent in the January 27 IDS. DeSimone did not disclose Rolland '133 in the January 27 IDS. Rolland did not disclose Rolland '133 in the January 27 IDS.

306. In the January 27 IDS, DeSimone was an author for two references. Plaintiff incorporates the two references DeSimone authored here as if fully set forth here.[79] In the January 27 IDS, Rolland was an author for two references. Plaintiff incorporates the two references Rolland authored here as if fully set forth here.[80] The two references having DeSimone and Rolland as authors were not prior art. The references were the main article for Tumbleston and its Supplementary Materials. As explained above, the Tumbleston reference was submitted to the Office in two separate Information Disclosure Statements. The first IDS (submitted January 6, 2016) cited the reference as a single entry, identified by the article's bibliographic information and a URL to the abstract page of the article. The second IDS (submitted January 27, 2016) cited the reference as two separate entries: (1) the main article, identified with its publication date (March 16, 2015) and acceptance date (February 3, 2015), and (2) its Supplementary Materials, listed as an independent citation. Because the Supplementary Materials were listed separately only in the second IDS, and the first IDS's citation appears limited to the article's abstract page, the two IDSs appear to be not fully coextensive. The main article is common to both, but the Supplementary Materials were separately made of record only in the second IDS. The submitted manuscript and submitted supplementary materials for Tumbleston were included as Appendices to U.S. Provisional Application No. 62/129,187, filed on March 6, 2015. Plaintiff incorporates the '187 Application, with appendices, here as if fully set forth here.[81] The '963 Patent claims priority to the '187 Application, and therefore, Tumbleston and its supplementary materials are not prior art to the '963 Patent.

---

[79] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[80] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[81] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**vii. February 22, 2016 Information Disclosure Statement**

307. On February 22, 2016, Sibley filed an Information Disclosure Statement submitting 2 references. Plaintiff incorporates the February 22, 2016 Information Disclosure Statement here as if fully set forth here.[82] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 22 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 22 IDS. DeSimone did not disclose the '728 Patent in the February 22 IDS. Rolland did not disclose the '728 Patent in the February 22 IDS. DeSimone did not disclose Rolland '133 in the February 22 IDS. Rolland did not disclose Rolland '133 in the February 22 IDS.

308. In the February 22 IDS, one of the submitted references was the DeSimone TED presentation filmed on March 16, 2015, entitled "What if 3D Printing was 100x Faster?" The '963 Patent claims priority to six provisional applications filed between June 23, 2014, and March 16, 2015. Thus, the priority date for the '963 Patent is on or before the filming date of the TED presentation. Plaintiff incorporates What if 3D Printing was 100x Faster? here as if fully set forth here.[83]

**viii. March 23, 2016 Information Disclosure Statement**

309. On March 23, 2016, Sibley filed an Information Disclosure Statement submitting 4 references. Plaintiff incorporates the March 23, 2016 Information Disclosure Statement here as if fully set forth here.[84] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the March 23 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the March 23 IDS. DeSimone did not disclose the '728 Patent in the March 23 IDS. Rolland did not disclose the '728 Patent in the March 23 IDS. DeSimone did not disclose Rolland '133 in the March 23 IDS. Rolland did not disclose Rolland '133 in the March 23 IDS.

---

[82] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[83] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[84] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**ix. April 29, 2016 Information Disclosure Statement**

310. On April 29, 2016, Sibley filed an Information Disclosure Statement submitting 11 references. Plaintiff incorporates the April 29, 2016 Information Disclosure Statement here as if fully set forth here.[85] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the April 29 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the April 29 IDS. DeSimone did not disclose the '728 Patent in the April 29 IDS. Rolland did not disclose the '728 Patent in the April 29 IDS. DeSimone did not disclose Rolland '133 in the April 29 IDS. Rolland did not disclose Rolland '133 in the April 29 IDS.

**x. May 17, 2016 Office Action**

311. On May 17, 2016, the Examiner mailed an office action to Defendant. Plaintiff incorporates the May 17, 2016 Office Action here as if fully set forth here.[86] The Examiner rejected claims 1–13 and 17–23 under 35 U.S.C. 103 over El-Siblani *et al.* (US 8,372,330) in view of Patel *et al.* (US 2007/0205528); rejected claims 6, 18–20, and 22 under 35 U.S.C. 112(b) as indefinite; and objected to claims 14–16 as depending from a rejected base claim but indicated allowable if rewritten in independent form.

312. The Examiner stated that the '330 Patent discloses a method of forming a three-dimensional object using an apparatus having all the apparatus elements recited in the claims but does not disclose a liquid resin having the elements of the polymerizable liquid. The Examiner cited the '528 Publication for disclosing the polymerizable liquid because the '528 Publication discloses making an article from a photocurable composition having two curable components that are different.

**xi. August 16, 2016 Amendment And Response**

313. On August 16, 2016, Sibley filed a response and amendment on behalf of Defendant. Plaintiff incorporates the August 16, 2016 Amendment And Response here as if fully

---

[85] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[86] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

set forth here.[87] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the August 16 Amendment and Response. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the August 16 Amendment and Response. Defendant amended independent claim 1 to require "heating and/or microwave irradiating" the second solidifiable component "subsequent to" the irradiating/advancing step; rewrote claims 14–16 in independent form by incorporating claims 1 and 13; cancelled claim 22, amended claims 18–20 to fix antecedent basis to address the §112 rejection; and added new claims 24–25 directed to polymerizable liquids further comprising thermoplastic particles.

314. Defendant argued that the first and second components of the ‘528 Publication are photocurable components and thus the ‘528 Publication does not disclose a process wherein the second solidifiable component is solidified using heating or microwave irradiating.

315. Defendant explained:

> the invention of amended claim 1 concerns a process in which the **first component** of the polymerizable liquid is **cured by light** in a three-dimensional, additive manufacturing, process, to create a three dimensional intermediate object, and then that object is **subsequently further cured by heating** or microwave irradiating ( or a combination thereof) to further cure the second component in the previously formed three-dimensional object.

Office Action Response mailed August 16, 2016, page 10 (emphasis added).

### xii. August 16, 2016 Information Disclosure Statement

316. On August 16, 2016, Sibley filed an Information Disclosure Statement submitting 4 references contemporaneously with the response. Plaintiff incorporates the August 16, 2016 Information Disclosure Statement here as if fully set forth here.[88] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the August 16 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the August 16 IDS. DeSimone did not disclose the ‘728 Patent in the August 16 IDS. Rolland did not disclose the ‘728 Patent in the August 16 IDS. DeSimone did not

[87] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[88] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

disclose Rolland '133 in the August 16 IDS. Rolland did not disclose Rolland '133 in the August 16 IDS.

### xiii. September 13, 2016 Office Action

317. On September 13, 2016, the Examiner mailed another Office Action. The Examiner rejected all pending claims (claims 1–6, 8, 9, 11, 13–21, and 23–25) on the ground of provisional non-statutory double patenting over co-pending Application No. 14/977,876. The Examiner stated a timely terminal disclaimer over the '876 application "would place the instant application in condition for allowance." Plaintiff incorporates the September 13, 2016 Office Action here as if fully set forth here.[89]

### xiv. October 6, 2016 Information Disclosure Statement

318. On October 6, 2016, Sibley filed an Information Disclosure Statement submitting 4 references. Plaintiff incorporates the October 6, 2016 Information Disclosure Statement here as if fully set forth here.[90] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the October 6 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the October 6 IDS. DeSimone did not disclose the '728 Patent in the October 6 IDS. Rolland did not disclose the '728 Patent in the October 6 IDS. DeSimone did not disclose Rolland '133 in the October 6 IDS. Rolland did not disclose Rolland '133 in the October 6 IDS.

319. In the October 6 IDS, DeSimone was author for the published article Janusziewicz, Rima *et al.* "Layerless Fabrication With Continuous Liquid Interface Production," PNAS Early Edition, September 2016, 6 Pages (hereinafter "Layerless Fabrication"). Plaintiff incorporates Layerless Fabrication here as if fully set forth here.[91] The '963 Patent claims priority to six provisional applications filed between June 23, 2014, and March 16, 2015. The priority date for the '963 Patent is before the publication date of Layerless Fabrication so Layerless Fabrication is not prior art.

---

[89] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[90] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[91] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

320. On October 7, 2016, Sibley filed an electronic terminal disclaimer on behalf of owner Carbon3D, Inc. over pending Application No. 14/977,876 to overcome the provisional double patenting rejection. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the October 7 TD. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the October 7 TD. Plaintiff incorporates the October 7, 2016 Terminal Disclaimer here as if fully set forth here.[92]

**xv. October 10, 2016 Response**

321. On October 10, 2016, Sibley filed a Response to the September 13, 2016, office action on behalf of Defendant. Plaintiff incorporates the Response here as if fully set forth here.[93] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the October 10 Response. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the October 10 Response. Defendant made no amendments or arguments. Sibley pointed out that a terminal disclaimer relative to the claims of Application No. 14/977,876 had been filed.

**xvi. October 21, 2016 Information Disclosure Statement**

322. On October 21, 2016, Sherry Murphy (USPTO Registration No. 53359), with Myers Bigel, P.A. filed an IDS submitting 38 references. Plaintiff incorporates the October 21, 2016 Information Disclosure Statement here as if fully set forth here.[94] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the October 21 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the October 21 IDS. DeSimone did not disclose the ‘728 Patent in the October 21 IDS. Rolland did not disclose the ‘728 Patent in the October 21 IDS. DeSimone did not disclose Rolland ‘133 in the October 21 IDS. Rolland did not disclose Rolland ‘133 in the October 21 IDS.

---

[92] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[93] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[94] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**xvii. October 26, 2016 Information Disclosure Statement**

323. On October 26, 2016, Stephen Petroski (USPTO Registration No. 64947), with Myers Bigel, P.A. filed an IDS with 5 references. Plaintiff incorporates the October 26, 2016 Information Disclosure Statement here as if fully set forth here.[95] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the October 26 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the October 26 IDS. DeSimone did not disclose the '728 Patent in the October 26 IDS. Rolland did not disclose the '728 Patent in the October 26 IDS. DeSimone did not disclose Rolland '133 in the October 26 IDS. Rolland did not disclose Rolland '133 in the October 26 IDS.

**xviii. November 10, 2016 Information Disclosure Statement**

324. On November 10, 2016, Murphy submitted an IDS with 4 references. Plaintiff incorporates the November 10, 2016 Information Disclosure Statement here as if fully set forth here.[96] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the November 10 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the November 10 IDS. DeSimone did not disclose the '728 Patent in the November 10 IDS. Rolland did not disclose the '728 Patent in the November 10 IDS. DeSimone did not disclose Rolland '133 in the November 10 IDS. Rolland did not disclose Rolland '133 in the November 10 IDS.

**xix. January 25, 2017 Office Action**

325. On January 25, 2017, the Examiner mailed an Office action. Plaintiff incorporates the January 25, 2017 Office Action here as if fully set forth here.[97] The Examiner allowed claims 1–6, 8, 9, 11, 13, 17–21, 23, and 24 and rejected claims 14–16 and 25 under 35 U.S.C. 103 over European Patent Application 484,086 in view of the '528 Publication. Plaintiff incorporates the '086 Application here as if fully set forth here.[98]

---

[95] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[96] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[97] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[98] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**xx. February 15, 2017 Amendment And Response**

326. On February 15, 2017, Murphy filed a Response and Amendment with an IDS, cancelling rejected claims 14–16 and 25 "without substantive comment on their rejection in order to expedite issuance." Defendant amended claim 11 into independent form and added claims 26–38, resulting in 2 independent and 30 total claims. Plaintiff incorporates the February 15, 2017 Amendment And Response here as if fully set forth here. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 15 Amendment. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 15 Amendment.

**xxi. February 15, 2017 Information Disclosure Statement**

327. In the February 15 IDS, Murphy submitted 1 reference – the Notice of Allowance from co-pending Application No. 14/977,876. Plaintiff incorporates the February 15, 2017 Information Disclosure Statement here as if fully set forth here; Plaintiff incorporates Application No. 14/977,876 here as if fully set forth here; Plaintiff incorporates the Notice of Allowance in the '876 Application here as if fully set forth here.[99] The Notice of Allowance included IDSs signed by the Examiner in that case, which included citation of 47 references. Plaintiff incorporates the IDSs with the 47 references signed by the Examiner in the '876 Application here as if fully set forth here.[100] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 15 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 15 IDS. DeSimone did not disclose the '728 Patent in the February 15 IDS. Rolland did not disclose the '728 Patent in the February 15 IDS. DeSimone did not disclose Rolland '133 in the February 15 IDS. Rolland did not disclose Rolland '133 in the February 15 IDS. In the February 15 IDS, DeSimone was author for one reference. It was not prior art.

**xxii. February 17, 2017 Notice Of Allowance**

328. On February 27, 2017, The Examiner mailed a Notice of Allowance. The Examiner

[99] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[100] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

allowed claims 1–6, 8, 9, 11, 13, 17–21, 23, 24, and 26–38 (renumbered 1–30). Total claims allowed were 30. Plaintiff incorporates the February 17, 2017 Notice of Allowance here as if fully set forth here.[101]

### xxiii. April 11, 2017 Information Disclosure Statement after Notice of Allowance

329. On April 11, 2017, Laura Kelley (USPTO Registration No. 48441), of Myers Bigel, P.A. filed a Request for Continued Examination and a post-allowance IDS submitting 29 references. Plaintiff incorporates the April 11, 2017 Information Disclosure Statement and RCE here as if fully set forth here.[102] Kelley submitted the RCE with IDS after Notice of Allowance to comply with the duty to disclose under Rule 56. Despite filing the RCE with IDS after Notice of Allowance, DeSimone and Rolland still failed to disclose Rolland '133 and the '728 Patent.

330. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the April 11 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the April 11 IDS. DeSimone did not disclose the '728 Patent in the April 11 IDS. Rolland did not disclose the '728 Patent in the April 11 IDS. DeSimone did not disclose Rolland '133 in the April 11 IDS. Rolland did not disclose Rolland '133 in the April 11 IDS.

331. In the April 11 IDS, DeSimone was a named inventor for five references, US2015/0097316, US2015/0072293, EP2956823, WO2016/145050, and WO2015200173. Plaintiff incorporates the five references here as if fully set forth here.[103] Rolland was a named inventor for two references that overlapped with DeSimone's references, WO2016/145050 and WO2015200173.

332. International application publication WO2016/145050 is not prior art for the dual cure chemistry elements of the '963 Patent because the priority date for '050 Publication is its provisional application filing date of March 10, 2015, and the priority date for the dual cure chemistry elements of the '963 Patent is the provisional application filing date of January 9, 2015,

---

[101] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[102] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[103] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

which is earlier than March 10, 2015.

333. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland and DeSimone directed Myers Bigel attorneys to submit International Application Publication WO2016/145050 to the Patent Office. Rolland and DeSimone are the named inventors on the ‘050 Publication.

334. Like Rolland ‘133, the ‘050 Publication discloses a polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component. The ‘050 Publication, however, is not prior art to the ‘963 Patent.

335. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland directed that the ‘050 Publication - a reference that was not prior art to the Dual Cure elements of the claims of the ‘963 Patent – be submitted to the Patent Office, while failing to submit Rolland ‘133 or the ‘728 Patent.

336. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone directed that the ‘050 Publication - a reference that was not prior art to the Dual Cure elements of the claims of the ‘963 Patent – be submitted to the Patent Office, while failing to submit Rolland ‘133 or the ‘728 Patent.

337. WO2015200173 had been previously submitted in the January 6 IDS. WO ‘173, naming DeSimone, Rolland, and others as inventors is the publication of the international application that was nationalized in the U.S. and issued as the ‘963 Patent and the ‘342 Patent. WO ‘173 is the same application as that issued as the ‘963 Patent and is therefore not prior art to the ‘963 Patent.

338. US2015/0097316 is the Application Publication of Application No. 14/570,591, which issued as U.S. Patent No. 9,216,546. Defendant owns the ‘316 Publication. DeSimone and other founders of Defendant are named inventors on the ‘316 Publication. The ‘316 Publication shares priority with the ‘601 Patent and the ‘181 Patent, both of which are in the CLIP family of the Asserted Patents. Unlike Rolland ‘133 and the ‘728 Patent, the ‘316 Publication does not have any disclosure of dual cure chemistry.

339. DeSimone was a named inventor on the ‘316 Publication, and DeSimone, on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the ‘316 Publication failed to

disclose anything about dual cure chemistry.

340. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed patent references on which he was an inventor but did not disclose dual cure chemistry and intentionally withheld the ‘728 Patent, for which DeSimone was also a named inventor, and which DeSimone knew disclosed dual cure chemistry.

341. US2015/0072293 is the Application Publication of Application No. 14/456,270, which issued as US Patent No. 9,360,757. Defendant owns the ‘293 Publication. DeSimone and other founders of Defendant are named inventors on the ‘293 Publication. The ‘293 Publication is the great, great grandparent application to the ‘073 Patent and the great grandparent to the ‘938 Patent, both of which are in the CLIP family of the Asserted Patents. Unlike Rolland ‘133 and the ‘728 Patent, the ‘293 Publication does not have any disclosure of dual cure chemistry.

342. DeSimone was a named inventor on the ‘293 Publication, and DeSimone knew that the ‘293 Publication failed to disclose anything about dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed patent references on which he was an inventor but did not disclose dual cure chemistry and intentionally withheld the ‘728 Patent, for which DeSimone was also a named inventor, and which DeSimone knew disclosed dual cure chemistry.

**xxiv. The ‘728 Patent And Rolland ‘133 Disclose Elements Used To Allow Claims**

343. On April 28, 2017, the Examiner mailed a Notice of Allowance allowing claims 1-6, 8, 9, 11, 13, 17-21, 23, 24 and 26-38 (renumbered as 1-30). Plaintiff incorporates the April 28, 2017 Notice Of Allowance here as if fully set forth here.[104]

344. The Examiner’s Statement of Reasons for Allowance stated:

> the prior art of record … does not disclose, teach or suggest … a polymerizable liquid mixture … comprising a light polymerizable first component and a second component that **remains a liquid and is carried** in the formed polymer scaffold formed by irradiating the first component, with the second component being **subsequently heated** or microwave irradiated or both to form the final three dimensional object.

[104] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Notice of Allowability, dated April 28, 2017, page 2 (emphasis added).

345. Claim 1 of the '963 Patent recites, in part, a method of forming a three-dimensional object, comprising: filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object.

346. The Examiner was stating that the cited prior art lacked disclosure of the polymerizable liquid elements of at least claim 1 of the '963 Patent.

347. The '728 Patent discloses the elements the Examiner identified as missing from the cited prior art. The '728 Patent discloses a polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object.

348. DeSimone did not disclose the '728 Patent to the Patent Office during prosecution of the '963 Patent.

349. Rolland did not disclose the '728 Patent to the Patent Office during prosecution of the '963 Patent.

350. Rolland '133 discloses the elements the Examiner identified as missing from the

cited prior art. Rolland ‘133 discloses a polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object.

351. DeSimone did not disclose Rolland ‘133 to the Patent Office during prosecution of the ‘963 Patent.

352. Rolland did not disclose Rolland ‘133 to the Patent Office during prosecution of the ‘963 Patent.

353. On June 13, 2017, U.S. Patent No. 9,676,963 issued. Between December 22, 2015, when Defendant filed the application that was issued as the ‘963 Patent, and June 13, 2017, when the ‘963 Patent issued, Defendant submitted, through its attorneys at Myers Bigel P.A., over 400 references to the Patent Office for consideration during prosecution of the ‘963 Patent. Even though Defendant submitted over 400 references, and DeSimone was the inventor or author of some of the 400 references, and Defendant submitted references that were not prior art, DeSimone never submitted the ‘728 Patent, which DeSimone knew about, knew was but-for material, and knew was prior art, for consideration during prosecution of the ‘963 Patent. DeSimone never submitted Rolland ‘133, which DeSimone knew about, knew was but-for material, and knew was prior art, for consideration during prosecution of the ‘963 Patent.

356. Even though Defendant submitted over 400 references, and Rolland was the inventor or author of some of the 400 references, and Defendant submitted references that were not prior art, Rolland never submitted the ‘728 Patent, which Rolland knew about, knew was but-for material, and knew was prior art, for consideration during prosecution of the ‘963 Patent. Rolland never submitted Rolland ‘133, which Rolland knew about, knew was but-for material, and

knew was prior art, for consideration during prosecution of the '963 Patent.

**b. DeSimone's Inequitable Conduct With Respect To The '728 Patent**

357. DeSimone knew about the '728 Patent because he is a named inventor on the '728 Patent. Additionally, DeSimone co-founded Liquidia Technologies and was an officer at Liquidia Technologies when the '728 Patent was prepared and prosecuted. DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the application issued as the '728 Patent so knew what the '728 Patent disclosed.

358. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the '728 Patent was prior art to the '963 Patent.

359. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the '728 Patent to the claims of the '963 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

360. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the '728 Patent to the claims of the '963 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the '728 Patent and actively involved in preparation and prosecution of the '963 Patent, and DeSimone is a named inventor on the '963 Patent so he knew what is described in the specification and he knew what was being claimed in the '963 Patent.

361. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the '728 Patent was material to the patentability of at least one claim of the '963 Patent and he directed, reviewed, and supervised the submission of over 400 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

362. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the

'728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the '728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed the '728 Patent to the attorneys at Myers Bigel.

363. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '963 Patent.

364. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

**c. Rolland's Inequitable Conduct With Respect To The '728 Patent**

365. Rolland knew what the '728 Patent disclosed because he was a named inventor.

366. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the '728 Patent was prior art to the '963 Patent.

367. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to patentability for at least one claim of the '963 Patent because he is a named inventor on the '728 Patent and the '963 Patent so he knew and understood what was disclosed in the '728 Patent and what was claimed in the '963 Patent.

368. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '963 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent.

369. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '963 Patent and he

directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

370. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the ‘728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the ‘728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

371. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the ‘728 Patent.

372. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the ‘728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the ‘963 Patent.

**d. The ‘728 Patent Is But-For Material To The ‘963 Patent**

373. The ‘728 Patent discloses the elements the Examiner stated were missing from the cited prior art during prosecution of the ‘963 Patent.

374. The ‘728 Patent discloses dual cure elements recited in at least claim 1 of the ‘963 Patent.

375. The ‘728 Patent discloses every element the Examiner stated the cited prior art lacked in the Notice of Allowance for the ‘963 Patent and thus, a reasonable examiner would have rejected at least claim 1 of the application issued as the ‘963 Patent in view of the ‘728 Patent.

376. The ‘728 Patent, in Example 34, discloses a dual-cure resin composition comprising a UV-curable component blended with a thermally curable component. Upon UV

irradiation, the UV-curable component in the resin composition cures to form a solidified network, while the thermally curable component remains "entangled but unreacted" in that network. Upon subsequent heating, the thermally curable component cures within the partially cured network, thereby forming a three-dimensional object.

377. The Patent Office relied on disclosure copied from the '728 Patent to reject claim 28 of Application No. 15/963,550 as anticipated. Claim 28 of the '550 Application is nearly identical to claim 1 of the '963 Patent. The '550 Application shares priority, inventors, specification, and Applicant with the '963 Patent.

378. The table below shows that claim 28 of the '550 Application is nearly identical to claim 1 of the '963 Patent. The differences do not alter the substance of the claimed method. They merely identify a dental-device field of use.

| **U.S. APP. 15/963,550, CLAIM 28 COMPARED TO THE '963 PATENT, CLAIM 1** | |
|---|---|
| **U.S. App 15/963,550** | **U.S. 9,676,963** |
| **28**. A method of forming a three-dimensional object, wherein said three-dimensional object is a dental mold, dental implant or dental aligner, comprising: | **1.** A method of forming a three-dimensional object, comprising: |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween | (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and | (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and |
| (ii) a second solidifiable component that is different from said first component | (ii) a second solidifiable component that is different from said first component; |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and | (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and |
| also advancing said carrier away from said build surface to form a three-dimensional | also advancing said carrier away from said build surface to form a three-dimensional |

| | |
|---|---|
| intermediate having a shape of said dental mold, dental implant or dental aligner | intermediate having the same shape as, or a shape to be imparted to, |
| said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, second solidifiable component in said three-dimensional intermediate to form said dental mold, dental implant or dental aligner. | (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object. |

379. The comparison of U.S. App. No. 15/963,550, Claim 28 to the '963 Patent, Claim 1 shows that the claims are nearly identical. In the table, common language is underlined. The '728 Patent discloses the language common to Claim 28 of the '550 Application and Claim 1 of the '963 Patent. In the final limitations, a "dental mold, dental implant or dental aligner" in the '550 Application is a "three-dimensional object" in the '963 Patent. The '728 Patent also discloses elements in claim 1 of the '963 Patent that differ from elements in Claim 28 of the '550 Application. The '728 Patent discloses a method of forming a three-dimensional structure. 123:32-33.

380. The '728 Patent is material to the patentability of a claim of the '963 Patent because claim 1 of the '963 Patent is nearly identical to a claim that was rejected as being anticipated by disclosure copied from the '728 Patent.

381. Applying the broadest reasonable interpretation and a preponderance-of-the-evidence standard, the Patent Office would not have allowed claim 1 had it been aware of the '728 Patent in combination with the prior art already used by the Examiner to reject claim 1 during prosecution because the '728 Patent discloses every element of the polymerizable liquid in claim 1.

382. As shown in the claim chart below, the '728 Patent combined with the '330 Patent (used by the Examiner during prosecution of the '963 Patent) discloses every limitation of claim 1 of the '963 Patent. Defendant did not dispute the Examiner's characterization of the '330 Patent

during prosecution.

| U.S. PATENT NO. 9,676,963 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 9,676,963 CLAIM NO. 1** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| A method of forming a three-dimensional object, comprising: | The '728 Patent discloses "A method of forming a three-dimensional object"<br><br>The '728 Patent discloses a method for making a three-dimensional object.<br><br>'728 Patent, 1:30-33. |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween; | The '330 Patent discloses "providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween"<br><br>The '330 Patent discloses a build platform 74 as a carrier and a solidification substrate 79a with an elastomeric translucent layer 80a as an optically transparent member having a build surface, and the build region between the carrier and the build surface.<br><br>'330 Patent, Figs. 2A & 2B, 3, 10:48 - 11:55, 12:46-56. |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; | The '728 Patent discloses "filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component;"<br><br>The '728 Patent discloses filling a master template that serves as a build region with a polymerizable liquid mixture comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component that is different from the first component.<br><br>'728 Patent, 143:49-65. |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer | The '728 Patent discloses "irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form |

| U.S. PATENT NO. 9,676,963 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 9,676,963 CLAIM NO. 1** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form;"<br><br>The '728 Patent disclose UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold). The chain-extended PFPE diisocyanate and PFPE tetrol (the thermal curing second component) are physically entangled in an uncured state in the rubbery photocured matrix.<br><br>'728 Patent, 143:49-144:28.<br><br>The '330 Patent discloses projecting solidification energy through the transparent solidification substrate 79a to polymerize the solidifiable material 92 to form a three-dimensional object 78 and moving the build platform 74 upward away from the solidification substrate 79a to allow the object 78 being formed to continue to grow according to the pattern being projected to the build region.<br><br>'330 Patent,13:64-14:20. |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object. | The '728 Patent discloses "subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object."<br><br>The '728 Patent discloses heating the thermally curable material physically entangled in the stacked layers of photocured matrix material to form the three-dimensional microfluidic device.<br><br>'728 Patent, 143:65 – 144:29. |

383. The claim chart comparing Claim 1 of the '963 Patent to disclosure in the '330 Patent and the '728 Patent shows that the '330 Patent discloses every apparatus element of claim 1

and that the ‘728 Patent discloses every element of the polymerizable liquid. Together, the ‘728 Patent and the ‘330 Patent disclose every element of claim 1 of the ‘963 Patent. The ‘728 Patent and the ‘330 Patent are but-for material to at least claim 1 of the ‘963 Patent.

384. In the May 17, 2016 Office Action, the Examiner in the ‘963 Patent, who is presumed to be reasonable, concluded that the ‘330 Patent discloses every apparatus element of claim 1 of the ‘963 Patent. The ‘330 Patent discloses a build platform that serves as a carrier and a solidification substrate with an elastomeric translucent layer that serves as an optically transparent member having a build surface. The region between the build platform and the solidification substrate serves as the build region between the carrier and the build surface. Defendant never argued against or contradicted the Examiner’s conclusion related to the ‘330 Patent. Defendant never amended the apparatus elements of claim 1 to distinguish them from the disclosure of the ‘330 Patent. The apparatus elements in claim 1 of the ‘963 Patent are the same apparatus elements rejected by the Examiner using the ‘330 Patent.

385. The ‘728 Patent discloses a polymerizable liquid having all the elements recited in claim 1 of the ‘963 Patent. In Example 34, the ‘728 Patent discloses filling a master template that serves as a build region with a polymerizable liquid mixture comprising chain-extended perfluoropolyether (PFPE) dimethacrylate as the UV curing first component and a chain-extended PFPE diisocyanate and a PFPE tetrol as the thermal curing second component that is different from the first component. The chain-extended PFPE is a fluoropolymer chain made by using a diisocyanate linker to join shorter PFPE chains together. The diisocyanate linker has an isocyanate group on each tip. Each isocyanate group bonds to a hydroxyl group on the ends of the shorter PFPE chains to form a urethane bond. The end tips of the extended PFPE chain are capped with methacrylate-containing diisocyanate. The isocyanate group of the methacrylate-containing diisocyanate attaches to the end tip of the extended chain and the methacrylate group is left free to cross-link and make the chain-extended PFPE UV-hardenable. The methacrylate ends on the chain-extended PFPE crosslink with other methacrylate ends when the polymer composition is exposed to UV radiation. This is the light polymerizable liquid first component that forms the three-dimensional intermediate. The chain-extended PFPE diisocyanate and PFPE tetrol remain

uncured after exposure to UV radiation. They are physically entangled in an uncured state in the rubbery-like photocured matrix. They are the second solidifiable component carried in the scaffold formed by the cross-linked portions of the chain-extended PFPE in unsolidified or uncured form. The chain-extended PFPE diisocyanate is a fluoropolymer chain built by linking shorter PFPE chains together with a diisocyanate. When forming the PFPE diisocyanate, the amounts of ingredients are added in a ratio that will ensure that the resulting polymer chain is capped with isocyanate groups. The PFPE tetrol is a single PFPE chain (not chain-extended) that carries four total hydroxyl groups - two reactive hydroxyl groups (–OH) at each end. When the stacked layers are thermally cured, the isocyanate ends of the PFPE diisocyanate react with the hydroxyl ends of the PFPE tetrol to form urethane bonds tying the chains into a mechanically stable network that serve as the three-dimensional object in claim 1 of the ‘963 Patent.

386. The ‘728 Patent discloses a mixture comprising a light polymerizable first component (chain-extended PFPE dimethacrylate) and a second component (chain-extended PFPE diisocyanate and a PFPE tetrol) that remains a liquid and is carried in the formed polymer scaffold formed by irradiating the first component, with the second component being subsequently heated or microwave irradiated or both to form the final three dimensional object.

387. In the Notice of Allowance for the ‘963 Patent, the Examiner stated:

> the prior art of record … does not disclose, teach or suggest … a polymerizable liquid mixture … comprising a light polymerizable first component and a second component that **remains a liquid and is carried** in the formed polymer scaffold formed by irradiating the first component, with the second component being **subsequently heated** or microwave irradiated or both to form the final three dimensional object.

Notice of Allowability, dated April 28, 2017, page 2 (emphasis added).

388. Claim 1 of the ‘963 Patent recites, in part, a method of forming a three-dimensional object, comprising: filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-

dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object.

389. The ‘728 Patent discloses filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object.

**e. DeSimone’s Inequitable Conduct With Respect To Rolland ‘133**

390. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew about Rolland ‘133 because he co-founded Liquidia Technologies and was an officer at Liquidia Technologies when Rolland ‘133 was prepared and prosecuted. DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the application published as Rolland ‘133 and therefore knew what Rolland ‘133 disclosed.

391. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland ‘133 was prior art to the ‘963 Patent.

392. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of Rolland ‘133 to the claims of the ‘963 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland ‘133 from the Patent Office.

393. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Desimone recognized the materiality of Rolland ‘133 to the claims of the ‘963 Patent because, on information and belief,

Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of Rolland '133 and actively involved in preparation and prosecution of the '963 Patent and he was a named inventor on the '963 Patent so he knew what it disclosed and claimed.

394. Despite knowing what Rolland '133 disclosed and what the '963 Patent claimed, DeSimone never directed the attorneys at Myers Bigel to submit Rolland '133 in an IDS during prosecution of the '963 Patent.

395. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that Rolland '133 was material to the patentability of at least one claim of the '963 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld Rolland '133.

396. DeSimone knew that Rolland '133 was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about Rolland '133 unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed Rolland '133 to the attorneys at Myers Bigel.

397. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that Rolland '133 was material to the patentability of at least one claim of the '963 Patent and he directed, reviewed, and supervised the submission of over 400 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

398. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

399. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent

applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding Rolland '133 from the Patent Office because he knew it was but-for material to at least one claim of the '963 Patent.

**f. Rolland's Inequitable Conduct With Respect To Rolland '133**

400. Rolland knew what Rolland '133 disclosed because he was the sole named inventor and because he was actively involved in the patenting process at Liquidia Technologies.

401. Rolland knew that Rolland '133 was prior art to the '963 Patent.

402. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that Rolland '133 was material to patentability for at least one claim of the '963 Patent because he was the only inventor for Rolland '133 and he is a named inventor on the '963 Patent so he knew and understood what was disclosed in Rolland '133 and what was claimed in the '963 Patent.

403. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that Rolland '133 was material to the patentability of at least one claim of the '963 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld Rolland '133.

404. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that Rolland '133 was prepared and prosecuted by a law firm different from Myer Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about Rolland '133 unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed Rolland '133 to the attorneys at Myers Bigel.

405. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

406. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for

material or not prior art while intentionally withholding Rolland '133 from the Patent Office because he knew it was but-for material to at least one claim of the '963 Patent.

**g. Rolland '133 Is But For Material To The '963 Patent**

407. Rolland '133 discloses the elements the Examiner stated were missing from the cited prior art.

408. Rolland '133 discloses the dual cure elements of at least claim 1.

409. Rolland '133 discloses every element the Examiner said the cited prior art lacked in the Notice of Allowance, therefore a reasonable examiner using the preponderance of the evidence standard and giving the claims their broadest reasonable interpretation would have rejected at least claim 1 of the application issued as the '963 Patent in view of Rolland '133.

410. Rolland '133 discloses a dual-cure resin composition comprising a UV-curable component blended with a thermally curable component. Upon UV irradiation, the UV-curable component in the resin composition cures to form a solidified network, while the thermally curable component remains "entangled but unreacted" in that network. Upon subsequent heating, the thermally curable component cures within the partially cured network, thereby forming a three-dimensional object.

411. The Examiner in the '550 Application, who is presumed to be reasonable, rejected claim 28 of the '550 Application as anticipated by Rolland '133. Claim 28 is nearly identical to claim 1 of the '963 Patent.

412. The '550 Application shares priority, inventors, specification, and Applicant with the '963 Patent.

413. The table below shows that claim 28 of the '550 Application is nearly identical to claim 1 of the '963 Patent. The differences between the claims do not alter the substance of the claimed methods. The difference in the '550 Application claim merely identifies a dental-device field of use. The Examiner rejected Claim 28 of the '550 Application as anticipated by Rolland '133.

| U.S. APP. 15/963,550, CLAIM 28 COMPARED TO THE '963 PATENT, CLAIM 1 |
|---|

| U.S. App 15/963,550 | U.S. 9,676,963 |
|---|---|
| **28**. A method of forming a three-dimensional object, wherein said three-dimensional object is a dental mold, dental implant or dental aligner, comprising: | **1.** A method of forming a three-dimensional object, comprising: |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween | (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and | (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and |
| (ii) a second solidifiable component that is different from said first component | (ii) a second solidifiable component that is different from said first component; |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and | (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and |
| also advancing said carrier away from said build surface to form a three-dimensional intermediate having a shape of said dental mold, dental implant or dental aligner | also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, |
| said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, second solidifiable component in said three-dimensional intermediate to form said dental mold, dental implant or dental aligner. | (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object. |

414. The comparison of U.S. App 15/963,550, Claim 28 to the '963 Patent, Claim 1 shows that the claims are nearly identical. In the table, common language is underlined. In the final limitations, a "dental mold, dental implant or dental aligner" is a "three-dimensional object"

in the ‘963 Patent. Rolland ‘133 discloses forming a three-dimensional object.

415. Rolland ‘133 is but-for material to the patentability of at least Claim 1 of the ‘963 Patent because claim 1 of the ‘963 Patent is nearly identical to a claim that the Examiner, who is presumed to be reasonable, rejected as anticipated by Rolland ‘133.

416. Applying the broadest reasonable interpretation and a preponderance-of-the-evidence standard, the Patent Office would not have allowed at least Claim 1 had it been aware of Rolland ‘133 in combination with the prior art already used by the Examiner in the ‘963 Patent to reject claim 1 during prosecution because Rolland ‘133 discloses every element of the polymerizable liquid in claim 1.

417. As shown in the claim chart below, Rolland ‘133 combined with the ‘330 Patent (used by the Examiner to reject claims during prosecution of the ‘963 Patent) discloses every limitation of Claim 1 of the ‘963 Patent. Defendant did not dispute the Examiner’s characterization of the ‘330 Patent during prosecution.

| **U.S. PATENT NO. 9,676,963, CLAIM 1 COMPARED TO ROLLAND ‘133 IN VIEW OF THE ‘330 PATENT** | |
|---|---|
| **U.S. PATENT NO. 9,676,963** | **ROLLAND ‘133 IN VIEW OF THE ‘330 PATENT** |
| A method of forming a three-dimensional object, comprising: | Rolland ‘133 discloses “A method of forming a three-dimensional object.” Rolland ‘133, Abstract. |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween; | The ’330 Patent discloses “providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween”<br><br>The ‘330 Patent discloses a build platform 74 as a carrier and a solidification substrate 79a with an elastomeric translucent layer 80a as an optically transparent member having a build surface, and the build region between the carrier and the build surface.<br><br>‘330 Patent, Figs. 2A & 2B, 3, 12:46-56 & 10:48 - 11:55. |

| U.S. PATENT NO. 9,676,963, CLAIM 1 COMPARED TO ROLLAND '133 IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 9,676,963** | **ROLLAND '133 IN VIEW OF THE '330 PATENT** |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; | Rolland '133 discloses "filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component;"<br><br>Rolland '133 discloses filling a master template that serves as a build region with a polymerizable liquid mixture comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component that is different from the first component.<br><br>Rolland '133, ¶¶ 0367-0368. |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | Rolland '133 discloses "irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form;"<br><br>Rolland '133 disclose UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold). The chain-extended PFPE diisocyanate and PFPE tetrol (the thermal curing second component) are physically |

| U.S. PATENT NO. 9,676,963, CLAIM 1 COMPARED TO ROLLAND '133 IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 9,676,963** | **ROLLAND '133 IN VIEW OF THE '330 PATENT** |
| | entangled in an uncured state in the rubbery photocured matrix.<br><br>Rolland '133, ¶¶ 0367-0368.<br><br>The '330 Patent discloses projecting solidification energy through the transparent solidification substrate 79a to polymerize the solidifiable material 92 to form a three-dimensional object 78 and moving the build platform 74 upward away from the solidification substrate 79a to allow the object 78 being formed to continue to grow according to the pattern being projected to the build region.<br><br>'330 Patent,13:64 - 14:20. |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object. | Rolland '133 discloses "subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object."<br><br>Rolland '133 discloses heating the thermally curable material physically entangled in the stacked layers of photocured matrix material to form the three-dimensional microfluidic device.<br><br>Rolland '133, ¶0368. |

418. The claim chart comparing Claim 1 of the '963 Patent to disclosure in the '330 Patent and Rolland '133 shows that the '330 Patent discloses every apparatus element of claim 1 and that Rolland '133 discloses every element of the polymerizable liquid. Together, Rolland '133 and the '330 Patent disclose every element of claim 1 of the '963 Patent. Rolland '133 and the '330 Patent are but-for material to at least claim 1 of the '963 Patent.

419. In the May 17, 2016 Office Action, the Examiner in the ‘963 Patent, who is presumed to be reasonable, concluded that the ‘330 Patent discloses every apparatus element of claim 1 of the ‘963 Patent. The ‘330 Patent discloses a build platform that serves as a carrier and a solidification substrate with an elastomeric translucent layer that serves as an optically transparent member having a build surface. The region between the build platform and the solidification substrate serves as the build region between the carrier and the build surface. Defendant never argued against or contradicted the Examiner’s conclusion related to the ‘330 Patent. Defendant never amended the apparatus elements of claim 1 to distinguish them from the disclosure of the ‘330 Patent. The apparatus elements in claim 1 of the ‘963 Patent are the same apparatus elements rejected by the Examiner using the ‘330 Patent.

420. Rolland ‘133 discloses a polymerizable liquid having all the elements recited in claim 1 of the ‘963 Patent. In Example 34, Rolland ‘133 discloses filling a master template that serves as a build region with a polymerizable liquid mixture comprising chain-extended perfluoropolyether (PFPE) dimethacrylate as the UV curing first component and a chain-extended PFPE diisocyanate and a PFPE tetrol as the thermal curing second component that is different from the first component. The chain-extended PFPE is a fluoropolymer chain made by using a diisocyanate linker to join shorter PFPE chains together. The diisocyanate linker has an isocyanate group on each tip. Each isocyanate group bonds to a hydroxyl group on the ends of the shorter PFPE chains to form a urethane bond. The end tips of the extended PFPE chain are capped with methacrylate-containing diisocyanate. The isocyanate group of the methacrylate-containing diisocyanate attaches to the end tip of the extended chain and the methacrylate group is left free to cross-link and make the chain-extended PFPE UV-hardenable. The methacrylate ends on the chain-extended PFPE crosslink with other methacrylate ends when the polymer composition is exposed to UV radiation. This is the light polymerizable liquid first component that forms the three-dimensional intermediate. The chain-extended PFPE diisocyanate and PFPE tetrol remain uncured after exposure to UV radiation. They are physically entangled in an uncured state in the rubbery-like photocured matrix. They are the second solidifiable component carried in the scaffold formed by the cross-linked portions of the chain-extended PFPE in unsolidified or uncured form.

The chain-extended PFPE diisocyanate is a fluoropolymer chain built by linking shorter PFPE chains together with a diisocyanate. When forming the PFPE diisocyanate, the amounts of ingredients are added in a ratio that will ensure that the resulting polymer chain is capped with isocyanate groups. The PFPE tetrol is a single PFPE chain (not chain-extended) that carries four total hydroxyl groups - two reactive hydroxyl groups (–OH) at each end. When the stacked layers are thermally cured, the isocyanate ends of the PFPE diisocyanate react with the hydroxyl ends of the PFPE tetrol to form urethane bonds tying the chains into a mechanically stable network that serve as the three-dimensional object in claim 1 of the '963 Patent.

421. Rolland '133 discloses a mixture comprising a light polymerizable first component (chain-extended PFPE dimethacrylate) and a second component (chain-extended PFPE diisocyanate and a PFPE tetrol) that remains a liquid and is carried in the formed polymer scaffold formed by irradiating the first component, with the second component being subsequently heated or microwave irradiated or both to form the final three dimensional object.

422. In the Notice of Allowance, the Examiner stated:

> the prior art of record … does not disclose, teach or suggest … a polymerizable liquid mixture … comprising a light polymerizable first component and a second component that **remains a liquid and is carried** in the formed polymer scaffold formed by irradiating the first component, with the second component being **subsequently heated** or microwave irradiated or both to form the final three dimensional object.

Notice of Allowability, dated April 28, 2017, page 2 (emphasis added).

423. Claim 1 of the '963 Patent recites, in part, a method of forming a three-dimensional object, comprising: filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said

three-dimensional intermediate to form said three-dimensional object.

424. Rolland '133 discloses filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object.

### h. DeSimone Recognized Materiality Of The '728 Patent

425. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the '728 Patent to the claims of the '963 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

426. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the '728 Patent to the claims of the '963 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was a named inventor on the '728 Patent, he was actively involved in the preparation of and prosecution of the '728 Patent, he was a named inventor on the '963 Patent,  and he was actively involved in preparation and prosecution of the '963 Patent. DeSimone knew what was described and claimed in the '728 Patent and the '963 Patent.

### i. Rolland Recognized Materiality Of The '728 Patent

427. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to patentability for at least one claim of the '963 Patent because he is a named inventor on the '963 Patent so he knew and understood what was disclosed in the '728 Patent and what was claimed in the '963 Patent.

428. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the

'728 Patent was material to the patentability of at least one claim of the '963 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent.

**j. DeSimone Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

429. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

430. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '963 Patent.

**k. Rolland Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

431. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the '728 Patent.

432. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '963 Patent

**l. DeSimone Recognized Materiality Of Rolland '133**

433. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the

materiality of Rolland ‘133 to the claims of the ‘963 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland ‘133 from the Patent Office.

434. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Desimone recognized the materiality of Rolland ‘133 to the claims of the ‘963 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of Rolland ‘133 and actively involved in preparation and prosecution of the ‘963 Patent and he was a named inventor on the ‘963 Patent so he knew what it disclosed and claimed.

**m. Rolland Recognized Materiality Of Rolland ‘133**

435. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that Rolland ‘133 was material to patentability for at least one claim of the ‘963 Patent because he was the only inventor for Rolland ‘133 and he is a named inventor on the ‘963 Patent so he knew and understood what was disclosed in Rolland ‘133 and what was claimed in the ‘963 Patent.

436. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that Rolland ‘133 was material to the patentability of at least one claim of the ‘963 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld Rolland ‘133.

**n. DeSimone Intended To Deceive The Patent Office By Not Disclosing Rolland ‘133**

437. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland ‘133.

438. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding Rolland ‘133 from the Patent Office

because he knew it was but-for material to at least one claim of the ‘963 Patent.

**o. Rolland Intended To Deceive The Patent Office By Not Disclosing Rolland ‘133**

439. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland ‘133.

440. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding Rolland ‘133 from the Patent Office because he knew it was but-for material to at least one claim of the ‘963 Patent.

**p. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office**

441. Pursuant to 37 C.F.R. §1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Patent Office, which includes a duty to disclose to the Patent Office all information known to that individual to be material to patentability.

442. Kenneth Sibley was an attorney who prepared and prosecuted the ‘963 Patent. Sibley owed a duty of disclosure to the Patent Office. Sibley was an attorney at Myers Bigel from May 1997 to October 2016. Sibley left Myers Bigel to join Defendant as Patent Counsel in October 2016. Sibley became Senior Patent Counsel at Defendant in June 2018 and remained with Defendant until May 2023.

443. Sherry Murphy was an attorney who prosecuted the ‘963 Patent. Murphy owed a duty of disclosure to the Patent Office.

444. Stephen Petrosky was an attorney who prosecuted the ‘963 Patent. Petrosky owed a duty of disclosure to the Patent Office.

445. Laura Kelley was an attorney who prosecuted the ‘963 Patent. Kelley owed a duty

of disclosure to the Patent Office.

**N. The '164 Patent**

446. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '164 Patent and claims of the '164 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '164 Patent**

447. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '164 Patent.

448. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

449. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product that includes at least all of:

A polymerizable liquid comprising a mixture of:

a reactive blocked prepolymer comprising a compound of formula A-X-A,

where X is a hydrocarbyl group and each A is an independently selected substituent of Formula (X):

[Formula (X)]

where R is a hydrocarbyl group, R' is NH, and Z is a blocking group, said blocking group having a reactive epoxy, alkene, alkyne, or thiol terminal group,

a chain extender,

a reactive blocked diisocyanate.

**2. Claims Of The '164 Patent Are Invalid**

450. Claims of the '164 Patent are invalid.

451. One or more of the claims of the '164 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

452. One or more of the claims of the '164 Patent claims are invalid at least under 35 U.S.C. 102 or 103 by Velankar.

**O. <u>The '181 Patent</u>**

453. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '181 Patent and claims of the '181 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '181 Patent**

454. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '181 Patent.

455. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

456. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object, comprising:

irradiating said build region through said optically transparent member to form a solid polymer from said polymerizable liquid while concurrently advancing said carrier away from said build surface to form said three-dimensional object from said solid polymer, while also concurrently:

(i) continuously maintaining a dead zone of polymerizable liquid in contact with said build surface, and

(ii) continuously maintaining a gradient of polymerization zone between said dead zone and said solid polymer and in contact with each thereof, said gradient of polymerization zone comprising said polymerizable liquid in partially cured form,

wherein said optically transparent member comprises a semipermeable member, and said continuously maintaining a dead zone is carried out by feeding an inhibitor of polymerization through said optically transparent member,

thereby creating a gradient of inhibitor in said dead zone and optionally in at least a portion

of said gradient of polymerization zone, and

wherein said inhibitor comprises oxygen.

**2. Claims Of The '181 Patent Are Invalid**

457. Claims of the '181 Patent are invalid.

458. One or more of the claims of the '181 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

459. One or more of the claims of the '181 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

**P. <u>The '066 Patent</u>**

460. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '066 Patent and claims of the '066 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed the '066 Patent**

461. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '066 Patent.

462. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

463. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object comprising:

filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of: (i) a reactive blocked diisocyanate, (ii) a polyamine chain extender, and (iii) a photoinitiator;

advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said chain extender; and

then heating or microwave irradiating said three-dimensional intermediate sufficiently to de-block the diisocyanate and form from said three-dimensional intermediate said three-dimensional object.

**2. Claims Of The '066 Patent Are Invalid**

464. Claims of the '066 Patent are invalid.

465. One or more of the claims of the '066 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

466. One or more of the claims of the '066 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of Velankar.

**Q. <u>The '699 Patent</u>**

467. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '699 Patent and claims of the '699 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '699 Patent**

468. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '699 Patent

469. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

470. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object, comprising:

filling said build region with a polymerizable liquid,

said filling step further comprising vertically reciprocating said carrier with respect to said build surface to enhance or speed the refilling of said build region with said polymerizable liquid,

wherein said filling, irradiating, and/or advancing steps are carried out while also

concurrently:

(i) continuously maintaining a dead zone of polymerizable liquid in contact with said build surface, and

(ii) continuously maintaining a gradient of polymerization zone between said dead zone and said solid polymer and in contact with each thereof,

said gradient of polymerization zone comprising said polymerizable liquid in partially cured form.

**2. Claims Of The '699 Patent Are Invalid**

471. Claims of the '699 Patent are invalid.

472. One or more of the claims of the '699 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

473. One or more of the claims of the '699 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

**R. <u>The '880 Patent</u>**

474. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '880 Patent and claims of the '880 Patent are invalid at least under Sections 101, 102, 103, and 112, and the '880 Patent is unenforceable for inequitable conduct in its prosecution.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The '880 Patent**

475. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '880 Patent.

476. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

477. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object comprising:

filling said build region with a polymerizable liquid,

said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, or (iii) a blocked or reactive blocked diisocyanate chain extender;

irradiating said build region with light through said optically transparent member to form a solid blocked polymer scaffold and advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object,

with said intermediate containing said (i) blocked or reactive blocked prepolymer, (ii) blocked or reactive blocked diisocyanate, or (iii) blocked or reactive blocked diisocyanate chain extender.

**2. Claims Of The '880 Patent Are Invalid**

478. Claims of the '880 Patent are invalid.

479. One or more of the claims of the '880 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

**a. Invalidity By The '728 Patent**

480. One or more of the claims of the '880 Patent claims are invalid at least under 35 U.S.C. section 103 by the '728 Patent in view of the '330 Patent.

481. DeSimone intentionally withheld disclosure of the '728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the '728 Patent.

482. Rolland intentionally withheld disclosure of the '728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the '728 Patent.

**3. The '880 Patent Is Unenforceable for Inequitable Conduct In Its Prosecution**

483. The '880 Patent is unenforceable for inequitable conduct in its prosecution.

484. DeSimone committed inequitable conduct during prosecution of the '880 Patent.

485. Rolland committed inequitable conduct during prosecution of the '880 Patent.

486. Under 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability. Individuals associated with the filing or prosecution of a patent application are each inventor named in the application; each attorney or agent who prepares or prosecutes the application; and every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.

487. DeSimone is a named inventor on the '880 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56. DeSimone fully understands the duty of disclosure, when he spoke at Stanford University in November 2017, he explained: "When you write a patent you've got to [give a] full disclosure [of] what it is." An Evening With Joseph DeSimone.

488. DeSimone signed an oath under 37 CFR § 1.63, for the '880 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates DeSimone's Oath for the '880 Patent here as if fully set forth here.[105]

489. Rolland is a named inventor on the '880 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56.

490. Rolland signed an oath under 37 CFR § 1.63, for the '880 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates Rolland's Oath for the

[105] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

‘880 Patent here as if fully set forth here.[106]

**a. The Prosecution Of The ‘880 Patent**

491. On February 7, 2019, Sherry Murphy (U.S. Patent Registration No. 53359), of Myers Bigel, filed Application No. 16/269,710, as a nonprovisional, continuation application of Application No. 15/428,708 (issued as U.S. Patent No. 10,240,066 on March 26, 2019). The ‘710 Application claimed the benefit of PCT/US2015/036902 and a series of six provisionals (62/133,642 (3/16/2015); 62/129,187 (3/6/2015); 62/101,671 (1/9/2015); 62/036,161 (8/12/2014); 62/015,780 (6/23/2014)). The ‘902 PCT was filed on June 22, 2015, claiming priority to the series of six provisionals.

492. DeSimone signed the Power of Attorney as President and Chief Executive Officer of Defendant. Plaintiff incorporates the Power Of Attorney here as if fully set forth here.[107]

493. During prosecution of the ‘880 Patent, Defendant submitted over 320 references collectively. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of all 320 references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of all 320 references.

**i. The ‘728 Patent**

494. DeSimone did not disclose the ‘728 Patent in any IDS submitted to the Patent Office for the ‘880 Patent.

495. Rolland did not disclose the ‘728 Patent in any IDS submitted to the Patent Office for the ‘880 Patent.

496. DeSimone and Rolland filed the ‘728 Patent as the U.S. national stage application of a PCT Application filed on August 9, 2006. DeSimone and Rolland are named inventors on the ‘728 Patent. Liquidia Technologies, Inc. is a co-owner of the ‘728 Patent. The University of North Carolina is a co-owner of the ‘728 Patent.

497. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the ‘728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on

---

[106] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[107] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the ‘728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

498. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the ‘728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the ‘728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

499. DeSimone has stated that he views patents as a driver of innovation and that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), because DeSimone personally engaged with the patenting process at a detailed level in his companies, DeSimone had an active role in the patenting process at Liquidia Technologies. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone’s approval would have been required for the preparation and filing of the ‘728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia Technologies. DeSimone approved the preparation and filing of the ‘728 Patent at least because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the ‘728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in the prosecution of the ‘728 Patent at the Patent Office.

500. DeSimone knew about the ‘728 Patent and knew what the ‘728 Patent disclosed.

501. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone introduced Rolland to entrepreneurship and company creation using patents, and Rolland adopted DeSimone’s belief that patents play a critical role in building and growing companies and adopted DeSimone’s hands-on approach to patents. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland personally engaged with the patenting process for at least patents on which he was an inventor. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland’s approval would have been required for the preparation and filing of the ‘728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia. On information and belief,

Fed. R. Civ. Proc. 11(b)(3), Rolland approved the preparation and filing of the ‘728 Patent at least because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the ‘728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in the prosecution of the ‘728 Patent.

502. Rolland knew about the ‘728 Patent and knew what the ‘728 Patent disclosed.

503. The specification of the ‘880 Patent includes a reference to the ‘728 Patent in a listing of patents describing perfluoropolyether polymer materials that form a thin film or sheet of material that is flexible and can be used as the semipermeable membrane of the build plate. The specification reads, in relevant part:

> In some embodiments the build plate may be formed from a thin film or sheet of material which is flexible when separated from the apparatus of the invention … Particular materials include TEFLON AF® fluoropolymers, commercially available from DuPont. Additional materials include perfluoropolyether polymers such as described in U.S. Pat. Nos. 8,268,446; 8,263,129; 8,158,728; and 7,435,495.

The ‘880 Patent, 17:16-26.

504. The duty to disclose material information under 37 C.F.R. § 1.56 is not satisfied by referring to a patent in a list of patents in the specification. Unless the reference is submitted to the Patent Office in the manner prescribed by 37 C.F.R. §§ 1.97 and 1.98, the reference is not treated as having been properly submitted for consideration under Rule 56. The “manner prescribed” requires a compliant information disclosure statement, including a list of the information submitted for consideration, separately listing U.S. patents and U.S. patent application publications, identifying each U.S. patent by inventor, patent number, and issue date, and otherwise satisfying the timing and content requirements of §§ 1.97 and 1.98.

505. DeSimone did not submit the ‘728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. DeSimone failed to submit the ‘728 Patent to the Patent Office for consideration under Rule 56.

506. Rolland did not submit the ‘728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. Rolland failed to submit the ‘728 Patent to the Patent Office for consideration under Rule 56.

507. The '728 Patent is listed in a string of patents describing perfluoropolyether polymer materials useful for constructing the build plate. The '728 Patent was not included in a listing of patents in the polymerizable liquids sections of the '880 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), inclusion of the '728 Patent in a list of patents disclosing materials useful for the semipermeable membrane would lead the Examiner to believe that the '728 Patent was not materially relevant to the polymerizable liquids recited in the claims.

508. Defendant's attorneys submitted Rolland '133 in an information disclosure statement during prosecution of the '880 Patent. The '728 Patent is, however, not cumulative to Rolland '133 - especially not for the claim elements in at least claim 1 of the '880 Patent.

509. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland copied a significant portion of the '728 Patent into Rolland '133. The '728 Patent, however, is not cumulative to Rolland '133 because Rolland did not copy all the '728 Patent dual cure chemistry disclosure into Rolland '133. The '728 Patent has additional dual cure chemistry disclosure that is not in Rolland '133, which includes a blocked diisocyanate that cleaves at high temperature to expose previously blocked isocyanate.

510. Rolland '133 does not disclose blocked diisocyanates. The '728 Patent is not cumulative to Rolland '133.

511. DeSimone and Rolland filed a divisional application claiming priority to the '728 Patent. That application issued as U.S. Patent No. 8,444,899. Plaintiff incorporates the '899 Patent here as if fully set forth here.[108] DeSimone never submitted the '899 Patent for consideration by an examiner in any of the Dual Cure patents. Rolland never submitted the '899 Patent for consideration by an examiner in any of the Dual Cure patent.

**ii. "Excessively Lengthy Information Disclosure Statement"**

512. During prosecution of commonly owned, related Application No. 15/240,157, which issued, on May 29, 2018, as U.S. Patent No. 9,982,164, the Examiner encouraged Defendant and their patent attorneys at Myers Bigel to provide "a concise explanation of why

[108] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

information is being submitted to the Patent Office and how it is understood to be relevant" when Defendant filed

> an **"excessively lengthy Information Disclosure Statement."**

Office Action mailed June 8, 2017, U.S. Patent No. 9,982,164 (emphasis added)

513. The Examiner's statements were in response to Defendant filing an information disclosure statement with 310 references concurrently with application filing. Because of the excessive length of the IDS, the Examiner explained that only a "cursory review" of the listed references was given. Plaintiff incorporates the '164 Patent here as if fully set forth here, and Plaintiff incorporates the June 8, 2017 Office Action in the prosecution of the '164 Patent here as if fully set forth here.[109]

514. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone through Defendant's attorneys at Myers Bigel never complied with the Examiner's request in the '164 Patent.

515. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland, through Defendant's attorneys at Myers Bigel never complied with the Examiner's request in the '164 Patent.

516. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone continued with the practice of submitting "excessively lengthy" IDSs through Defendant's attorneys at Myers Bigel in all patents in the Dual Cure patent family, including the '880 Patent. The December 11 IDS submitted 311 references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), this IDS submission is an example of the practice of burying the examiner in references, which, on information and belief, Fed. R. Civ. Proc. 11(b)(3), results in the Examiner giving no more than a cursory review of the submitted references.

517. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland continued with the practice of submitting "excessively lengthy" IDSs through Defendant's attorneys Myers Bigel in all patents in the Dual Cure patent family, including the '880 Patent. The December 11 IDS

[109] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

submitted 311 references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), this IDS submission is an example of the practice of burying the examiner in references, which, on information and belief, Fed. R. Civ. Proc. 11(b)(3), results in the Examiner giving no more than a cursory review of the submitted reference.

518. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone's intent in submitting excessively lengthy references was to ensure only a cursory review of the listed references in the Dual Cure patent family. On information and belief, Fed. R. Civ. Proc. 11(b)(3), with so many references to review, the Examiner does not have time to adequately review the submitted references or search for references that were not submitted, like the '728 Patent.

519. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland's intent in submitting excessively lengthy references was to ensure only a cursory review of the listed references in the Dual Cure patent family. On information and belief, Fed. R. Civ. Proc. 11(b)(3), with so many references to review, the Examiner does not have time to adequately review the submitted references or search for references that were not submitted, like the '728 Patent.

520. On September 11, 2019, prior to any information disclosure statements being filed, the Examiner mailed an Office Action rejecting claims 1-29 for non-statutory double patenting as unpatentable over claims of U.S. Patent Nos. 10,240,066 and 9,598,606. Plaintiff incorporates the September 11, 2019 Office Action here as if fully set forth here.[110]

521. On December 11, 2019, Murphy filed a Response and Amendment submitting an electronic Terminal Disclaimer with respect to U.S. Patent Nos. 10,240,066 and 9,598,606 on behalf of Defendant. Plaintiff incorporates the December 11, 2019 Response and Amendment here as if fully set forth here.[111].

**iii. December 11, 2019 Information Disclosure Statement**

522. On December 11, 2019, Murphy submitted an IDS concurrently with the Response and Amendment, submitting 311 references – 104 U.S. Patents, 69 U.S. Application Publications, 68 Foreign Patent References, and 70 Non-Patent Literature References. Plaintiff incorporates the

[110] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[111] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

December 11, 2019 Information Disclosure Statement here as if fully set forth here. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the December 11 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the December 11 IDS. DeSimone did not disclose the '728 Patent in the December 11 IDS. Rolland did not disclose the '728 Patent in the December 11 IDS.

523. When Murphy filed the IDS with 311 references, Murphy did not include "a concise explanation of why information is being submitted to the Patent Office and how it is understood to be relevant," as requested by the Examiner in the related '164 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Murphy submitted an excessively lengthy information disclosure statement at the direction of DeSimone and Rolland, even though the Examiner in the '164 Patent stated that only a cursory review would be given to excessively lengthy information disclosure statements.

524. In the December 11 IDS, DeSimone was inventor or author for at least fifteen references and at least seven of these references were not prior art. In the December 11 IDS, Rolland was inventor or author for at least eight references and at least six of these references were not prior art. Plaintiff incorporates the fifteen DeSimone references and the eight Rolland references here as if fully set forth here.[112] A listing of a portion of the non-prior art references that DeSimone and Rolland submitted include:

525. International application publication WO2015/200201, naming DeSimone, Rolland, and others as inventors is not prior art. WO '201 is the publication of an international application that had a national phase application in the U.S. and issued as the '142 Patent, the '164 Patent, and the '868 Patent. WO '201 shares the same six provisional applications as priority applications with the '880 Patent and is therefore not prior art to the '880 Patent.

526. International application publication WO2015/200189, naming DeSimone, Rolland, and others as inventors, is not prior art. WO 189 shares the same six provisional

[112] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

applications as priority applications with the ‘880 Patent and is therefore not prior art to the ‘880 Patent.

527. International application publication WO2015/200173, naming DeSimone, Rolland, and others as inventors is not prior art. WO 173 is the publication of an international application that had a national phase application in the U.S. and issued as the ‘963 Patent and the ‘342 Patent. WO 173 shares the same six provisional applications as priority applications with the ‘880 Patent and is therefore not prior art to the ‘880 Patent.

528. International application publication WO2015/200179, naming DeSimone, Rolland, and others as inventors is not prior art. WO 179 is the publication of an international application that had a national phase application in the U.S. and issued as the ‘606 Patent, the ‘066 Patent, the ‘880 Patent, and the ‘895 Patent. WO 179 shares the same disclosure with the ‘880 Patent and is thus not prior art to the ‘880 Patent.

529. Tumbleston and its Supplementary Materials are not prior art. The article and the supplementary materials were submitted as two separate references. DeSimone and Rolland are co-authors of the article. The submitted manuscript and submitted supplementary materials for Tumbleston were included as Appendices to U.S. Provisional Application No. 62/129, 187, filed on March 6, 2015. The ‘880 Patent claims priority to the ‘187 PROV, and therefore, Tumbleston and its Supplementary Materials are not prior art to the ‘880 Patent.

530. DeSimone’s TED presentation filmed on March 16, 2015, entitled “What if 3D Printing was 100x Faster?” is not prior art. The ‘880 Patent claims priority to six provisional applications filed between June 23, 2014, and March 16, 2015. Thus, the priority date for the ‘880 Patent is on or before the filming date of the TED presentation.

531. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew these references were not prior art but directed Murphy to submit them anyway as a part of a pattern of selectively disclosing references that were not prior art while intentionally withholding the ‘728 Patent from being submitted.

532. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew these references were not prior art but directed Murphy to submit them anyway as a part of pattern of

selectively disclosing references that were not prior art while intentionally withholding the ’728 Patent.

533. In the December 11 IDS, Murphy also submitted U.S. Application Publication No. 2009/0061152, naming DeSimone, Rolland, and others as inventors. Plaintiff incorporates the ‘152 Publication here as if fully set forth here.[113] The ‘152 Publication, issued as U.S. Patent No. 8,420,124, is entitled “Methods for fabricating isolated micro- and nano- structures using soft or imprint lithography,” and is owned by the University of North Carolina. The ‘152 Publication is prior art but it is not but-for material to the ‘880 Patent like the ‘728 Patent is.

534. The ‘152 Publication discloses the use of fluorinated elastomer-based materials, in particular perfluoropolyether (PFPE)-based materials, in high-resolution soft or imprint lithographic applications, such as micro- and nanoscale replica molding. It discloses a method for producing free-standing, isolated nanostructures of any shape using soft or imprint lithography technique. Perfluoropolyether chemistry was in many patent disclosures for Liquidia Technologies.

535. While the ‘152 Publication discloses perfluoropolyethers, it does not disclose dual cure chemistry applications in the context of perfluoropolyethers like the ‘728 Patent. The ‘728 Patent uses the term “dual cure” 48 times, while the ‘152 Publication has no instances of the term “dual cure.”

536. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew about the disclosure in ‘728 Patent and knew about the disclosure in the ‘152 Publication. Both the ‘152 Publication and the ‘728 Patent were prepared and prosecuted by attorneys at the law firm Alston & Bird. The ‘880 Patent was prepared and prosecuted by attorneys at a different law firm, Myers Bigel. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the attorneys at Myers Bigel did not know about the Alston & Bird-prepared applications until DeSimone told them about those applications. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone intentionally informed the attorneys at Myers Bigel of Alston & Bird-prepared patent references that did not

[113] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

disclose dual cure chemistry elements.

537. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone directed Murphy to submit the '152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry like the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed the '152 Publication while intentionally withholding the '728 Patent from the Patent Office.

538. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew about the disclosure in '728 Patent and knew about the disclosure in the '152 Publication. Both the '152 Publication and the '728 Patent were prepared and prosecuted by attorneys at the law firm Alston & Bird. The '880 Patent was prepared and prosecuted by attorneys at a different law firm, Myers Bigel. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the attorneys at Myers Bigel did not know about the Alston & Bird-prepared applications until Rolland told them about those applications. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland intentionally informed the attorneys at Myers Bigel of Alston & Bird-prepared patent references that did not disclose dual cure chemistry elements.

539. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland directed Murphy to submit the '152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry like the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed the '152 Publication while intentionally withholding the '728 Patent from the Patent Office.

**iv. January 16, 2020 Notice of Allowance**

540. On January 16, 2020, the Examiner mailed a Notice of Allowance allowing claims 1-29. Plaintiff incorporates the January 16, 2020 Notice Of Allowance here as if fully set forth here.[114]

[114] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**v. January 21, 2020 Information Disclosure Statement And Amendment After Notice Of Allowance**

541. On January 21, 2020, Murphy filed a Request for Continued Examination with an Amendment and an Information Disclosure Statement submitting five references. Plaintiff incorporates the January 21, 2020 Information Disclosure Statement, RCE and Amendment here as if fully set forth here.[115] Murphy submitted the RCE with IDS to be compliant with Rule 56. However, even with the IDS submitted after Notice of Allowance, neither DeSimone nor Rolland submitted the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 21 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 21 IDS. DeSimone did not disclose the '728 Patent in the January 21 IDS. Rolland did not disclose the '728 Patent in the January 21 IDS.

542. In the January 21 Amendment, Murphy amended claim 1 to correct a minor typographical error.

**vi. January 31, 2020 Information Disclosure Statement**

543. On January 31, 2020, Murphy filed an Information Disclosure Statement submitting five references. Plaintiff incorporates the January 31, 2020 Information Disclosure Statement here as if fully set forth here.[116] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 31 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 31 IDS. DeSimone did not disclose the '728 Patent in the January 31 IDS. Rolland did not disclose the '728 Patent in the January 31 IDS.

**vii. February 10, 2020 Notice of Allowance**

544. On February 10, 2020, the Examiner mailed a Notice Allowance allowing claims 1-29. Plaintiff incorporates the February 10, 2020 Information Disclosure Statement here as if fully set forth here.[117]

---

[115] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[116] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[117] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

545. On May 12, 2020, the Patent Office issued U.S. Patent No. 10,647,880.

546. Claim 1 of the ‘880 Patent recites, in part, a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, or (iii) a blocked or reactive blocked diisocyanate chain extender; irradiating said build region with light … to form a solid blocked polymer scaffold … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said (i) blocked or reactive blocked prepolymer, (ii) blocked or reactive blocked diisocyanate, or (iii) blocked or reactive blocked diisocyanate chain extender; and then heating or microwave irradiating said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof.

547. The ‘728 Patent discloses a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, or (iii) a blocked or reactive blocked diisocyanate chain extender; irradiating said build region with light … to form a solid blocked polymer scaffold … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said (i) blocked or reactive blocked prepolymer, (ii) blocked or reactive blocked diisocyanate, or (iii) blocked or reactive blocked diisocyanate chain extender; and then heating or microwave irradiating said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof.

548. DeSimone never submitted the ‘728 Patent to the Patent Office during prosecution of the ‘880 Patent.

549. DeSimone knew about the ‘728 Patent, knew it was material to the patentability of at least one claim of the ‘880 Patent, and intentionally withheld it from the Patent Office.

550. Rolland never submitted the ‘728 Patent to the Patent Office during prosecution of the ‘880 Patent.

551. Rolland knew about the ‘728 Patent, knew it was material to the patentability of at

least one claim of the ‘880 Patent, and intentionally withheld it from the Patent Office.

552. Between February 7, 2019, when Defendant filed the application that issued as the ‘880 Patent, and May 12, 2020, when the ‘880 Patent issued, Defendant submitted, through its attorneys at Myers Bigel P.A., at least 320 references to the Patent Office for consideration.

553. Of the at least 320 references, at least fifteen included DeSimone as an inventor or author, and at least seven of those references were not prior art to the dual cure chemistry of the ‘880 Patent. Of the 320 references, at least eight references included Rolland as an inventor, and at least six of those references were not prior art to the dual cure chemistry of the ‘880 Patent.

554. Even though Defendant submitted at least 320 references, and DeSimone was the inventor or author of some of the 320 references, and Defendant submitted references that were not prior art, DeSimone never submitted the ‘728 Patent, which DeSimone knew about, knew was but-for material, and knew was prior art, during prosecution of the ‘880 Patent.

555. Even though Defendant submitted at least 320 references, and Rolland was the inventor or author of some of the 320 references, and Defendant submitted references that were not prior art, Rolland never submitted the ‘728 Patent, which Rolland knew about, knew was but-for material, and knew was prior art, during prosecution of the ‘880 Patent.

**b. DeSimone’s Inequitable Conduct With Respect To The ‘728 Patent**

556. DeSimone knew about the ‘728 Patent because he is a named inventor on the ‘728 Patent. Additionally, DeSimone co-founded Liquidia Technologies and was an officer at Liquidia Technologies when the ‘728 Patent was prepared and prosecuted. DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the application issued as the ‘728 Patent so knew what the ‘728 Patent disclosed.

557. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the ‘728 Patent was prior art to the ‘880 Patent.

558. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘880 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were

either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

559. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the '728 Patent to the claims of the '880 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the '728 Patent and actively involved in preparation and prosecution of the '880 Patent, and DeSimone is a named inventor on the '880 Patent so he knew what is described in the specification and he knew what was being claimed in the '880 Patent.

560. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the '728 Patent was material to the patentability of at least one claim of the '880 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent.

561. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the '728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the '728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed the '728 Patent to the attorneys at Myers Bigel.

562. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the '728 Patent was material to the patentability of at least one claim of the '880 Patent and he directed, reviewed, and supervised the submission of over 300 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

563. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 300 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

564. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '880 Patent.

**c. Rolland's Inequitable Conduct With Respect To The '728 Patent**

565. Rolland knew what the '728 Patent disclosed because he was a named inventor.

566. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the '728 Patent was prior art to the '880 Patent.

567. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to patentability for at least one claim of the '880 Patent because he is a named inventor on the '880 Patent so he knew and understood what was disclosed in the '728 Patent and what was claimed in the '880 Patent.

568. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '880 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent.

569. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the '728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the '728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed the '728 Patent to the attorneys at Myers Bigel.

570. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '880 Patent and he directed, reviewed, and supervised the submission of over 300 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

571. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically

intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 300 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the ‘728 Patent.

572. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the ‘728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the ‘880 Patent.

**d. The ‘728 Patent Is But-For Material To The ‘880 Patent**

573. The ‘728 Patent discloses a composition that has every element of the polymerizable liquid of at least claim 1 of the ‘880 Patent.

574. Claim 1 of the ‘880 Patent recites a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, or (iii) a blocked or reactive blocked diisocyanate chain extender; irradiating said build region with light … to form a solid blocked polymer scaffold … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said (i) blocked or reactive blocked prepolymer, (ii) blocked or reactive blocked diisocyanate, or (iii) blocked or reactive blocked diisocyanate chain extender; and then heating or microwave irradiating said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof.

575. In Example 34 of the ‘728 Patent, a polymer composition comprising a UV curing portion and a thermally curing portion is mixed and poured into shallow molds where it is UV cured to form thin layers of polymerized material that has a rubbery like feel. The thin layers are stacked and then collectively thermally cured to adhere the layers to one another to form a three-dimensional object.

576. The polymerizable liquid comprises chain-extended perfluoropolyether (PFPE)

dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component. The chain-extended PFPE is a fluoropolymer chain made by using a diisocyanate linker to join shorter PFPE chains together. The diisocyanate linker has an isocyanate group on each tip. Each isocyanate group bonds to a hydroxyl group on the ends of the shorter PFPE chains to form a urethane bond. The end tips of the extended PFPE chain are capped with methacrylate-containing diisocyanate. The isocyanate group of the methacrylate-containing diisocyanate attaches to the end tip of the extended chain and the methacrylate group is left free to cross-link and make the chain-extended PFPE UV-hardenable. The methacrylate ends on the chain-extended PFPE crosslink with other methacrylate ends when the polymer composition is exposed to UV radiation. The chain-extended PFPE diisocyanate and PFPE tetrol remains uncured after exposure to UV radiation. They are physically entangled in an uncured state in the rubbery-like photocured matrix. The chain-extended PFPE diisocyanate is a fluoropolymer chain built by linking shorter PFPE chains together with a diisocyanate. When forming the PFPE diisocyanate, the amounts of ingredients are added in a ratio that will ensure that the resulting polymer chain is capped with isocyanate groups. The PFPE tetrol is a single PFPE chain (not chain-extended) that carries four total hydroxyl groups - two reactive hydroxyl groups (–OH) at each end. When the stacked layers are thermally cured, the isocyanate ends of the PFPE diisocyanate react with the hydroxyl ends of the PFPE tetrol to form a urethane bond tying the chains into a mechanically stable network. ‘728 Patent, 143:49-144:28. Numerous urethane bonds are present in the mechanically stable network, thus forming a three-dimensional object comprised of polyurethane.

577. The '728 Patent discloses a blocked diisocyanate (nomenclature 21-140B) that has similar function to the diisocyanate (nomenclature 21-140) but is "not moisture sensitive," and can serve as one component of a two-component thermally curable system. The blocking group "cleaves at high temp and reforms isocyanate," regenerating the reactive isocyanate group only upon heating, which can then react with the tetrol's hydroxyl groups to form urethane bonds. Substituting a chain-extended PFPE blocked diisocyanate for the chain-extended PFPE diisocyanate in Example 34 would therefore reduce the polymerizable liquid's moisture sensitivity

and, because the isocyanate remains protected until thermal cure, avoid premature reaction before the intended thermal curing step—making the liquid more convenient to handle and to store.

578. The polymerizable liquid of Example 34 of the ‘728 Patent with the chain-extended PFPE diisocyanate replaced by chain-extended PFPE blocked diisocyanate discloses a polymerizable liquid comprising polymerizable liquid comprising a blocked diisocyanate. Example 34 discloses irradiating a build region with light to form a solid blocked polymer scaffold to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, a three-dimensional object, with the intermediate containing the blocked diisocyanate and then heating the three-dimensional intermediate sufficiently to form from the three-dimensional intermediate the three-dimensional object comprised of polyurethane.

579. Applying the broadest reasonable interpretation and a preponderance-of-the-evidence standard, the Patent Office would not have allowed at least Claim 1 had it been aware of the ‘728 Patent in combination with the ‘330 Patent, which was used by the Examiner in the ‘963 Patent to reject claim 1 during prosecution. The apparatus elements of claim 1 of the ‘963 Patent are the same as the apparatus elements of claim 1 of the ‘880 Patent. The ‘728 Patent discloses every element of the polymerizable liquid in claim 1 of the ‘880 Patent, and the ‘330 Patent discloses every limitation of the apparatus elements of claim 1 of the ’880 Patent.

580. As shown in the claim chart below, the ‘728 Patent combined with the ‘330 Patent (used by the Examiner to reject claim 1 during prosecution of the ‘963 Patent) discloses every limitation of Claim 1 of the ‘880 Patent. Defendant did not dispute the Examiner’s characterization of the ‘330 Patent during prosecution of the ‘963 Patent, and the apparatus elements of claim 1 of the ‘880 Patent match the apparatus elements of the ’963 Patent.

| **U.S. PATENT NO. 10,647,880, CLAIM 1 COMPARED TO THE ‘728 PATENT IN VIEW OF THE ‘330 PATENT** | |
|---|---|
| **U.S. PATENT NO. 10,647,880** | **THE ‘728 PATENT IN VIEW OF THE ‘330 PATENT** |
| A method of forming a three-dimensional object comprised of polyurethane, polyurea, | The ‘728 Patent discloses “a method of forming a three-dimensional object comprised |

| U.S. PATENT NO. 10,647,880, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 10,647,880** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| or copolymer thereof, said method comprising: | of polyurethane, polyurea, or copolymer thereof."<br><br>Examples 34 and 35 disclose a method of forming a three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof.<br><br>'728 Patent, 143:42 – 147:32. |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween; | The '330 Patent discloses "providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween"<br><br>The '330 Patent discloses a build platform 74 as a carrier and a solidification substrate 79a with an elastomeric translucent layer 80a as an optically transparent member having a build surface, and the build region between the carrier and the build surface. Figs. 2A, 2B, and 3; 12:46-56; 10:48-11:55. |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, or (iii) a blocked or reactive blocked diisocyanate chain extender; | The '728 Patent discloses "filling said build region with a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, or (iii) a blocked or reactive blocked diisocyanate chain extender".<br><br>The '728 Patent disclose UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold) in molds, which serve as the build region. The chain-extended PFPE |

| U.S. PATENT NO. 10,647,880, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 10,647,880** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| | diisocyanate and PFPE tetrol (the thermal curing second component) are physically entangled in an uncured state in the rubbery photocured matrix. 143:49-144:28.<br><br>The '728 Patent discloses replacing a diisocyanate component with a blocked diisocyanate to remove moisture sensitivity from a polymerizable liquid. The blocked group cleaves as high temperature and reforms isocyanate. 51:1-7. |
| (c) irradiating said build region with light through said optically transparent member to form a solid blocked polymer scaffold and advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said (i) blocked or reactive blocked prepolymer, (ii) blocked or reactive blocked diisocyanate, or (iii) blocked or reactive blocked diisocyanate chain extender; and then | The '728 Patent discloses "irradiating said build region with light through said optically transparent member to form a solid blocked polymer scaffold and advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said (i) blocked or reactive blocked prepolymer, (ii) blocked or reactive blocked diisocyanate, or (iii) blocked or reactive blocked diisocyanate chain extender;"<br><br>The '728 Patent discloses UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold). The diisocyanate can be modified to be a blocked diisocyanate that cleaves at high temperature. The chain-extended PFPE blocked diisocyanate and PFPE tetrol (the thermal curing second component) are physically entangled in an uncured state in the rubbery photocured matrix. 143:49-144:28; 51:1-7. |

| U.S. PATENT NO. 10,647,880, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 10,647,880** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| | The '330 Patent discloses projecting solidification energy through the transparent solidification substrate 79a to polymerize the solidifiable material 92 to form a three-dimensional object 78 and moving the build platform 74 upward away from the solidification substrate 79a to allow the object 78 being formed to continue to grow according to the pattern being projected to the build region. 13:64 - 14:20. |
| (d) heating or microwave irradiating said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof. | The '728 Patent discloses "heating or microwave irradiating said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof."<br><br>The '728 Patent discloses heating the thermally curable material physically entangled in the stacked layers of photocured matrix material to form the three-dimensional microfluidic device. 143:65 – 144:29. |

581. The claim chart comparing Claim 1 of the '880 Patent to disclosure in the '728 Patent and the '330 Patent shows that the '330 Patent discloses every apparatus element of claim 1 and that the '728 Patent discloses every element of the polymerizable liquid. The '330 Patent discloses a build platform as a carrier and a solidification substrate with an elastomeric translucent layer as an optically transparent member having a build surface. A build region is between the build platform and the solidification substrate with an elastomeric translucent layer.

582. The '728 Patent discloses UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-

shaped photocured matrix (solid polymer scaffold). The ‘728 Patent discloses a blocked diisocyanate that cleaves at high temperature and provides moisture insensitivity. Replacing the chain-extended PFPE diisocyanate with a chain-extended PFPE blocked diisocyanate makes the composition less likely to be sensitive to moisture, which is advantageous for 3D printing applications. Upon UV curing the polymerizable liquid, the chain-extended PFPE dimethacrylate cross-links to form a solid polymer scaffold. In Example 34, the layers of solid polymer scaffold are stacked and the chain-extended PFPE blocked diisocyanate and PFPE tetrol (the thermal curing second component) are physically entangled in an uncured state in the stacked UV cured matrix. When the stacked layers are thermally cured, the isocyanate ends of the PFPE diisocyanate react with the hydroxyl ends of the PFPE tetrol to form a urethane bond tying the chains into a mechanically stable network. Numerous urethane bonds are present in the mechanically stable network, thus forming a three-dimensional object comprised of polyurethane.

583. The ‘728 Patent and the ‘330 Patent disclose every limitation of claim 1 of the ‘880 Patent. The ‘728 Patent and the ‘330 Patent are but-for material to at least claim 1 of the ‘880 Patent.

**e. DeSimone Recognized Materiality Of The ‘728 Patent**

584. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘880 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

585. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘880 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the ‘728 Patent and actively involved in preparation and prosecution of the ‘880 Patent, and DeSimone is a named inventor on the ‘880 Patent so he knew what is described in the specification and he knew what was being claimed in the ‘880 Patent.

**f. Rolland Recognized Materiality Of The '728 Patent**

586. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to patentability for at least one claim of the '880 Patent because he is a named inventor on the '880 Patent so he knew and understood what was disclosed in the '728 Patent and what was claimed in the '880 Patent.

587. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '880 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent

**g. DeSimone Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

588. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

589. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '880 Patent.

**h. Rolland Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

590. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the '728 Patent.

591. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically

intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the ‘728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the ‘880 Patent.

**i. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office**

592. Pursuant to 37 C.F.R. §1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Patent Office, which includes a duty to disclose to the Patent Office all information known to that individual to be material to patentability.

593. Kenneth Sibley was an attorney who prosecuted the ‘880 Patent. Sibley owed a duty of disclosure to the Patent Office. Sibley was an attorney at Myers Bigel from May 1997 to October 2016. Sibley left Myers Bigel to join Defendant as Patent Counsel in October 2016. Sibley became Senior Patent Counsel at Defendant in June 2018 and remained with Defendant until May 2023. In his role as Patent Counsel and then Senior Patent Counsel at Defendant, Sibley was an attorney making prosecution decisions for the ‘880 Patent. Sibley owed a duty of disclosure to the Patent Office.

594. Sherry Murphy was an attorney who prosecuted the ‘880 Patent. Murphy owed a duty of disclosure to the Patent Office.

**S. <u>The ‘856 Patent</u>**

595. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the ‘856 Patent and claims of the ‘856 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘856 Patent**

596. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the ‘856 Patent.

597. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

598. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product that includes at least all of:

An apparatus for forming a three-dimensional object from a polymerizable liquid, comprising:

an optically transparent member comprising a build plate comprising:

an optically transparent member comprising

a flexible, gas permeable, optically transparent sheet having upper and lower opposing sides,

wherein the flexible sheet upper side defines the build surface; and

a flexible, gas permeable or impermeable, optically transparent base layer on the lower side of the flexible sheet opposite the build region,

wherein the build plate is configured to permit gas flow to the build surface,

said controller further configured to form said three-dimensional object from said solid polymer while also concurrently with said filling, advancing, and/or irradiating step:

(i) continuously maintaining a dead zone of polymerizable liquid in contact with said build surface, and

(ii) continuously maintaining a gradient of polymerization zone between said dead zone and said solid polymer and in contact with each thereof,

said gradient of polymerization zone comprising said polymerizable liquid in partially cured form.

**2. Claims Of The '856 Patent Are Invalid**

599. Claims of the '856 Patent are invalid.

600. One or more of the claims of the '856 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

601. One or more of the claims of the '856 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent.

**T. <u>The '868 Patent</u>**

602. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim

of the ‘868 Patent, claims of the ‘868 Patent are invalid at least under Sections 101, 102, 103, and 112, and the ‘868 Patent is unenforceable for inequitable conduct in its prosecution.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes or Has Infringed the ‘868 Patent**

603. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the ‘868 Patent.

604. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

605. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object, wherein said three-dimensional object is a footwear sole, heel, innersole or midsole, comprising:

filling said build region with a polymerizable liquid,

said polymerizable liquid comprising a mixture of

(i) a light polymerizable liquid first component, and

(ii) a second solidifiable component that is different from said first component;

irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having a shape of said footwear sole, heel, innersole or midsole, said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form.

**2. Claims Of The ‘868 Patent Are Invalid**

606. Claims of the ‘868 Patent are invalid.

607. One or more of the claims of the ‘868 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

**a. Invalidity By The '728 Patent**

608. One or more of the claims of the '868 Patent claims are invalid at least under 35 U.S.C. section 103 by the '728 Patent in view of the '330 Patent.

609. DeSimone intentionally withheld disclosure of the '728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the '728 Patent.

610. Rolland intentionally withheld disclosure of the '728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the '728 Patent.

**3. The '868 Patent Is Unenforceable for Inequitable Conduct In Its Prosecution**

611. The '868 Patent is unenforceable for inequitable conduct in its prosecution.

612. DeSimone committed inequitable conduct during prosecution of the '868 Patent.

613. Rolland committed inequitable conduct during prosecution of the '868 Patent.

614. Under 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability. Individuals associated with the filing or prosecution of a patent application are each inventor named in the application; each attorney or agent who prepares or prosecutes the application; and every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.

615. DeSimone is a named inventor on the '868 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56. DeSimone fully understands the duty of disclosure, when he spoke at Stanford University in November 2017, he explained: "When you write a patent you've got to [give a] full disclosure [of] what it is." An Evening With Joseph DeSimone.

616. DeSimone signed an oath under 37 CFR § 1.63, for the '868 Patent, attesting that

he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates DeSimone's Oath for the '868 Patent here as if fully set forth here.[118]

617. Rolland is a named inventor on the '868 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56.

618. Rolland signed an oath under 37 CFR § 1.63, for the '868 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates Rolland's Oath for the '868 Patent here as if fully set forth here.[119]

**a. The Prosecution of the '868 Patent**

619. On February 27, 2020, Murphy filed Application No. 16/803,047, as a nonprovisional, continuation application of Application No. 15/963,550 (issued as U.S. Patent No. 10,647,879 on May 12, 2020). The '047 Application claimed the benefit of PCT/US2015/036946 and a series of six provisionals (62/133,642 (3/16/2015); 62/129,187 (3/6/2015); 62/101,671 (1/9/2015); 62/036,161 (8/12/2014); 62/015,780 (6/23/2014)). The '946 PCT was filed on June 22, 2015, claiming priority to the series of six provisionals.

620. During prosecution of the '868 Patent, Defendant submitted over 320 references collectively. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of all 320 references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of all 320 references.

**i. The '728 Patent**

621. DeSimone did not disclose the '728 Patent in any IDS submitted to the Patent Office for the '868 Patent.

622. Rolland did not disclose the '728 Patent in any IDS submitted to the Patent Office for the '868 Patent.

623. DeSimone and Rolland filed the '728 Patent as the U.S. national stage application

---

[118] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[119] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

of a PCT Application filed on August 9, 2006. DeSimone and Rolland are named inventors on the ‘728 Patent. Liquidia Technologies, Inc. is a co-owner of the ‘728 Patent. The University of North Carolina is a co-owner of the ‘728 Patent.

624. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the ‘728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the ‘728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

625. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the ‘728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the ‘728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

626. DeSimone has stated that he views patents as a driver of innovation and that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), because DeSimone personally engaged with the patenting process at a detailed level in his companies, DeSimone had an active role in the patenting process at Liquidia Technologies. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone’s approval would have been required for the preparation and filing of the ‘728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia Technologies. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the ‘728 Patent at least because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the ‘728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in the prosecution of the ‘728 Patent at the Patent Office.

627. DeSimone knew about the ‘728 Patent and knew what the ‘728 Patent disclosed.

628. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone introduced Rolland to entrepreneurship and company creation using patents, and Rolland adopted DeSimone’s belief that patents play a critical role in building and growing companies and adopted

DeSimone's hands-on approach to patents. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland personally engaged with the patenting process for at least patents on which he was an inventor. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland's approval would have been required for the preparation and filing of the '728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland approved the preparation and filing of the '728 Patent at least because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in the prosecution of the '728 Patent.

629. Rolland knew about the '728 Patent and knew what the '728 Patent disclosed.

630. The specification of the '868 Patent includes a reference to the '728 Patent in a listing of patents describing perfluoropolyether polymer materials that form a thin film or sheet of material that is flexible and can be used as the semipermeable membrane of the build plate. The specification reads, in relevant part:

> In some embodiments the build plate may be formed from a thin film or sheet of material which is flexible when separated from the apparatus of the invention … Particular materials include TEFLON AF® fluoropolymers, commercially available from DuPont. Additional materials include perfluoropolyether polymers such as described in U.S. Pat. Nos. 8,268,446; 8,263,129; 8,158,728; and 7,435,495.

The '868 Patent, 17:5-15.

631. The duty to disclose material information under 37 C.F.R. § 1.56 is not satisfied by referring to a patent in a list of patents in the specification. Unless the reference is submitted to the Patent Office in the manner prescribed by 37 C.F.R. §§ 1.97 and 1.98, the reference is not treated as having been properly submitted for consideration under Rule 56. The "manner prescribed" requires a compliant information disclosure statement, including a list of the information submitted for consideration, separately listing U.S. patents and U.S. patent application publications, identifying each U.S. patent by inventor, patent number, and issue date, and otherwise satisfying the timing and content requirements of §§ 1.97 and 1.98.

632. DeSimone did not submit the '728 Patent to the Patent Office in a manner

prescribed by 37 C.F.R. §§ 1.97 and 1.98. DeSimone failed to submit the '728 Patent to the Patent Office for consideration under Rule 56.

633. Rolland did not submit the '728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. Rolland failed to submit the '728 Patent to the Patent Office for consideration under Rule 56.

634. The '728 Patent is listed in a string of patents describing perfluoropolyether polymer materials useful for constructing the build plate. The '728 Patent was not included in a listing of patents in the polymerizable liquids sections of the '868 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), inclusion of the '728 Patent in a list of patents disclosing materials useful for the semipermeable membrane would lead the Examiner to believe that the '728 Patent was not materially relevant to the polymerizable liquids.

635. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland copied a significant portion of the '728 Patent into Rolland '133. The '728 Patent, however, is not cumulative to Rolland '133 because Rolland did not copy all the '728 Patent dual cure chemistry disclosure into Rolland '133. The '728 Patent has additional dual cure chemistry disclosure that is not in Rolland '133, which includes a blocked diisocyanate that cleaves at high temperature to expose previously blocked isocyanate. Rolland '133 is not cumulative to the '728 Patent. Rolland '133 includes disclosure that is not in the '728 Patent, such as, disclosure related to forming a medical or surgical device and for imparting chemical functionality to a medical or surgical device.

636. DeSimone and Rolland filed a divisional application claiming priority to the '728 Patent. That application issued as U.S. Patent No. 8,444,899. DeSimone never submitted the '899 Patent for consideration by an examiner in any of the Dual Cure patents. Rolland never submitted the '899 Patent for consideration by an examiner in any of the Dual Cure patent.

**ii. "Excessively Lengthy Information Disclosure Statement"**

637. During prosecution of commonly owned, related Application No. 15/240,157, which issued, on May 29, 2018, as U.S. Patent No. 9,982,164, the Examiner encouraged Defendant and their patent attorneys at Myers Bigel to provide "a concise explanation of why information is being submitted to the Patent Office and how it is understood to be relevant" when

Defendant filed an **"excessively lengthy Information Disclosure Statement."**

Office Action mailed June 8, 2017, U.S. Patent No. 9,982,164 (emphasis added).

638. Defendant had filed an information disclosure statement with 310 references concurrently with application filing. Because of the excessive length of the IDS, the Examiner explained that only a "cursory review" of the listed references was given.

639. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone through Defendant's attorneys at Myers Bigel never complied with the Examiner's request in the '164 Patent.

640. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland, through Defendant's attorneys at Myers Bigel, never complied with the Examiner's request in the '164 Patent.

641. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone continued with the practice of submitting "excessively lengthy" IDSs through Defendant's attorneys Myers Bigel in all patents in the Dual Cure patent family, including the '868 Patent. The first IDS in the '868 Patent, filed with the application filing, included 294 references for consideration. On information and belief, Fed. R. Civ. Proc. 11(b)(3), this IDS submission is an example of the practice of burying the examiner in references, which, on information and belief, Fed. R. Civ. Proc. 11(b)(3), results in the Examiner giving no more than a cursory review of the submitted references.

642. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland continued with the practice of submitting "excessively lengthy" IDSs through Defendant's attorneys Myers Bigel in all patents in the Dual Cure patent family, including the '868 Patent. The first IDS in the '868 Patent, filed with the application filing, included 294 references for consideration. On information and belief, Fed. R. Civ. Proc. 11(b)(3), this IDS submission is an example of the practice of burying the examiner in references, which, on information and belief, Fed. R. Civ. Proc. 11(b)(3), results in the Examiner giving no more than a cursory review of the listed references.

643. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone's intent in submitting excessively lengthy references was to ensure only a cursory review of the listed

references in the Dual Cure patent family. On information and belief, Fed. R. Civ. Proc. 11(b)(3), with so many references to review, the Examiner does not have time to adequately review the submitted references or search for references that were not submitted, like the '728 Patent.

644. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland's intent in submitting excessively lengthy references was to ensure only a cursory review of the listed references in the Dual Cure patent family. On information and belief, Fed. R. Civ. Proc. 11(b)(3), with so many references to review, the Examiner does not have time to adequately review the submitted references or search for references that were not submitted, like the '728 Patent.

**iii. February 27, 2020 Information Disclosure Statement**

645. On February 27, 2020, Murphy filed an IDS concurrently with the application filing, submitting 294 references – 114 U.S. patents, 78 U.S. application publications, 52 foreign patent documents, and 50 non-patent literature references. Plaintiff incorporates the February 27, 2020 Information Disclosure Statement here as if fully set forth here.[120] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 27 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 27 IDS. DeSimone did not disclose the '728 Patent in the February 27 IDS. Rolland did not disclose the '728 Patent in the February 27 IDS.

646. When Murphy filed the IDS with 294 references, Murphy did not include "a concise explanation of why information is being submitted to the Patent Office and how it is understood to be relevant," as requested by the Examiner in the grandparent application to the '868 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Murphy continued submitting excessively lengthy information disclosure statements at the direction of DeSimone and Rolland, even though the Examiner stated that only a cursory review would be given to excessively lengthy information disclosure statements.

647. In the February 27 IDS, DeSimone was inventor or author for at least sixteen references and at least six of these references were not prior art. In the February 27 IDS, Rolland

---

[120] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

was inventor or author for at least nine references and at least six of these references were not prior art. Plaintiff incorporates the sixteen DeSimone references and the nine Rolland references, including the numbered references listed below, here as if fully set forth here.[121] A listing of a portion of the non-prior art references that DeSimone and Rolland submitted include:

648. International application publication WO2015/200201, naming DeSimone, Rolland, and others as inventors is not prior art. WO ‘201 is the publication of an international application that had a national phase application in the U.S. and issued as the ‘142 Patent, the ‘164 Patent, and the ‘868 Patent. WO ‘201 is the same application as the ‘868 Patent and is therefore not prior art to the ‘868 Patent.

649. International application publication WO2015/200189, naming DeSimone, Rolland, and others as inventors, is not prior art. WO ‘189 shares the same six provisional applications as priority applications with the ‘868 Patent and is therefore not prior art to the ‘868 Patent.

650. International application publication WO2015/200173, naming DeSimone, Rolland, and others as inventors is not prior art. WO ‘173 is the publication of an international application that had a national phase application in the U.S. and issued as the ‘963 Patent and the ‘342 Patent. WO ‘173 shares the same six provisional applications as priority applications with the ‘868 Patent and is therefore not prior art to the ‘868 Patent.

651. International application publication WO2015/200179, naming DeSimone, Rolland, and others as inventors is not prior art. WO ‘179 is the publication of an international application that had a national phase application in the U.S. and issued as the ‘606 Patent, the ‘066 Patent, the ‘880 Patent, and the ‘895 Patent. WO ‘179 shares the same six provisional applications as priority applications with the ‘868 Patent and is therefore not prior art to the ‘868 Patent.

652. Tumbleston and its Supplementary Materials are not prior art. DeSimone and Rolland are co-authors on the article. The submitted manuscript and submitted supplementary materials for Tumbleston were included as Appendices to U.S. Provisional Application No.

[121] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

62/129, 187, filed on March 6, 2015. The ‘868 Patent claims priority to the ‘187 PROV, and therefore, Tumbleston and its Supplementary Materials are not prior art to the ‘868 Patent.

653. International application publication WO2016/145050, naming DeSimone, Rolland, and others as inventors is not prior art for the dual cure chemistry elements of the ‘868 Patent because the priority date for the ‘050 Publication is its provisional application filing date of March 10, 2015, and the priority date for the dual cure chemistry elements of the ‘868 Patent is the provisional application filing date of January 9, 2015, which is earlier than March 10, 2015.

654. The ‘050 Publication discloses a polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component. The ‘050 Publication, however, is not prior art to the ‘868 Patent. Rolland directed that the ‘050 Publication - a reference that was not prior art to the dual cure materials elements of the claims of the ‘868 Patent – be submitted to the Patent Office. Rolland, however, failed to submit the ‘728 Patent, a reference that is both material and prior art to the claims of the ‘868 Patent. DeSimone directed that the ‘050 Publication - a reference that was not prior art to the dual cure materials elements of the claims of the ‘868 Patent – be submitted to the Patent Office. DeSimone, however, failed to submit the ‘728 Patent, a reference that is both material and prior art to the claims of the ‘868 Patent.

655. DeSimone’s TED presentation filmed on March 16, 2015, entitled “What if 3D Printing was 100x Faster?” is not prior art. The ‘868 Patent claims priority to six provisional applications filed between June 23, 2014, and March 16, 2015. Thus, the priority date for the ‘868 Patent is on or before the filming date of the TED presentation.

656. Layerless Fabrication is not prior art. DeSimone is a co-author for the article. The ‘868 Patent claims priority to six provisional applications filed between June 23, 2014, and March 16, 2015. Thus, the priority date for the ‘868 Patent is before the publication date of Layerless Fabrication of September 2016, and the article is not prior art.

657. U.S. Patent No. 9,453,142 naming DeSimone, Rolland, and others as inventors is not prior art. The ‘142 Patent shares the same six provisional applications as priority applications with the ‘868 Patent and is therefore not prior art to the ‘868 Patent.

658. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew these references were not prior art but directed Murphy to submit them anyway as a part of a pattern of selectively disclosing references that were not prior art while intentionally withholding the ‘728 Patent from being submitted.

659. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew these references were not prior art but directed Murphy to submit them anyway as a part of pattern of selectively disclosing references that were not prior art while intentionally withholding the ’728 Patent.

660. In the February 27 IDS, Murphy also submitted U.S. Application Publication No. 2009/0061152, naming DeSimone, Rolland, and others as inventors. The ‘152 Publication, issued as U.S. Patent No. 8,420,124, is entitled “Methods for fabricating isolated micro- and nano-structures using soft or imprint lithography,” and is owned by the University of North Carolina. The ‘152 Publication is prior art but is not but-for material to the ‘868 Patent like the ‘728 Patent is.

661. The ‘152 Publication discloses the use of fluorinated elastomer-based materials, in particular perfluoropolyether (PFPE)-based materials, in high-resolution soft or imprint lithographic applications, such as micro- and nanoscale replica molding. It discloses a method for producing free-standing, isolated nanostructures of any shape using soft or imprint lithography technique. Perfluoropolyether chemistry was in many patent disclosures for Liquidia Technologies.

662. While the ‘152 Publication discloses perfluoropolyethers, it does not disclose dual cure chemistry applications in the context of perfluoropolyethers like the ‘728 Patent. The ‘728 Patent uses the term “dual cure” 48 times, while the ‘152 Publication has no instances of the term “dual cure.”

663. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew about the disclosure in ‘728 Patent and knew about the disclosure in the ‘152 Publication. Both the ‘152 Publication and the ‘728 Patent were prepared and prosecuted by attorneys at the law firm Alston & Bird. The ‘868 Patent was prepared and prosecuted by attorneys at a different law firm, Myers

Bigel. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the attorneys at Myers Bigel did not know about the Alston & Bird-prepared applications until DeSimone told them about those applications. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone intentionally informed the attorneys at Myers Bigel of references that did not disclose dual cure chemistry elements.

664. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone directed Murphy to submit the '152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry like the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed the '152 Publication while intentionally withholding the '728 Patent from the Patent Office.

665. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew about the disclosure in '728 Patent and knew about the disclosure in the '152 Publication. Both the '152 Publication and the '728 Patent were prepared and prosecuted by attorneys at the law firm Alston & Bird. The '868 Patent was prepared and prosecuted by attorneys at a different law firm, Myers Bigel. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the attorneys at Myers Bigel did not know about the Alston & Bird-prepared applications until Rolland told them about those applications. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland intentionally informed the attorneys at Myers Bigel of references that did not disclose dual cure chemistry elements.

666. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland directed Murphy to submit the '152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry like the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed the '152 Publication while intentionally withholding the '728 Patent from the Patent Office.

667. Murphy also submitted US2015/0097316 with the February 27 IDS. Plaintiff

incorporates the '316 Publication here as if fully set forth here.[122] The '316 Publication is the Application Publication of Application No. 14/570,591, which issued as U.S. Patent No. 9,216,546. Defendant owns the '316 Publication. DeSimone and other founders of Defendant are named inventors on the '316 Publication. The '316 Publication shares priority with the '601 Patent and the '181 Patent, both of which are in the CLIP family of the Asserted Patents. Unlike the '728 Patent, the '316 Publication does not have any disclosure of dual cure chemistry.

668. DeSimone was a named inventor on the '316 Publication, and, on information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the '316 Publication failed to disclose anything about dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed patent references on which he was an inventor but did not disclose dual cure chemistry and intentionally withheld the '728 Patent, for which DeSimone was also a named inventor, and which DeSimone knew disclosed dual cure chemistry.

669. Murphy also submitted US2015/0072293 with the February 27 IDS. Plaintiff incorporates the '293 Publication here as if fully set forth here.[123] The '293 Publication is the Application Publication of Application No. 14/456,270, which issued as US Patent No. 9,360,757. Defendant owns The '293 Publication. DeSimone and other founders of Defendant are named inventors on the '293 Publication. The '293 Publication is the great, great grandparent application to the '073 Patent and the great grandparent to the '938 Patent, both of which are in the CLIP family of the Asserted Patents. Unlike the '728 Patent, the '293 Publication does not have any disclosure of dual cure chemistry.

670. DeSimone was a named inventor on the '293 Publication, and, on information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the '293 Publication failed to disclose anything about dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed patent references on which he was an inventor but did not disclose dual cure chemistry and intentionally withheld the '728 Patent, for which DeSimone was also a named inventor, and which DeSimone knew disclosed dual cure chemistry.

---

[122] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[123] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**iv. April 30, 2020 Information Disclosure Statement**

671. On April 30, 2020, Murphy filed an Information Disclosure Statement, submitting ten references. Plaintiff incorporates the April 30, 2020 Information Disclosure Statement here as if fully set forth here.[124] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the April 30 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the April 30 IDS. DeSimone did not disclose the '728 Patent in the April 30 IDS. Rolland did not disclose the '728 Patent in the April 30 IDS.

**v. May 11, 2020 Office Action**

672. On May 11, 2020, the Examiner mailed a Non-Final Office Action setting forth a restriction election requirement, rejecting the claims for non-statutory double patenting over claims of U.S. Patent Nos. 9,676,963; 10,350,823; 10,647,054; 10,343,331; 10,538,031; and 10,500,786; and rejecting claims 1-9 as being unpatentable over International Application Publication No. WO 2014/126830 (owned by Defendant and naming DeSimone as an inventor) in view of U.S. Application Publication No. 2010/0304088 to Steeman *et al.* Plaintiff incorporates the May 11, 2020 Non-Final Office Action here as if fully set forth here.[125]

**vi. August 7, 2020 Response**

673. On August 7, 2020, Murphy filed a Response to the Non-Final Office Action, confirming the election of Group I (claims 1-9) and addressing the double patenting rejections by electronically filing Terminal Disclaimers over U.S. Patent Nos. 9,676,963; 10,350,823; 10,647,054; 10,343,331; 10,538,031; and 10,500,786. Plaintiff incorporates the August 7, 2020 Response here as if fully set forth here.[126]

674. In the August 7 Response, Murphy did not mention WO '830 but argued that the '088 Publication does not disclose a method wherein the second solidifiable component is unsolidified and/or uncured in a first irradiating step and then solidified in a second step. Murphy

---

[124] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[125] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[126] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

argued that Steeman discloses a method where all polymerizable components are light polymerizable and are cured in the same irradiation step.

**vii. August 7, 2020 Information Disclosure Statement**

675. Murphy filed an Information Disclosure Statement concurrently with the August 7 Response. Plaintiff incorporates the August 7, 2020 Information Disclosure Statement here as if fully set forth here.[127] The IDS submitted sixteen references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the August 7 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the August 7 IDS. DeSimone did not disclose the '728 Patent in the August 7 IDS. Rolland did not disclose the '728 Patent in the August 7 IDS.

676. In the August 7 IDS, Murphy submitted U.S. Patent No. 9,676,963, assigned to Carbon, Inc. and one of the Asserted Patents. DeSimone and Rolland are named inventors on the '963 Patent. The '868 Patent shares priority with the '963 Patent, so the '963 Patent is not prior art to the '868 Patent.

677. In the August 7 IDS, Murphy submitted U.S. Patent No. 10,350,823, assigned to Carbon, Inc. Plaintiff incorporates the '823 Patent here as if fully set forth here.[128] The '823 Patent is not prior art. Rolland and Julia Cushen are co-inventors on the '823 Patent. The title of the '823 Patent is "Dual Precursor Resin Systems For Additive Manufacturing With Dual Cure Resins." With the '823 Patent, Rolland submitted a reference that was material but not prior art. The earliest priority date for the '823 Patent is December 20, 2016, so the '823 Patent is not prior art to the '868 Patent, which has a priority date for the dual cure chemistry of January 9, 2015. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed references that were material but were not prior art to give the illusion of complying with the duty to disclose.

678. In the August 7 IDS, Murphy submitted U.S. Patent No. 10,500,786, assigned to Carbon, Inc. Plaintiff incorporates the '786 Patent here as if fully set forth here.[129] The '786 Patent

[127] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[128] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[129] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

is not prior art. Rolland was the sole named inventor on the '786 Patent. The title of the '786 Patent is "Dual Cure Resins Containing Microwave Absorbing Materials And Methods Of Using The Same." With the '786 Patent, Rolland submitted a reference that was material but not prior art. The earliest priority date for the '786 Patent is June 22, 2016, so the '786 Patent is not prior art to the '868 Patent, which has a priority date for the dual cure chemistry of January 9, 2015. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed references that were material but were not prior art to give the illusion of complying with the duty to disclose.

**viii. August 26, 2020 Notice of Allowance**

679. On August 26, 2020, the Examiner mailed a Notice of Allowance allowing claims 1-9. Plaintiff incorporates the August 26, 2020 Notice Of Allowance here as if fully set forth here.[130] In the Statement of Reasons For Allowance, the Examiner explained that WO 830 was the closest prior art, and that WO 830 discloses the apparatus elements of the claims but that:

> [WO 830] does not teach or fairly suggest the claimed method of forming a three-dimensional object wherein the polymerizable liquid contains two different polymerizable liquids, the process includes a heating step, and wherein **the second solidifiable component is unsolidified and/or uncured in a first irradiation step yet solidifies in the second step**.

Notice of Allowance dated August 26, 2020, Page 4. (emphasis added)

680. The '728 Patent discloses the elements the Examiner stated were missing from the cited prior art. The '728 Patent is but-for material to patentability of claims of the '868 Patent.

681. On January 26, 2021, the Patent Office issued U.S. Patent No. 10,899,868.

682. Claim 1 of the '868 Patent recites, in part, a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; (c) irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate … said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave

[130] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

irradiating, second solidifiable component in said three-dimensional intermediate.

683. The ‘728 Patent discloses a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; (c) irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate … said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, second solidifiable component in said three-dimensional intermediate.

684. DeSimone never submitted the ‘728 Patent to the Patent Office in the ‘868 Patent.

685. DeSimone knew about the ‘728 Patent, knew it was material to the patentability of at least one claim of the ‘868 Patent, and intentionally withheld it from the Patent Office.

686. Rolland never submitted the ‘728 Patent to the Patent Office in the ‘868 Patent.

687. Rolland knew about the ‘728 Patent, knew it was material to the patentability of at least one claim of the ‘868 Patent, and intentionally withheld it from the Patent Office.

688. Between February 27, 2020, when Defendant filed the application that issued as the ‘868 Patent, and January 26, 2021, when the ‘868 Patent issued, Defendant submitted, through its attorneys at Myers Bigel P.A., at least 320 references to the Patent Office for consideration.

689. Of the 320 references, at least seventeen included DeSimone as an inventor or author, and at least seven of those references were not prior art to the dual cure chemistry of the ‘868 Patent. Of the 320 references, at least twelve references included Rolland as an inventor, and at least nine of those references were not prior art to the dual cure chemistry of the ‘868 Patent.

690. Even though Defendant submitted at least 320 references, and DeSimone was the inventor or author of some of the 320 references, and Defendant submitted references that were not prior art, DeSimone never submitted the ‘728 Patent, which DeSimone knew about, knew was but-for material, and knew was prior art, during prosecution of the ‘868 Patent.

691. Even though Defendant submitted at least 320 references, and Rolland was the inventor or author of some of the 320 references, and Defendant submitted references that were

not prior art, Rolland never submitted the ‘728 Patent, which Rolland knew about, knew was but-for material, and knew was prior art, during prosecution of the ‘868 Patent.

**b. DeSimone’s Inequitable Conduct With Respect To The ‘728 Patent**

692. DeSimone knew about the ‘728 Patent because he is a named inventor on the ‘728 Patent. Additionally, DeSimone co-founded Liquidia Technologies and was an officer at Liquidia Technologies when the ‘728 Patent was prepared and prosecuted. DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the application issued as the ‘728 Patent so knew what the ‘728 Patent disclosed.

693. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the ‘728 Patent was prior art to the ‘868 Patent.

694. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘868 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

695. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘868 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the ‘728 Patent and actively involved in preparation and prosecution of the ‘868 Patent, and DeSimone is a named inventor on the ‘868 Patent so he knew what is described in the specification and he knew what was being claimed in the ‘868 Patent.

696. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the ‘728 Patent was material to the patentability of at least one claim of the ‘868 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the ‘728 Patent.

697. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the ‘728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on

information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the ‘728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

698. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the ‘728 Patent was material to the patentability of at least one claim of the ‘868 Patent and he directed, reviewed, and supervised the submission of over 320 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

699. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 320 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

700. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the ‘728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the ‘868 Patent.

**c. Rolland’s Inequitable Conduct With Respect To The ‘728 Patent**

701. Rolland knew what the ‘728 Patent disclosed because he was a named inventor.

702. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the ‘728 Patent was prior art to the ‘868 Patent.

703. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the ‘728 Patent was material to patentability for at least one claim of the ‘868 Patent because he is a named inventor on the ‘868 Patent so he knew and understood what was disclosed in the ‘728 Patent and what was claimed in the ‘868 Patent.

704. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the

'728 Patent was material to the patentability of at least one claim of the '868 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent.

705. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the '728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the '728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed the '728 Patent to the attorneys at Myers Bigel.

706. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '868 Patent and he directed, reviewed, and supervised the submission of over 320 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

707. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 320 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the '728 Patent.

708. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '868 Patent.

**d. The '728 Patent Is But-For Material To The '868 Patent**

709. The '728 Patent discloses a dual-cure resin composition comprising a UV-curable component blended with a thermally curable component. Example 34 in the '728 Patent describes forming a three-dimensional object and describes that upon UV irradiation, the UV-curable component in the resin composition cures to form a solidified network, while the thermally

curable component remains "entangled but unreacted" in that network. Upon subsequent heating, the thermally curable component cures within the partially cured network, thereby forming a three-dimensional object.

710. The Examiner in the '550 Application, who is presumed to be reasonable, rejected claim 28 of the '550 Application as anticipated by disclosure copied from the '728 Patent. Claim 28 is nearly identical to claim 1 of the '868 Patent.

711. The '550 Application shares priority, inventors, specification, and Applicant with the '868 Patent.

712. The table below shows that claim 28 of the '550 Application is nearly identical to claim 1 of the '868 Patent. The differences between the claims do not alter the substance of the claimed methods. The difference in the '550 Application claim merely identifies a dental-device field of use, and the '868 Patent claim identifies a footwear component field of use. The Examiner rejected Claim 28 of the '550 Application as anticipated by subject matter copied from the '728 Patent.

| **U.S. App 15/963,550, CLAIM 28 COMPARED TO THE '868 PATENT, CLAIM 1** | |
|---|---|
| **U.S. App 15/963,550** | **U.S. 10,899,868** |
| **28**. A method of forming a three-dimensional object, wherein said three-dimensional object is a dental mold, dental implant or dental aligner, comprising: | **1.** A method of forming a three-dimensional object, wherein said three-dimensional object is a footwear sole, heel, innersole or midsole, comprising: |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween | (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and | (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and |
| (ii) a second solidifiable component that is different from said first component | (ii) a second solidifiable component that is different from said first component; |
| (c) irradiating said build region with light through said optically transparent member to | (c) irradiating said build region with light through said optically transparent member to |

| | |
|---|---|
| form a solid polymer scaffold from said first component and | form a solid polymer scaffold from said first component and |
| also advancing said carrier away from said build surface to form a three-dimensional intermediate having a shape of said dental mold, dental implant or dental aligner | also advancing said carrier away from said build surface to form a three-dimensional intermediate having a shape of said footwear sole, heel, innersole or midsole, |
| said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, second solidifiable component in said three-dimensional intermediate to form said dental mold, dental implant or dental aligner. | (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said footwear sole, heel, innersole, or midsole. |

713. The comparison of U.S. App 15/963,550, Claim 28 to the ‘868 Patent, Claim 1 shows that the claims are nearly identical. In the table, common language is underlined. In the final limitations, a “dental mold, dental implant or dental aligner” in the ‘550 Application is a “footwear sole, heel, innersole, or midsole” in the ‘868 Patent. The ‘728 Patent discloses materials and methods for fabricating polymer devices and describes applications for medical devices and industrial use devices. A material and method that can be used to form a medical device or industrial device can also be used to form a footwear sole, heel, innersole, or midsole. Thus, the field of use of claim 1 of the ‘868 Patent does not provide a patentable distinction from the polymerizable liquid disclosed in the ‘728 Patent.

714. The ‘728 Patent is but-for material to the patentability of at least Claim 1 of the ‘868 Patent because claim 1 of the ‘868 Patent is nearly identical to a claim that the Examiner, who is presumed to be reasonable, rejected as anticipated by disclosure copied from the ‘728 Patent.

715. Applying the broadest reasonable interpretation and a preponderance-of-the-evidence standard, the Patent Office would not have allowed at least Claim 1 had it been aware of the ‘728 Patent in combination with prior art used by the Examiner in the ‘963 Patent (has same

apparatus elements as claim 1 of '868 Patent) to reject claim 1 during prosecution because the '728 Patent discloses every element of the polymerizable liquid in claim 1 of the '868 Patent.

716. As shown in the claim chart below, the '728 Patent combined with the '330 Patent (used by the Examiner to reject claim 1 during prosecution of the '963 Patent) discloses every limitation of Claim 1 of the '868 Patent. Defendant did not dispute the Examiner's characterization of the '330 Patent during prosecution of the '963 Patent, and the apparatus elements of claim 1 of the '868 Patent match the apparatus elements of the '963 Patent.

| U.S. PATENT NO. 10,899,868, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 10,899,868** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| 1. A method of forming a three-dimensional object, wherein said three-dimensional object is a footwear sole, heel, innersole or midsole, comprising: | The '728 Patent discloses "A method of forming a three-dimensional object."<br>'728 Patent, 1:30-33. |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween; | The '330 Patent discloses "providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween."<br>The '330 Patent discloses a build platform 74 as a carrier and a solidification substrate 79a with an elastomeric translucent layer 80a as an optically transparent member having a build surface, and the build region between the carrier and the build surface.<br>'330 Patent, Figs. 2A & 2B, 3, 12:46-56, 10:48 - 11:55. |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; | The '728 Patent discloses "filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component;"<br>The '728 Patent discloses filling a master template that serves as a build region with a |

| U.S. PATENT NO. 10,899,868, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 10,899,868** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| | polymerizable liquid mixture comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component that is different from the first component.<br><br>'728 Patent, 143:49-65. |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form | The '728 Patent discloses "irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form;"<br><br>The '728 Patent disclose UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold). The chain-extended PFPE diisocyanate and PFPE tetrol (the thermal curing second component) are physically entangled in an uncured state in the rubbery photocured matrix.<br><br>'728 Patent, 143:49-144:28.<br><br>The '330 Patent discloses projecting solidification energy through the transparent solidification substrate 79a to polymerize the solidifiable material 92 to form a three-dimensional object 78 and moving the build platform 74 upward away from the |

| U.S. PATENT NO. 10,899,868, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 10,899,868** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| | solidification substrate 79a to allow the object 78 being formed to continue to grow according to the pattern being projected to the build region.<br><br>'330 Patent,13:64-14:20. |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said footwear sole, heel, innersole or midsole. | The '728 Patent discloses "subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object."<br><br>The '728 Patent discloses heating the thermally curable material physically entangled in the stacked layers of photocured matrix material to form the three-dimensional microfluidic device.<br><br>'728 Patent, 143:65 – 144:29. |

717. The claim chart comparing Claim 1 of the '868 Patent to disclosure in the '330 Patent and the '728 Patent shows that the '330 Patent discloses every apparatus element of claim 1 and that the '728 Patent discloses every element of the polymerizable liquid. Thus, together, the '728 Patent and the '330 Patent disclose every element of claim 1 of the '868 Patent. The '728 Patent and the '330 Patent are but-for material to at least claim 1 of the '868 Patent.

718. In the May 17, 2016 Office Action in the '963 Patent (had same apparatus elements as claim 1 of the '868 Patent), the Examiner, who is presumed to be reasonable, concluded that the '330 Patent discloses every apparatus element of claim 1 of the '963 Patent. Defendant never argued against or contradicted the Examiner's conclusion related to the '330 Patent. The apparatus elements in claim 1 of the '868 Patent match the apparatus elements in claim 1 of the '963 Patent. The apparatus elements in claim 1 of the '868 Patent are the same apparatus elements rejected by the Examiner in the '963 Patent using the '330 Patent.

719. The ‘728 Patent discloses a polymerizable liquid as recited in claim 1 of the ‘868 Patent.

720. Claim 1 of the ‘868 Patent recites, in part, a method of forming a three-dimensional object, comprising filling a build region with a polymerizable a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; (c) irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate … said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, second solidifiable component in said three-dimensional intermediate.

721. The ‘728 Patent discloses a method of forming a three-dimensional object, comprising filling a build region with a polymerizable a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; (c) irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate … said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, second solidifiable component in said three-dimensional intermediate.

722. The ‘728 Patent discloses the elements in claim 1 of the ‘868 Patent not disclosed by the ‘330 Patent. Thus, the ‘728 Patent and the ‘330 Patent collectively disclose every element of claim 1 of the ‘868 Patent.

723. The ‘728 Patent discloses the elements in claim 1 of the ‘868 Patent not disclosed by the ‘330 Patent. Thus, the ‘728 Patent and the ‘330 Patent collectively disclose every element of claim 1 of the ‘868 Patent.

**e. DeSimone Recognized Materiality Of The ‘728 Patent**

724. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the

materiality of the '728 Patent to the claims of the '868 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

725. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the '728 Patent to the claims of the '868 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the '728 Patent and actively involved in preparation and prosecution of the '880 Patent, and DeSimone is a named inventor on the '868 Patent so he knew what is described in the specification and he knew what was being claimed in the '868 Patent.

**f. Rolland Recognized Materiality Of The '728 Patent**

726. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to patentability for at least one claim of the '880 Patent because he is a named inventor on the '868 Patent so he knew and understood what was disclosed in the '728 Patent and what was claimed in the '868 Patent.

727. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '868 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent

**g. DeSimone Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

728. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

729. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent

applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '868 Patent.

**h. Rolland Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

730. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the '728 Patent.

731. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '868 Patent.

**i. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office**

732. Pursuant to 37 C.F.R. §1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Patent Office, which includes a duty to disclose to the Patent Office all information known to that individual to be material to patentability.

733. Kenneth Sibley was an attorney who prosecuted the '868 Patent. Sibley was an attorney at Myers Bigel from May 1997 to October 2016. Sibley left Myers Bigel to join Defendant as Patent Counsel in October 2016. Sibley became Senior Patent Counsel at Defendant in June 2018 and remained with Defendant until May 2023. In his role as Patent Counsel and then Senior Patent Counsel at Defendant, Sibley was an attorney making prosecution decisions for the '868 Patent. Sibley owed a duty of disclosure to the Patent Office.

734. Sherry Murphy was an attorney who prosecuted the '868 Patent. Murphy owed a duty of disclosure to the Patent Office

735. On information and belief, Fed. Rule Civ. Proc. 11(b)(3), Lori Herman was an attorney who prosecuted the '868 Patent. Herman was Of Counsel at Myers Bigel beginning in July 2020. On information and belief, Fed. Rule Civ. Proc. 11(b)(3), Herman was an attorney representing Defendant and was substantively involved in prosecution of the '868 Patent. Herman owed a duty of disclosure to the Patent Office.

**U. The '516 Patent**

736. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '516 Patent and claims of the '516 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed the '516 Patent**

737. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '516 Patent.

738. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

739. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product that includes at least all of:

A three-dimensional object produced by a process comprising:

providing a carrier and a build plate,

said build plate comprising a semipermeable member,

said semipermeable member comprising a build surface with said build surface and said carrier defining a build region therebetween, and with said build surface in fluid communication by way of the semipermeable member with a source of polymerization inhibitor;

irradiating said build region through said build plate to produce a solid polymerized region in said build region,

while forming or maintaining a liquid film release layer comprised of said polymerizable liquid formed between said solid polymerized region and said build

surface,

wherein the polymerization of which liquid film is inhibited by said polymerization inhibitor.

**2. Claims Of The ‘516 Patent Are Invalid**

740. Claims of the ‘516 Patent are invalid.

741. One or more of the claims of the ‘516 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

742. One or more of the claims of the ‘516 Patent claims are invalid at least under 35 U.S.C. section 103 by the ‘330 Patent in view of the ‘441 Patent.

**V. <u>The ‘342 Patent</u>**

743. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the ‘342 Patent, claims of the ‘342 Patent are invalid at least under Sections 101, 102, 103, and 112, and the ‘342 Patent is unenforceable for inequitable conduct in its prosecution.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘342 Patent**

744. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the ‘342 Patent.

745. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

746. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object, comprising:

filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of

(i) a light polymerizable liquid first component, and

(ii) a second solidifiable component that is different from said first component, wherein said second component comprises the precursors to a polyurethane,

polyurea, or copolymer thereof, and wherein said second component comprises a polymerizable liquid suspended in said first component, or a polymerizable solid suspended in said first component;

irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form.

**2. Claims Of The '342 Patent Are Invalid**

747. Claims of the '342 Patent are Invalid.

748. One or more of the claims of the '342 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

**a. Invalidity based on the '728 Patent**

749. One or more of the claims of the '342 Patent claims are invalid at least under 35 U.S.C. section 103 by the '728 Patent in view of the '330 Patent.

750. DeSimone intentionally withheld disclosure of the '728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the '728 Patent.

751. Rolland intentionally withheld disclosure of the '728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the '728 Patent.

**b. Invalidity based on Rolland '133**

752. One or more of the claims of the '342 Patent claims are invalid at least under 35 U.S.C. 103 by Rolland '133 in view of the '330 Patent.

753. DeSimone intentionally withheld disclosure of Rolland '133 from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose Rolland '133.

754. Rolland intentionally withheld disclosure of Rolland '133 from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose Rolland '133.

**3. The '342 Patent is Unenforceable For Inequitable Conduct In Its Prosecution**

755. The '342 Patent is unenforceable for inequitable conduct in its prosecution.

756. DeSimone committed inequitable conduct during prosecution of the '342 Patent.

757. Rolland committed inequitable conduct during prosecution of the '342 Patent.

758. Under 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability. Individuals associated with the filing or prosecution of a patent application are each inventor named in the application; each attorney or agent who prepares or prosecutes the application; and every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.

759. DeSimone is a named inventor on the '342 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56. DeSimone fully understands the duty of disclosure, when he spoke at Stanford University in November 2017, he explained: "When you write a patent you've got to [give a] full disclosure [of] what it is." An Evening With Joseph DeSimone.

760. DeSimone signed an oath under 37 CFR § 1.63, for the '342 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates DeSimone's Oath for the '342 Patent here as if fully set forth here.[131]

761. Rolland is a named inventor on the '342 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56.

[131] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

762. Rolland signed an oath under 37 CFR § 1.63, for the '342 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates Rolland's Oath for the '342 Patent here as if fully set forth here.[132]

**a. The Prosecution Of The '342 Patent**

763. On August 30, 2019, Murphy filed Application No. 16/556,404 as a nonprovisional continuation application of Application No. 16/204141, which issued as U.S. Patent No. 11,440,266 on September 13, 2022. The '404 Application claimed the benefit of PCT/US2015/036893 and a series of provisionals (62/133,642 (3/16/2015); 62/129,187 (3/6/2015); 62/101,671 (1/9/2015); 62/036,161 (8/12/2014); 62/015,780 (6/23/2014)). The '893 PCT was filed on June 22, 2015, claiming priority to the series of six provisionals.

764. DeSimone signed the Power of Attorney for the Applicant, Carbon, Inc as President & Chief Executive Officer. Plaintiff incorporates the Power of Attorney here as if fully set forth here.[133]

765. During prosecution of the '342 Patent, Defendant submitted twenty-two Information Disclosure Statements with over 350 references collectively. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of all 22 IDSs. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of all 22 IDSs.

**i. The '728 Patent**

766. DeSimone did not disclose the '728 Patent in any IDS submitted to the Patent Office for the '342 Patent.

767. Rolland did not disclose the '728 Patent in any IDS submitted to the Patent Office for the '342 Patent.

768. DeSimone and Rolland filed the '728 Patent as the U.S. national stage application of a PCT Application filed on August 9, 2006. DeSimone and Rolland are named inventors on the

---

[132] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[133] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

'728 Patent. Liquidia Technologies, Inc. is a co-owner of the '728 Patent. The University of North Carolina is a co-owner of the '728 Patent.

769. DeSimone has stated that he views patents as a driver of innovation and that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), because DeSimone personally engaged with the patenting process at a detailed level in his companies, DeSimone had an active role in the patenting process at Liquidia Technologies. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone would have had to approve the preparation and filing of the '728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia. DeSimone approved the preparation and filing of the '728 Patent because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in the prosecution of the '728 Patent.

770. DeSimone knew about the '728 Patent and knew what the '728 Patent disclosed.

771. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone introduced Rolland to entrepreneurship and company creation using patents, and Rolland adopted DeSimone's belief that patents play a critical role in building and growing companies and adopted DeSimone's hands-on approach to patents. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland personally engaged with the patenting process for at least patents on which he was an inventor. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland would have had to approve the preparation and filing of the '728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland approved the preparation and filing of the '728 Patent because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in the prosecution of the '728 Patent.

772. Rolland knew about the '728 Patent and knew what the '728 Patent disclosed.

773. The specification of the '342 Patent includes a reference to the '728 Patent in a listing of patents describing perfluoropolyether polymer materials that form a thin film or sheet of

material that is flexible and can be used as the semipermeable membrane of the build plate. The specification reads, in relevant part:

> In some embodiments the build plate may be formed from a thin film or sheet of material which is flexible when separated from the apparatus of the invention … Particular materials include TEFLON AF® fluoropolymers, commercially available from DuPont. Additional materials include perfluoropolyether polymers such as described in U.S. Pat. Nos. 8,268,446; 8,263,129; 8,158,728; and 7,435,495.

The ‘342 Patent, 17:17-27.

774. The duty to disclose material information under 37 C.F.R. § 1.56 is not satisfied merely by referring to a patent in a list of patents in the specification. Unless the reference is submitted to the Patent Office in the manner prescribed by 37 C.F.R. §§ 1.97 and 1.98, the reference has not been properly submitted for consideration under Rule 56. The “manner prescribed” by 37 C.F.R. §§ 1.97 and 1.98 requires a compliant information disclosure statement, including a list of the information submitted for consideration, separately listing U.S. patents and U.S. patent application publications, identifying each U.S. patent by inventor, patent number, and issue date, and otherwise satisfying the timing and content requirements of §§ 1.97 and 1.98.

775. DeSimone did not submit the ‘728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. DeSimone failed to submit the ‘728 Patent to the Patent Office for consideration under Rule 56.

776. Rolland did not submit the ‘728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. Rolland failed to submit the ‘728 Patent to the Patent Office for consideration under Rule 56.

777. The ‘728 Patent is listed in a string of patents assertedly related to perfluoropolyether polymer materials useful for constructing a build plate. The ‘728 Patent was not included in a listing of patents in the polymerizable liquids sections of the ‘342 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), inclusion of the ‘728 Patent in a list of patents disclosing materials useful for the semipermeable membrane rather than the polymerizable liquids would lead the Examiner to believe that the ‘728 Patent was not materially relevant to the polymerizable liquids.

778. The ‘728 Patent is not cumulative to Rolland ‘133 because Rolland did not copy all the ‘728 Patent dual cure chemistry disclosure into Rolland ‘133. The ‘728 Patent has additional disclosure that is not in Rolland ‘133, which includes a blocked diisocyanate that cleaves at high temperature to expose previously blocked isocyanate. Rolland ‘133 has additional disclosure that is not in the ‘728 Patent that includes disclosure related to forming a medical or surgical device and for imparting chemical functionality to a medical or surgical device.

779. DeSimone and Rolland filed a divisional application claiming priority to the ‘728 Patent. That application issued as U.S. Patent No. 8,444,899. DeSimone never submitted the ‘899 Patent for consideration by an examiner in any of the Dual Cure patents. Rolland never submitted the ‘899 Patent for consideration by an examiner in any of the Dual Cure patent.

**ii. Rolland ‘133**

780. DeSimone did not disclose Rolland ‘133 in any IDS submitted to the Patent Office for the ‘342 Patent. Rolland did not disclose Rolland ‘133 in any IDS submitted to the Patent Office for the ‘342 Patent.

781. Rolland filed Rolland ‘133 as a nonprovisional application on November 9, 2006, claiming priority to a provisional application filed on November 9, 2005. Rolland filed the nonprovisional application for Rolland ‘133 three months after the PCT Application for the ‘728 Patent was filed. Rolland is the sole named inventor on Rolland ‘133. Liquidia was the owner of Rolland ‘133.

782. DeSimone has stated that he views patents as a driver of innovation and that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), because DeSimone personally engaged with the patenting process at a detailed level in his companies, DeSimone had an active role in the patenting process at Liquidia and approved the preparation and filing of Rolland ‘133. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in the prosecution of Rolland ‘133.

783. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew about Rolland ‘133 and knew what Rolland ‘133 disclosed.

784. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone introduced

Rolland to entrepreneurship and company creation using patents, and Rolland adopted DeSimone's belief that patents play a critical role in building and growing companies and adopted DeSimone's hands-on approach to patents. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland personally engaged with the patenting process for at least patents on which he was an inventor. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland would have had to approve the preparation and filing of Rolland '133 at least because he was a named inventor and he was actively involved in the patent process at Liquidia. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland approved the preparation and filing of Rolland '133 because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for Rolland '133. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in the prosecution of Rolland '133.

785. Rolland knew about Rolland '133 and knew what Rolland '133 disclosed.

786. During prosecution of Rolland '133, the Examiner rejected claims 1–12, 28–42, 52, 53, 63, 64, and 74–81 for obviousness-type double patenting over claims 1–168 and 209–257 of co-pending Application No. 12/063,284. The '284 Application issued as the '728 Patent.

787. The Examiner stated that claims 1–12, 28–42, 52, 53, 63, 64, and 74–81 of Rolland '133 were "**anticipated by**" claims 1–168 and 209–257 of the '284 application (issued as the '728 Patent) and therefore were not patentably distinct. Non-Final Rejection mailed October 27, 2009, pages 22-23. (emphasis added).

788. Liquidia Technologies abandoned Rolland '133 by failing to respond to the office action.

789. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the Examiner had rejected claims of Rolland '133 as anticipated by the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that Rolland '133 was abandoned for failure to respond to the office action where the Examiner had rejected Rolland '133's claims as anticipated by the '728 Patent.

790. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland '133 was rejected because its claims were anticipated by the claims of the '728 Patent. On

information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland '133 was abandoned for failure to respond to an office action in which Rolland '133's claims were rejected as anticipated by claims of the '728 Patent.

791. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the non-statutory double patenting rejection was not surprising to DeSimone because DeSimone knew Rolland copied or enabled copying of the dual cure chemistry disclosure in Rolland '133 from the '728 Patent and attempted to claim it. The '728 Patent was filed by Alston & Bird LLP, which is a different firm from the firm that filed Rolland '133. Morgan Lewis & Bockius LLP filed Rolland '133. The PCT application that became the '728 Patent published on February 22, 2007. Rolland '133 was filed on November 9, 2006, over three months before the PCT application was published. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland or someone else at Liquidia at the direction of Rolland provided the disclosure that was copied to Morgan Lewis & Bockius for inclusion in Rolland '133.

792. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the non-statutory double patenting rejection was not surprising to Rolland because Rolland copied or instructed copying of the dual cure chemistry disclosure in Rolland '133 from the '728 Patent and attempted to claim it.

793. Rolland copied at least Sections II.A through II.E (spanning over 70 paragraphs and including four data tables and six reaction schemes), every example (Examples 1–35), and every figure (Figs. 1–16C) of Rolland '133 from the '728 Patent.

794. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland copied large sections of disclosure from the '728 Patent into Rolland '133 including at least Sections II.A through II.E (spanning over 70 paragraphs and including four data tables and six reaction schemes), every example (Examples 1–35), and every figure (Figs. 1–16C) of Rolland '133.

795. During prosecution of commonly owned, related Application No. 15/240,157, which issued as U.S. Patent No. 9,982,164, on May 29, 2018, the Examiner encouraged Defendant and their patent attorneys at Myers Bigel to provide "a concise explanation of why information is being submitted to the Patent Office and how it is understood to be relevant" when Defendant

filed an **"excessively lengthy Information Disclosure Statement."** Office Action mailed June 8, 2017, U.S. Patent No. 9,982,164 (emphasis added).

796. Because of the excessive length of the IDS, the Examiner explained that only a "cursory review" of the listed references was given.

797. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone through Defendant's attorneys at Myers Bigel never complied with the Examiner's request in the '164 Patent.

798. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland, through Defendant's attorneys at Myers Bigel, never complied with the Examiner's request in the '164 Patent.

799. On information and believe, DeSimone continued with the practice of submitting "excessively lengthy" IDSs through Defendant's attorney Myers Bigel in all patents in the Dual Cure patent family. DeSimone directed submission of excessively lengthy IDSs in the '342 patent. The first IDS in the '342 Patent, which submitted 266 references for consideration, is a prime example of this practice, which admittedly results in the Examiner giving no more than a cursory review of the listed references.

800. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland continued with the practice of submitting "excessively lengthy" IDSs through Defendant's attorney Myers Bigel in all patents in the Dual Cure patent family. DeSimone directed submission of excessively lengthy IDSs in the '342 patent. The first IDS in the '342 Patent, which submitted 266 references for consideration, is an example of this practice, which admittedly results in the Examiner giving no more than a cursory review of the listed references.

801. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone's intent in submitting excessively lengthy references was to ensure only a cursory review of the listed references in the Dual Cure patent family. With so many references to review, the Examiner does not have time to adequately review the submitted references or search for references that were not submitted, like the Rolland '133 or the '728 Patent.

802. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland's intent in

submitting excessively lengthy references was to ensure only a cursory review of the listed references in the Dual Cure patent family. With so many references to review, the Examiner does not have time to adequately review the submitted references or search for references that were not submitted, like the Rolland '133 or the '728 Patent.

**iii. August 30, 2019 Information Disclosure Statement**

803. On August 30, 2019, Murphy filed an IDS concurrently with the application filing, submitting 266 references – 100 U.S. patents, 66, U.S. application publications, 50 foreign patent documents, and 50 non-patent literature references. Plaintiff incorporates the August 30, 2019 Information Disclosure Statement here as if fully set forth here.[134] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the August 30 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the August 30 IDS. DeSimone did not disclose the '728 Patent in the August 30 IDS. Rolland did not disclose the '728 Patent in the August 30 IDS. DeSimone did not disclose Rolland '133 in the August 30 IDS. Rolland did not disclose Rolland '133 in the August 30 IDS.

804. In the August 30 IDS, DeSimone was inventor or author for twenty-seven references. In the August 30 IDS, Rolland was inventor or author for seven references. Plaintiff incorporates the twenty-seven DeSimone references and the seven Rolland references, including the nine references listed below, here as if fully set forth here.[135] Nine of the DeSimone references were not prior art, and seven of the Rolland references were not prior art. The nine non-prior art references that DeSimone and Rolland submitted included:

805. International application publication WO2015/200201, naming DeSimone, Rolland, and others as inventors is not prior art. WO '201 is the publication of the international application that was nationalized in the U.S. and issued as the '142 Patent, the '164 Patent, and the '868 Patent. WO '201 shares the same six provisional applications as priority applications with the '342 Patent and is therefore not prior art to the '342 Patent.

---

[134] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[135] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

806. International application publication WO2015/200189, naming DeSimone, Rolland, and others as inventors, is not prior art. WO ‘189 shares the same six provisional applications as priority applications with the ‘342 Patent and is therefore not prior art to the ‘342 Patent.

807. International application publication WO2015/200173, naming DeSimone, Rolland, and others as inventors is not prior art. WO ‘173 is the publication of the international application that was nationalized in the U.S. and issued as the ‘963 Patent and the ‘342 Patent. WO ‘173 is the same application as that issued as the ‘342 Patent and is therefore not prior art to the ‘342 Patent.

808. International application publication WO2015/200179, naming DeSimone, Rolland, and others as inventors is not prior art. WO179 is the publication of the international application that was nationalized in the U.S. and issued as the ‘606 Patent, the ‘066 Patent, the ‘880 Patent, and the ‘895 Patent. WO179 shares the same six provisional applications as priority applications with the ‘342 Patent and is therefore not prior art to the ‘342 Patent.

809. Tumbleston and its Supplementary Materials are not prior art. DeSimone and Rolland are co-authors on the article. The submitted manuscript and submitted supplementary materials for Tumbleston were included as Appendices to U.S. Provisional Application No. 62/129187, filed on March 6, 2015. The ‘342 Patent claims priority to the ‘187 PROV, and therefore, Tumbleston and its Supplementary Materials are not prior art to the ‘342 Patent.

810. International application publication WO2016/145050, naming DeSimone, Rolland, and others as inventors is not prior art for the dual cure chemistry elements of the ‘342 Patent because the priority date for the ‘050 Publication is its provisional application filing date of March 10, 2015, and the priority date for the dual cure chemistry elements of the ‘342 Patent is the provisional application filing date of January 9, 2015, which is earlier than March 10, 2015.

811. DeSimone’s TED presentation filmed on March 16, 2015, entitled “What if 3D Printing was 100x Faster?” is not prior art. The ‘342 Patent claims priority to six provisional applications filed between June 23, 2014, and March 16, 2015. Thus, the priority date for the ‘963 Patent is on or before the filming date of the TED presentation.

812. Layerless Fabrication is not prior art. DeSimone is a co-author for the article. The '342 Patent claims priority to six provisional applications filed between June 23, 2014, and March 16, 2015. Thus, the priority date for the '342 Patent is before the publication date of Layerless Fabrication of September 2016, and the article is not prior art.

813. U.S. Patent No. 9,453,142, naming DeSimone, Rolland, and others as inventors is not prior art. The '142 Patent shares the same six provisional applications as priority applications with the '342 Patent and is therefore not prior art to the '342 Patent.

814. In the August 30 IDS, Murphy submitted U.S. Application Publication No. 2009/0061152, naming DeSimone, Rolland, and others as inventors. The '152 Publication, issued as U.S. Patent No. 8.420.124, is entitled "Methods for fabricating isolated micro- and nano-structures using soft or imprint lithography," and is owned by the University of North Carolina.

815. The '152 Publication discloses the use of fluorinated elastomer-based materials, in particular perfluoropolyether (PFPE)-based materials, in high-resolution soft or imprint lithographic applications, such as micro- and nanoscale replica molding. It discloses a method for producing free-standing, isolated nanostructures of any shape using soft or imprint lithography technique. Perfluoropolyether chemistry was important underlying chemistry in the founding of Liquidia Technologies.

816. While the '152 Publication discloses perfluoropolyethers, it does not disclose dual cure chemistry applications in the context of perfluoropolyethers like Rolland '133 or the '728 Patent. Rolland '133 uses the term "dual cure" 45 times. The '728 Patent uses the term "dual cure" 48 times. The '152 Publication has no instances of the term "dual cure."

817. DeSimone knew about the Rolland '133 and the '728 Patent and knew what was disclosed in those references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone directed Murphy to submit the '152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone intentionally chose to submit to the Patent Office a patent publication that had no disclosure about dual cure chemistry while failing to disclose patent documents that extensively disclosed dual cure

chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed the ‘152 Publication while intentionally withholding Rolland ‘133 and the ‘728 Patent from the Patent Office.

818. Rolland knew about the Rolland ‘133 and the ‘728 Patent and knew what was disclosed in those references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland directed Murphy to submit the ‘152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland intentionally chose to submit to the Patent Office a patent publication that had no disclosure about dual cure chemistry while failing to disclose patent documents that extensively disclosed dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed the ‘152 Publication while intentionally withholding Rolland ‘133 and the ‘728 Patent from the Patent Office.

819. Murphy also submitted US2015/0097316 with the August 30 IDS. The ‘316 Publication is the Application Publication of Application No. 14/570,591, which issued as U.S. Patent No. 9,216,546. Defendant owns the ‘316 Publication. DeSimone and other founders of Defendant are named inventors on the ‘316 Publication. The ‘316 Publication shares priority with the ‘601 Patent and the ‘181 Patent, both of which are in the CLIP family of the Asserted Patents. Unlike Rolland ‘133 and the ‘728 Patent, the ‘316 Publication does not have any disclosure of dual cure chemistry.

820. DeSimone was a named inventor on the ‘316 Publication, and DeSimone knew that the ‘316 Publication failed to disclose anything about dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed patent references on which he was an inventor but did not disclose dual cure chemistry and intentionally withheld the ‘728 Patent, for which DeSimone was also a named inventor, and which DeSimone knew disclosed dual cure chemistry.

821. Murphy also submitted US2015/0072293 with the August 30 IDS. The ‘293 Publication is the Application Publication of Application No. 14/456,270, which issued as US

Patent No. 9,360,757. Defendant owns the ‘293 Publication. DeSimone and other founders of Defendant are named inventors on the ‘293 Publication. The ‘293 Publication is the great, great grandparent application to the ‘073 Patent and the great grandparent to the ‘938 Patent, both of which are in the CLIP family of the Asserted Patents. Unlike Rolland ‘133 and the ‘728 Patent, the ‘293 Publication does not have any disclosure of dual cure chemistry.

822. DeSimone was a named inventor on the ‘293 Publication, and DeSimone knew that the ‘293 Publication failed to disclose anything about dual cure chemistry. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed patent references on which he was an inventor but did not disclose dual cure chemistry and intentionally withheld the ‘728 Patent, for which DeSimone was also a named inventor, and which DeSimone knew disclosed dual cure chemistry.

**iv. September 24, 2019 Information Disclosure Statement**

823. On September 24, 2019, Murphy filed an Information Disclosure Statement, submitting fourteen references. Plaintiff incorporates the September 24, 2019 Information Disclosure Statement here as if fully set forth here.[136] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the September 24 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the September 24 IDS. DeSimone did not disclose the ‘728 Patent in the September 24 IDS. Rolland did not disclose the ‘728 Patent in the September 24 IDS. DeSimone did not disclose Rolland ‘133 in the September 24 IDS. Rolland did not disclose Rolland ‘133 in the September 24 IDS.

824. On September 24, 2019, Murphy also filed IDSs in the parent application (Application No. 16/204,141) and the grandparent application (Application No. 16/133,890) to the ‘342 Patent. Plaintiff incorporates the September 24, 2019 Information Disclosure Statement from the ‘141 Application and the September 24, 2019 Information Disclosure Statement from the ‘890 Application here as if fully set forth here.[137]

---

[136] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[137] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

825. Murphy submitted, in the September 24 IDSs filed in the ‘141 Application and the ‘890 Application, Rolland ‘133, U.S. Application Publication No. 20090047634, the April 30, 2019 Office Action from the ‘550 Application in which the Examiner rejected claims as anticipated by Rolland ‘133, and the August 21, 2019 Office Action from the ‘550 Application in which the Examiner rejected claims as obvious over Rolland ‘133 in view of the ‘634 Publication. Plaintiff incorporates U.S. Application Publication No. 20090047634, the April 30, 2019 Office Action from the ‘550 Application, and the August 21, 2019 Office Action from the ‘550 Application here as if fully set forth here.[138]

826. Murphy submitted, in the September 24 IDS filed in the ‘342 Patent, the ‘634 Publication, the April 30, 2019 Office Action from the ‘550 Application, and the August 21, 2019 Office Action from the ‘550 Application.

827. Murphy did not submit Rolland ‘133 in the September 24 IDS in the ‘342 Patent. Defendant never submitted Rolland ‘133 in the ‘342 Patent.

828. Murphy and Defendant submitted three IDSs in three co-pending, related applications on the same day - September 24, 2019. Murphy and Defendant submitted Rolland ‘133, the ‘634 Publication, and two office actions from the ‘550 Application in two of those applications but not in the third application. Murphy and Defendant did not submit Rolland ‘133 in the ‘342 Patent. They submitted only the ‘634 Publication and the two office actions.

829. On the same day, the same attorney (Murphy), acting for the same client (Defendant), was actively reviewing information disclosure statements and submitting Rolland '133 to the Patent Office in two applications that were related to the ‘342 Patent but failing to submit the reference in the application that issued as the ‘342 Patent.

830. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Murphy chose not to include Rolland ‘133 in the information disclosure statement for the ‘342 Patent, the patent in which Claim 1 is essentially identical to the claim that was rejected as anticipated by Rolland '133.

831. On information and belief, Fed. R. Civ. Proc. 11(b)(3), an attorney does not forget

[138] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

a reference that is simultaneously being submitted in two other related applications on the same day.

832. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone intentionally chose not to submit Rolland ‘133 in the September 24 IDS for the ‘342 Patent because claim 28 of the ‘550 Application and claim 1 of the ‘342 Patent are essentially identical.

833. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland intentionally chose not to submit Rolland ‘133 in the September 24 IDS for the ‘342 Patent because claim 28 of the ‘550 Application and claim 1 of the ‘342 Patent are essentially identical.

834. Murphy submitted an IDS with 266 references in the ‘342 Patent on August 30, 2019. In the August 30 IDS, among the 266 references, Murphy submitted nine office actions from co-pending U.S. applications and ten international search reports from co-pending PCT applications. Less than a month later, Murphy submitted the September 24 IDS in the ‘342 Patent, which did not include Rolland ‘133, but did include eight office actions from Defendant’s co-pending applications – two of the eight were from the ‘550 Application.

835. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone intentionally directed Defendant’s attorneys to submit excessively lengthy information disclosure statements in Defendant’s pending applications, including the ‘342 Patent, to bury the Examiners in references, making it difficult to provide anything more than a cursory review of the submitted references. DeSimone continued to submit excessively lengthy IDSs even after the Examiner in the ‘164 Patent admonished Defendant for this practice.

836. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the Examiner in the ‘342 Patent would not have time to sufficiently review the office actions in the ‘550 Application to notice and appreciate that Rolland ‘133 (a reference that was never submitted in an IDS) had been used to reject claims matching the claims in the ‘342 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the Examiner in the ‘342 Patent trusted that Defendant would respect the duty to disclose material references to the Patent Office and would therefore submit any references used to reject claims matching claims of the ‘342 Patent in an IDS rather than expecting the Examiner to sift through office actions to find material references themselves.

837. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland intentionally directed Defendant's attorneys to submit excessively lengthy information disclosure statements in Defendant's pending applications, including the '342 Patent, to bury the Examiners in references, making it difficult to provide anything more than a cursory review of the submitted references. Rolland continued to submit excessively lengthy IDSs even after the Examiner in the '164 Patent admonished Defendant for this practice.

838. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the Examiner in the '342 Patent would not have time to sufficiently review the office actions in the '550 Application to notice and appreciate that Rolland '133 (a reference that was never submitted in an IDS) had been used to reject claims matching the claims in the '342 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the Examiner in the '342 Patent trusted that Defendant would respect the duty to disclose material references to the Patent Office and would therefore submit any references used to reject claims matching claims of the '342 Patent in an IDS rather than expecting the Examiner to sift through office actions to find material references themselves.

**v. January 6, 2020 Information Disclosure Statement**

839. On January 6, 2020, Murphy filed a preliminary amendment with an Information Disclosure Statement. Plaintiff incorporates the January 6, 2020 Information Disclosure Statement and Preliminary Amendment here as if fully set forth here.[139] The preliminary amendment added four new claims to the application. The IDS submitted fourteen references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 6 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 6 IDS. DeSimone did not disclose the '728 Patent in the January 6 IDS. Rolland did not disclose the '728 Patent in the January 6 IDS. DeSimone did not disclose Rolland '133 in the January 6 IDS. Rolland did not disclose Rolland '133 in the January 6 IDS.

[139] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**vi. February 4, 2020 Information Disclosure Statement**

840. On February 4, 2020, Murphy filed an Information Disclosure Statement, submitting 5 references. Plaintiff incorporates the February 4, 2020 Information Disclosure Statement here as if fully set forth here.[140] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 4 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 4 IDS. DeSimone did not disclose the '728 Patent in the February 4 IDS. Rolland did not disclose the '728 Patent in the February 4 IDS. DeSimone did not disclose Rolland '133 in the February 4 IDS. Rolland did not disclose Rolland '133 in the February 4 IDS.

**vii. June 24, 2020 Information Disclosure Statement**

841. On June 24, 2020, Murphy filed an Information Disclosure Statement submitting 23 references. Plaintiff incorporates the June 24, 2020 Information Disclosure Statement here as if fully set forth here.[141] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the June 24 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the June 24 IDS. DeSimone did not disclose the '728 Patent in the February 4 IDS. Rolland did not disclose the '728 Patent in the June 24 IDS. DeSimone did not disclose Rolland '133 in the June 24 IDS. Rolland did not disclose Rolland '133 in the June 24 IDS.

842. In the June 24 IDS, Murphy submitted U.S. Patent No. 9,676,963, assigned to Carbon, Inc. and one of the Asserted Patents. DeSimone and Rolland are named inventors on the '963 Patent. The '342 Patent claims priority to the '963 Patent through a line of continuing applications, so the '963 Patent is not prior art to the '342 Patent.

843. In the June 24 IDS, Murphy submitted U.S. Patent No. 10,350,823, assigned to Carbon, Inc. Rolland and Julia Cushen are co-inventors on the '823 Patent. The title of the '823 Patent is "Dual Precursor Resin Systems For Additive Manufacturing With Dual Cure Resins."

---

[140] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[141] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

With the ‘823 Patent, Rolland submitted a reference that was material but not prior art. The earliest priority date for the ‘823 Patent is December 20, 2016, so the ‘823 Patent is not prior art to the ‘342 Patent, which has a priority date for the dual cure chemistry of January 9, 2015. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed references that were material but were not prior art to give the illusion of complying with the duty to disclose.

844. In the June 24 IDS, Murphy submitted U.S. Patent No. 10,500,786, assigned to Carbon, Inc. Plaintiff incorporates the ‘786 Patent here as if fully set forth here.[142] Rolland was the sole named inventor on the ‘786 Patent. The title of the ‘786 Patent is “Dual Cure Resins Containing Microwave Absorbing Materials And Methods Of Using The Same.” With the ‘786 Patent, Rolland submitted a reference that was material but not prior art. The earliest priority date for the ‘786 Patent is June 22, 2016, so the ‘786 Patent is not prior art to the ‘342 Patent, which has a priority date for the dual cure chemistry of January 9, 2015. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed references that were material but were not prior art to give the illusion of complying with the duty to disclose.

**viii. July 20, 2020 Information Disclosure Statement**

845. On July 20, 2020, Murphy filed an Information Disclosure Statement, submitting 1 reference. Plaintiff incorporates the July 20, 2020 Information Disclosure Statement here as if fully set forth here.[143] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the July 20 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the July 20 IDS. DeSimone did not disclose the ‘728 Patent in the July 20 IDS. Rolland did not disclose the ‘728 Patent in the July 20 IDS. DeSimone did not disclose Rolland ‘133 in the July 20 IDS. Rolland did not disclose Rolland ‘133 in the July 20 IDS.

**ix. October 22, 2020 Information Disclosure Statement**

846. On October 22, 2020, Murphy filed an Information Disclosure Statement, submitting 1 reference. Plaintiff incorporates the October 22, 2020 Information Disclosure

[142] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[143] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Statement here as if fully set forth here.[144] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the October 22 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the October 22 IDS. DeSimone did not disclose the '728 Patent in the October 22 IDS. Rolland did not disclose the '728 Patent in the October 22 IDS. DeSimone did not disclose Rolland '133 in the October 22 IDS. Rolland did not disclose Rolland '133 in the October 22 IDS.

**x. November 24, 2020 Information Disclosure Statement**

847. On November 24, 2020, Murphy filed an Information Disclosure Statement, submitting 1 reference. Plaintiff incorporates the November 24, 2020 Information Disclosure Statement here as if fully set forth here.[145] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the November 24 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the November 24 IDS. DeSimone did not disclose the '728 Patent in the November 24 IDS. Rolland did not disclose the '728 Patent in the November 24 IDS. DeSimone did not disclose Rolland '133 in the November 24 IDS. Rolland did not disclose Rolland '133 in the November 24 IDS.

**xi. January 13, 2021 Information Disclosure Statement**

848. On January 13, 2021, Murphy filed an Information Disclosure Statement, submitting 3 references. Plaintiff incorporates the January 13, 2021 Information Disclosure Statement here as if fully set forth here.[146] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 13 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 13 IDS. DeSimone did not disclose the '728 Patent in the January 13 IDS. Rolland did not disclose the '728 Patent in the January 13 IDS. DeSimone did

[144] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[145] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[146] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

not disclose Rolland '133 in the January 13 IDS. Rolland did not disclose Rolland '133 in the January 13 IDS.

849. In the January 13 IDS, Murphy submitted U.S. Patent No. 10,155,882, which is assigned to Carbon, Inc. and includes DeSimone and Rolland as named inventors. Plaintiff incorporates the '882 Patent as if fully set forth here.[147] The '342 Patent claims priority to the '882 Patent through a line of continuing applications. Thus, the '882 Patent is not prior art to the '342 Patent.

**xii. February 1, 2021 Information Disclosure Statement**

850. On February 1, 2021, Murphy filed an Information Disclosure Statement, submitting 1 reference. Plaintiff incorporates the February 1, 2021 Information Disclosure Statement here as if fully set forth here.[148] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 1 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 1 IDS. DeSimone did not disclose the '728 Patent in the February 1 IDS. Rolland did not disclose the '728 Patent in the February 1 IDS. DeSimone did not disclose Rolland '133 in the February 1 IDS. Rolland did not disclose Rolland '133 in the February 1 IDS.

**xiii. February 26, 2021 Information Disclosure Statement**

851. On February 26, 2021, Murphy filed an Information Disclosure Statement, submitting 2 references. Plaintiff incorporates the February 26, 2021 Information Disclosure Statement here as if fully set forth here.[149] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 26 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 26 IDS. DeSimone did not disclose the '728 Patent in the February 26 IDS. Rolland did not disclose the '728 Patent in the February 26 IDS. DeSimone did

[147] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[148] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[149] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

not disclose Rolland ‘133 in the February 26 IDS. Rolland did not disclose Rolland ‘133 in the February 26 IDS.

**xiv. March 26, 2021 Information Disclosure Statement**

852. On March 26, 2021, Murphy filed an Information Disclosure Statement, submitting 1 reference. Plaintiff incorporates the March 26, 2021 Information Disclosure Statement here as if fully set forth here.[150] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the March 26 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the March 26 IDS. DeSimone did not disclose the ‘728 Patent in the March 26 IDS. Rolland did not disclose the ‘728 Patent in the March 26 IDS. DeSimone did not disclose Rolland ‘133 in the March 26 IDS. Rolland did not disclose Rolland ‘133 in the March 26 IDS.

**xv. April 28, 2021 Office Action**

853. On April 28, 2021, the Examiner mailed a non-final office action rejecting claims 1–23 for non-statutory obviousness-type double patenting over claims of U.S. Pat. Nos. 9,676,963 and 10,968,307. Plaintiff incorporates the April 28, 2021 Office Action here as if fully set forth here.[151]

**xvi. May 5, 2021 Information Disclosure Statement**

854. On May 5, 2021, Murphy submitted an Information Disclosure Statement, submitting 9 references. Plaintiff incorporates the May 5, 2021 Information Disclosure Statement here as if fully set forth here.[152] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the May 5 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the May 5 IDS. DeSimone did not disclose the ‘728 Patent in the May 5 IDS. Rolland did not disclose the ‘728 Patent in the May 5 IDS. DeSimone did not disclose Rolland ‘133 in the May 5 IDS. Rolland did not disclose Rolland ‘133 in the May 5 IDS.

[150] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[151] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[152] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**xvii. June 16, 2021 Information Disclosure Statement**

855. On June 16, 2021, Murphy submitted an Information Disclosure Statement, submitting 2 references. Plaintiff incorporates the June 16, 2021 Information Disclosure Statement here as if fully set forth here.[153] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the June 16 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the June 16 IDS. DeSimone did not disclose the '728 Patent in the June 16 IDS. Rolland did not disclose the '728 Patent in the June 16 IDS. DeSimone did not disclose Rolland '133 in the June 16 IDS. Rolland did not disclose Rolland '133 in the June 16 IDS.

**xviii. July 27, 2021 Amendment and Response**

856. On July 27, 2021, Murphy filed a Response and Amendment to the office action mailed on April 28, 2021. Plaintiff incorporates the July 27, 2021 Amendment and Response here as if fully set forth here. Murphy amended claim 7 to correct an antecedent basis problem and filed an electronic terminal disclaimer on behalf of owner Carbon, Inc. over claims of U.S. Patent Nos. 9,676,963 and 10,968,307 to overcome the obviousness-type double patenting rejection.

**xix. September 10, 2021 Information Disclosure Statement**

857. On September 10, 2021, Murphy submitted an Information Disclosure Statement, submitting 4 references. Plaintiff incorporates the September 10, 2021 Information Disclosure Statement here as if fully set forth here.[154] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the September 10 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the September 10 IDS. DeSimone did not disclose the '728 Patent in the September 10 IDS. Rolland did not disclose the '728 Patent in the September 10 IDS. DeSimone did not disclose Rolland '133 in the September 10 IDS. Rolland did not disclose Rolland '133 in the September 10 IDS.

858. In the September 10 IDS, Murphy submitted U.S. Patent Nos. 10,647,879 and

[153] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[154] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

10,899,868, which are assigned to Carbon, Inc. and include DeSimone and Rolland as named inventors. Plaintiff incorporates the ‘879 Patent and the ‘868 Patent here as if fully set forth here.[155] The ‘879 Patent and the ‘868 Patent claim priority to the same six provisional applications as the ‘342 Patent. Thus, the ‘879 Patent and the ‘868 Patent are not prior art to the ‘342 Patent.

**xx. September 23, 2021 Information Disclosure Statement**

859. On September 23, 2021, Murphy submitted an Information Disclosure Statement, submitting 3 references. Plaintiff incorporates the September 23, 2021 Information Disclosure Statement here as if fully set forth here.[156] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the September 23 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the September 23 IDS. DeSimone did not disclose the ‘728 Patent in the September 23 IDS. Rolland did not disclose the ‘728 Patent in the September 23 IDS. DeSimone did not disclose Rolland ‘133 in the September 23 IDS. Rolland did not disclose Rolland ‘133 in the September 23 IDS.

860. In the September 23 IDS, Murphy submitted U.S. Patent No. 10,155,345, assigned to Carbon, Inc. The ‘345 Patent includes a paragraph describing “dual cure” polymerizable liquids. With the ‘345 Patent, Rolland submitted a reference that was material but not prior art. The earliest priority date for the ‘345 Patent is February 5, 2015, so the ‘345 Patent is not prior art to the ‘342 Patent, which has a priority date for the dual cure chemistry disclosure of January 9, 2015. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed references that were material but were not prior art to give the illusion of complying with the duty to disclose.

**xxi. October 12, 2021 Information Disclosure Statement**

861. On October 12, 2021, Murphy submitted an Information Disclosure Statement, submitting 1 reference. Plaintiff incorporates the October 12, 2021 Information Disclosure

---

[155] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[156] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

Statement here as if fully set forth here.[157] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the October 12 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the October 12 IDS. DeSimone did not disclose the '728 Patent in the October 12 IDS. Rolland did not disclose the '728 Patent in the October 12 IDS. DeSimone did not disclose Rolland '133 in the October 12 IDS. Rolland did not disclose Rolland '133 in the October 12 IDS.

**xxii. October 26, 2021 Office Action**

862. On October 26, 2021, the Examiner mailed a non-final office action rejecting claims 1–23 for non-statutory double patenting over the claims of eight patents: U.S. Patent Nos. 10,647,879; 10,899,868; 10,792,855; 10,155,345; 10,538,031; 10,500,786; 10,343,331; 10,647,054. Plaintiff incorporates the October 26, 2021 Office Action here as if fully set forth here.[158]

**xxiii. November 2, 2021 Information Disclosure Statement**

863. On November 2, 2021, Murphy submitted an Information Disclosure Statement, submitting one reference.[159] Plaintiff incorporates the November 2, 2021 Information Disclosure Statement here as if fully set forth here. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the November 2 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the November 2 IDS. DeSimone did not disclose the '728 Patent in the November 2 IDS. Rolland did not disclose the '728 Patent in the November 2 IDS. DeSimone did not disclose Rolland '133 in the November 2 IDS. Rolland did not disclose Rolland '133 in the November 2 IDS.

**xxiv. December 16, 2021 Information Disclosure Statement**

864. On December 16, 2021, Murphy submitted an Information Disclosure Statement,

[157] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[158] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[159] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

submitting 1 reference. Plaintiff incorporates the December 16, 2021 Information Disclosure Statement here as if fully set forth here. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the December 16 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the December 16 IDS. DeSimone did not disclose the '728 Patent in the December 16 IDS. Rolland did not disclose the '728 Patent in the December 16 IDS. DeSimone did not disclose Rolland '133 in the December 16 IDS. Rolland did not disclose Rolland '133 in the December 16 IDS.

**xxv. December 23, 2021 Information Disclosure Statement**

865. On December 23, 2021, Murphy submitted an Information Disclosure Statement, submitting 1 reference. Plaintiff incorporates the December 23, 2021 Information Disclosure Statement here as if fully set forth here.[160] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the December 23 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the December 23 IDS. DeSimone did not disclose the '728 Patent in the December 23 IDS. Rolland did not disclose the '728 Patent in the December 23 IDS. DeSimone did not disclose Rolland '133 in the December 23 IDS. Rolland did not disclose Rolland '133 in the December 23 IDS.

**xxvi. January 12, 2022 Information Disclosure Statement**

866. On January 12, 2022, Murphy submitted an Information Disclosure Statement, submitting 1 reference. Plaintiff incorporates the January 12, 2022 Information Disclosure Statement here as if fully set forth here. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 12 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 12 IDS. DeSimone did not disclose the '728 Patent in the January 12 IDS. Rolland did not disclose the '728 Patent in the January 12 IDS. DeSimone did

[160] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

not disclose Rolland '133 in the January 12 IDS. Rolland did not disclose Rolland '133 in the January 12 IDS.

**xxvii. January 25, 2022 Response**

867. On January 25, 2022, Murphy filed a response to the office action mailed October 26, 2021. Plaintiff incorporates the January 25, 2022 Response here as if fully set forth here.[161] Murphy filed electronic terminal disclaimers on behalf of Defendant against claims of all eight patents - U.S. Patent Nos. 10,647,879; 10,899,868; 10,792,855; 10,155,345; 10,538,031; 10,500,786; 10,343,331; and 10,647,054.

**xxviii. February 15, 2022 Notice of Allowance**

868. On February 15, 2022, the Examiner mailed a Notice of Allowance allowing claims 1-23. Plaintiff incorporates the February 15, 2022 Notice of Allowance here as if fully set forth here.[162] The Examiner did not provide a Statement of Reasons For Allowance.

869. On March 18, 2022, the Examiner mailed a supplemental Notice of Allowance allowing the same claims but making an Examiner's Amendment to update the cross-reference paragraph with issued patent numbers. Plaintiff incorporates the March 18, 2022 supplemental Notice of Allowance here as if fully set forth here.[163]

870. On June 14, 2022, U.S. Patent No. 11,358,342 issued.

871. Claim 1 of the '342 Patent recites, in part, a method of forming a three-dimensional object, comprising: filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component, wherein said second component comprises the precursors to a polyurethane, polyurea, or copolymer thereof, and wherein said second component comprises a polymerizable liquid suspended in said first component, or a polymerizable solid suspended in said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional

[161] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[162] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[163] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component.

872. Rolland '133 discloses a polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component, wherein said second component comprises the precursors to a polyurethane, polyurea, or copolymer thereof, and wherein said second component comprises a polymerizable liquid suspended in said first component, or a polymerizable solid suspended in said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component.

873. DeSimone did not disclose Rolland '133 to the Patent Office during prosecution of the '342 Patent.

874. Rolland did not disclose Rolland '133 to the Patent Office during prosecution of the '342 Patent.

875. The '728 Patent discloses a polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different

from said first component, wherein said second component comprises the precursors to a polyurethane, polyurea, or copolymer thereof, and wherein said second component comprises a polymerizable liquid suspended in said first component, or a polymerizable solid suspended in said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component.

876. DeSimone did not disclose the ‘728 Patent to the Patent Office during prosecution of the ‘342 Patent.

877. Rolland did not disclose the ‘728 Patent to the Patent Office during prosecution of the ‘342 Patent.

878. Between August 30, 2019, when Defendant filed the application that issued as the ‘342 Patent, and June 14, 2022, when the ‘342 Patent issued, Defendant submitted, through its attorneys at Myers Bigel P.A., over 350 references to the Patent Office for consideration.

879. Even though Defendant submitted over 350 references, and DeSimone was the inventor or author of some of the 350 references, and Defendant submitted references that were not prior art, DeSimone never submitted the ‘728 Patent, which DeSimone knew about, knew was but-for material, and knew was prior art, during prosecution of the ‘342 Patent. DeSimone never submitted Rolland ‘133, which DeSimone knew about, knew was but-for material, and knew was prior art, during prosecution of the ‘342 Patent.

880. Even though Defendant submitted over 350 references, and Rolland was the inventor or author of some of the 350 references, and Defendant submitted references that were not prior art, Rolland never submitted the ‘728 Patent, which Rolland knew about, knew was but-

for material, and knew was prior art, during prosecution of the '342 Patent. Rolland never submitted Rolland '133, which Rolland knew about, knew was but-for material, and knew was prior art, during prosecution of the '342 Patent.

**b. DeSimone's Inequitable Conduct With Respect To The '728 Patent**

881. DeSimone knew about the '728 Patent because he co-founded Liquidia Technologies and was an officer at Liquidia Technologies when the '728 Patent was prepared and prosecuted. Additionally, DeSimone is a named inventor on the '728 Patent. DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the application issued as the '728 Patent and therefore knew what the '728 Patent disclosed.

882. DeSimone knew that the '728 Patent was prior art to the '342 Patent.

883. DeSimone recognized the materiality of the '728 Patent to the claims of the '342 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

884. DeSimone recognized the materiality of the '728 Patent to the claims of the '342 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the '728 Patent and actively involved in preparation and prosecution of the '342 Patent, and DeSimone is a named inventor on the '342 Patent so he knew what is described in the specification and he knew what was being claimed in the '342 Patent.

885. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the '728 Patent was material to the patentability of at least one claim of the '342 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent.

886. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the '728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the '728 Patent unless he told them about it. On information and belief, Fed. R.

Civ. Proc. 11(b)(3), DeSimone never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

887. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the ‘728 Patent was material to the patentability of at least one claim of the ‘342 Patent and he directed, reviewed, and supervised the submission of over 350 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

888. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 350 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

889. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the ‘728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the ‘342 Patent.

**c. Rolland’s Inequitable Conduct With Respect To The ‘728 Patent**

890. Rolland knew what the ‘728 Patent disclosed because he was a named inventor.

891. Rolland knew that the ‘728 Patent was prior art to the ‘342 Patent.

892. Rolland recognized that the ‘728 Patent was material to patentability for at least one claim of the ‘342 Patent because he is a named inventor on the ‘728 Patent and the ‘342 Patent so he knew and understood what was disclosed in the ‘728 Patent and what was claimed in the ‘342 Patent.

893. Rolland recognized that the ‘728 Patent was material to the patentability of at least one claim of the ‘342 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art but withheld the ‘728 Patent.

894. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the ‘728

Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the '728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed the '728 Patent to the attorneys at Myers Bigel.

895. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '342 Patent and he directed, reviewed, and supervised the submission of over 350 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

896. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 350 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the '728 Patent.

897. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '342 Patent.

**d. The '728 Patent Is But-For Material To The '342 Patent**

898. The '728 Patent, in Example 34, discloses a dual-cure resin composition comprising a UV-curable component blended with a thermally curable component. Upon UV irradiation, the UV-curable component in the resin composition cures to form a solidified network, while the thermally curable component remains "entangled but unreacted" in that network. Upon subsequent heating, the thermally curable component cures within the partially cured network, thereby forming a three-dimensional object.

899. The Examiner in the '550 Application, who is presumed to be reasonable, rejected claim 28 of the '550 Application as anticipated by disclosure copied from the '728 Patent. Claim

28 is nearly identical to claim 1 of the '342 Patent.

900. The '550 Application shares priority, inventors, specification, and Applicant with the '342 Patent.

901. The table below shows that claim 28 of the '550 Application is nearly identical to claim 1 of the '342 Patent. The differences between the claims do not alter the substance of the claimed methods. The difference in the '550 Application claim merely identifies a dental-device field of use, and the '342 Patent claim includes a wherein clause describing the polymer structure of the three-dimensional object. The dental-device language does not alter the substance of the claimed method, and the '728 Patent discloses the subject matter of the "wherein" clause. The Examiner rejected Claim 28 of the '550 Application as anticipated by subject matter copied from the '728 Patent.

| **U.S. APP 15/963,550, CLAIM 28 COMPARED TO THE '342 PATENT, CLAIM 1** | |
|---|---|
| **U.S. App 15/963,550** | **U.S. 11,358,342** |
| **28**. A method of forming a three-dimensional object, wherein said three-dimensional object is a dental mold, dental implant or dental aligner, comprising: | **1.** A method of forming a three-dimensional object, comprising: |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween | (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and | (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and |
| (ii) a second solidifiable component that is different from said first component | (ii) a second solidifiable component that is different from said first component; |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and | (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and |
| also advancing said carrier away from said build surface to form a three-dimensional | also advancing said carrier away from said build surface to form a three-dimensional |

| | |
|---|---|
| intermediate having a shape of said dental mold, dental implant or dental aligner | intermediate having the same shape as, or a shape to be imparted to, |
| said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, second solidifiable component in said three-dimensional intermediate to form said dental mold, dental implant or dental aligner. | (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component. |

902. The comparison of U.S. App 15/963,550, Claim 28 to the '342 Patent, Claim 1 shows that the claims are nearly identical. In the table, common language is underlined. The '728 Patent discloses the language common to claim 28 of the '550 Application and claim 1 of the '342 Patent. In the final limitations, a "dental mold, dental implant or dental aligner" in the '550 Application is a "three-dimensional object" in the '342 Patent. The '728 Patent discloses a method of making a three-dimensional object. 123:32-33. The elements of the wherein clause in the '342 Patent claim are disclosed in Example 34 of the '728 Patent. In Example 34 of the '728 Patent, after the dual-cure resin composition (an example of a polymer blend) has been exposed to UV irradiation, the UV-curable component in the resin composition cures to form a solidified network, while the thermally curable component remains "entangled but unreacted" in that network. The solidified network with the thermally curable component entangled but unreacted in the network is a three-dimensional object comprising a semi-interpenetrating polymer network. Because the curing is done sequentially (UV cure first, thermal cure second), the three-dimensional object also is a sequential interpenetrating polymer network.

903. The '728 Patent is but-for material to the patentability of at least Claim 1 of the '342 Patent because claim 1 of the '342 Patent is nearly identical to a claim that the Examiner,

who is presumed to be reasonable, rejected as anticipated by disclosure copied from the '728 Patent.

904. Applying the broadest reasonable interpretation and a preponderance-of-the-evidence standard, the Patent Office would not have allowed at least Claim 1 had it been aware of the '728 Patent in combination with the '330 Patent. The Examiner in the '963 Patent (great-great grandparent application to the '342 Patent) rejected claim 1 as obvious over the '330 Patent in combination with another reference. The Examiner in the '963 Patent cited the '330 Patent for disclosing the apparatus elements of claim 1, which match the apparatus elements of claim 1 of the '342 Patent. The '728 Patent discloses every element of the polymerizable liquid in claim 1 of the '342 Patent.

905. As shown in the claim chart below, the '728 Patent combined with the '330 Patent discloses every limitation of Claim 1 of the '342 Patent. Defendant did not dispute the Examiner's characterization of the '330 Patent during prosecution of the '963 Patent.

| **U.S. PATENT NO. 11,358,342, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT** | |
|---|---|
| **U.S. PATENT NO. 11,358,342** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| A method of forming a three-dimensional object, comprising: | The '728 Patent discloses "A method of forming a three-dimensional object"<br><br>'728 Patent, 1:30-33. |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween; | The '330 Patent discloses "providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween"<br><br>The '330 Patent discloses a build platform 74 as a carrier and a solidification substrate 79a with an elastomeric translucent layer 80a as an optically transparent member having a build surface, and the build region between the carrier and the build surface. |

| U.S. PATENT NO. 11,358,342, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 11,358,342** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| | '330 Patent, Figs. 2A & 2B, 3, 12:46-56, 10:48-11:55. |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; | The '728 Patent discloses "filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component;"<br><br>The '728 Patent discloses filling a master template that serves as a build region with a polymerizable liquid mixture comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component that is different from the first component.<br><br>'728 Patent, 143:49-65. |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | The '728 Patent discloses "irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form;"<br><br>The '728 Patent disclose UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix |

| U.S. PATENT NO. 11,358,342, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 11,358,342** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| | (solid polymer scaffold). The chain-extended PFPE diisocyanate and PFPE tetrol (the thermal curing second component) are physically entangled in an uncured state in the rubbery photocured matrix.<br><br>'728 Patent, 143:49 - 144:28.<br><br>The '330 Patent discloses projecting solidification energy through the transparent solidification substrate 79a to polymerize the solidifiable material 92 to form a three-dimensional object 78 and moving the build platform 74 upward away from the solidification substrate 79a to allow the object 78 being formed to continue to grow according to the pattern being projected to the build region.<br><br>'330 Patent,13:64 - 14:20. |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, | The '728 Patent discloses "subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object."<br><br>The '728 Patent discloses heating the thermally curable material physically entangled in the stacked layers of photocured matrix material to form the three-dimensional microfluidic device.<br><br>'728 Patent, 143:65 – 144:29. |
| wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed | The '728 Patent discloses "wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating |

| U.S. PATENT NO. 11,358,342, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 11,358,342** | **THE '728 PATENT IN VIEW OF THE '330 PATENT** |
| from said first component and said second component. | polymer network formed from said first component and said second component."<br><br>The '728 Patent discloses a polymer blend, an interpenetrating polymer network, a semi-interpenetrating polymer network, and a sequential interpenetrating polymer network formed from said first component and said second component.<br><br>'728 Patent, 143:42 – 144:35. |

906. The claim chart comparing Claim 1 of the '342 Patent to disclosure in the '330 Patent and the '728 Patent shows that the '330 Patent discloses every apparatus element of claim 1 and that the '728 Patent discloses every element of the polymerizable liquid. Together, the '728 Patent and the '330 Patent disclose every element of claim 1 of the '342 Patent. The '728 Patent and the '330 Patent are but-for material to at least claim 1 of the '342 Patent.

907. In the May 17, 2016 office action in the '963 Patent (great-great grandparent to the '342 Patent), the Examiner, who is presumed to be reasonable, concluded that the '330 Patent discloses every apparatus element of claim 1 of the '963 Patent. Defendant never argued against or contradicted the Examiner's conclusion related to the '330 Patent. Defendant did not amend the claims to revise any of the apparatus elements of the claims. The apparatus elements in claim 1 of the '342 Patent exactly match the apparatus elements in claim 1 of the '963 Patent. The apparatus elements in claim 1 of the '342 Patent are the same apparatus elements rejected by the Examiner in the '963 Patent using the '330 Patent.

908. The '728 Patent discloses a polymerizable liquid as recited in claim 1 of the '342 Patent. In Example 34, the '728 Patent discloses filling a master template that serves as a build region with a polymerizable liquid mixture comprising chain-extended perfluoropolyether (PFPE) dimethacrylate as the UV curing first component and a chain-extended PFPE diisocyanate and a

PFPE tetrol as the thermal curing second component that is different from the first component. The chain-extended PFPE is a fluoropolymer chain made by using a diisocyanate linker to join shorter PFPE chains together. The diisocyanate linker has an isocyanate group on each tip. Each isocyanate group bonds to a hydroxyl group on the ends of the shorter PFPE chains to form a urethane bond. The end tips of the extended PFPE chain are capped with methacrylate-containing diisocyanate. The isocyanate group of the methacrylate-containing diisocyanate attaches to the end tip of the extended chain and the methacrylate group is left free to cross-link and make the chain-extended PFPE UV-hardenable. The methacrylate ends on the chain-extended PFPE crosslink with other methacrylate ends when the polymer composition is exposed to UV radiation. This is the light polymerizable liquid first component that forms the three-dimensional intermediate. The chain-extended PFPE diisocyanate and PFPE tetrol remain uncured after exposure to UV radiation. They are physically entangled in an uncured state in the rubbery-like photocured matrix. They are the second solidifiable component carried in the scaffold formed by the cross-linked portions of the chain-extended PFPE in unsolidified or uncured form. The chain-extended PFPE diisocyanate is a fluoropolymer chain built by linking shorter PFPE chains together with a diisocyanate. When forming the PFPE diisocyanate, the amounts of ingredients are added in a ratio that will ensure that the resulting polymer chain is capped with isocyanate groups. The PFPE tetrol is a single PFPE chain (not chain-extended) that carries four total hydroxyl groups - two reactive hydroxyl groups (–OH) at each end. When the stacked layers are thermally cured, the isocyanate ends of the PFPE diisocyanate react with the hydroxyl ends of the PFPE tetrol to form urethane bonds tying the chains into a mechanically stable network that serve as the three-dimensional object in claim 1 of the ‘963 Patent.

909. The ‘728 Patent discloses a mixture comprising a light polymerizable first component (chain-extended PFPE dimethacrylate) and a second component (chain-extended PFPE diisocyanate and a PFPE tetrol) different from the first component that remains unsolidified or uncured and in the solid polymer scaffold formed by irradiating the first component, with the second component being subsequently heated or microwave irradiated or both to form a three-dimensional object.

910. Claim 1 of the ‘342 Patent recites, in part, a method of forming a three-dimensional object, comprising filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component.

911. The ‘728 Patent discloses filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component.

912. The ‘728 Patent and the ‘330 Patent collectively disclose every element of claim 1 of the ‘342 Patent.

**e. DeSimone's Inequitable Conduct With Respect To Rolland '133**

913. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew about Rolland '133 because he co-founded Liquidia Technologies and was an officer at Liquidia Technologies when Rolland '133 was prepared and prosecuted. DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the application published as Rolland '133 and therefore knew what Rolland '133 disclosed.

914. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland '133 was prior art to the '342 Patent.

915. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of Rolland '133 to the claims of the '342 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland '133 from the Patent Office.

916. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Desimone recognized the materiality of Rolland '133 to the claims of the '342 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of Rolland '133 and actively involved in preparation and prosecution of the '342 Patent, and DeSimone is a named inventor on the '342 Patent so he knew what is described in the specification and he knew what was being claimed in the '342 Patent.

917. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that Rolland '133 was material to the patentability of at least one claim of the '342 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld Rolland '133.

918. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that Rolland '133 was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about Rolland '133 unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed Rolland '133 to the attorneys at Myers Bigel.

919. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that Rolland '133 was material to the patentability of at least one claim of the '342 Patent and he directed, reviewed, and supervised the submission of over 350 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

920. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 350 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

921. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding Rolland '133 from the Patent Office because he knew it was but-for material to at least one claim of the '342 Patent.

**f. Rolland's Inequitable Conduct With Respect To Rolland '133**

922. Rolland knew what Rolland '133 disclosed because he was the sole named inventor.

400. Rolland knew that Rolland '133 was prior art to the '342 Patent.

923. Rolland recognized that Rolland '133 was material to patentability for at least one claim of the '342 Patent because he is a named inventor on the '342 Patent so he knew and understood what was disclosed in Rolland '133 and what was claimed in the '342 Patent.

924. Rolland recognized that Rolland '133 was material to the patentability of at least one claim of the '342 Patent because he selectively disclosed references to the Patent Office that were not but-for material or were not prior art, but withheld Rolland '133.

925. Rolland knew that Rolland '133 was prepared and prosecuted by a law firm different from Myer Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that

the attorneys at Myers Bigel would not know about Rolland '133 unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed Rolland '133 to the attorneys at Myers Bigel.

926. Rolland recognized that Rolland '133 was material to the patentability of at least one claim of the '342 Patent and he directed, reviewed, and supervised the submission of over 350 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

927. Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 350 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

928. Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding Rolland '133 from the Patent Office because he knew it was but-for material to at least one claim of the '342 Patent.

**g. Rolland '133 Is But-For Material To The '342 Patent**

929. Rolland '133 discloses a dual-cure resin composition comprising a UV-curable component blended with a thermally curable component. Upon UV irradiation, the UV-curable component in the resin composition cures to form a solidified network, while the thermally curable component remains "entangled but unreacted" in that network. Upon subsequent heating, the thermally curable component cures within the partially cured network, thereby forming a three-dimensional object.

930. The Examiner in the '550 Application, who is presumed to be reasonable, rejected claim 28 of the '550 Application as anticipated by Rolland '133. Claim 28 is nearly identical to claim 1 of the '342 Patent.

931. The '550 Application shares priority, inventors, specification, and Applicant with the '342 Patent.

932. The table below shows that claim 28 of the '550 Application is nearly identical to claim 1 of the '342 Patent. The differences between the claims do not alter the substance of the claimed methods. The difference in the '550 Application claim merely identifies a dental-device field of use, and the '342 Patent claim includes a wherein clause describing the polymer structure of the three-dimensional object. The dental-device language does not alter the substance of the claimed method, and Rolland '133 discloses the subject matter of the "wherein" clause. The Examiner rejected Claim 28 of the '550 Application as anticipated by Rolland '133.

| U.S. APP. 15/963,550, CLAIM 28 COMPARED TO THE '342 PATENT, CLAIM 1 | |
|---|---|
| **U.S. APP. 15/963,550** | **U.S. 11,358,342** |
| **28**. A method of forming a three-dimensional object, wherein said three-dimensional object is a dental mold, dental implant or dental aligner, comprising: | **1.** A method of forming a three-dimensional object, comprising: |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween | (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and | (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and |
| (ii) a second solidifiable component that is different from said first component | (ii) a second solidifiable component that is different from said first component; |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and | (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and |
| also advancing said carrier away from said build surface to form a three-dimensional intermediate having a shape of said dental mold, dental implant or dental aligner | also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, |
| said three-dimensional intermediate containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and |

| | |
|---|---|
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, second solidifiable component in said three-dimensional intermediate to form said dental mold, dental implant or dental aligner. | (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component. |

933. The comparison of U.S. App 15/963,550, Claim 28 to the '342 Patent, Claim 1 shows that the claims are nearly identical. In the table, common language is underlined. Rolland '133 discloses the language common to claim 28 of the '550 Application and claim 1 of the '342 Patent. In the final limitations, a "dental mold, dental implant or dental aligner" in the '550 Application is a "three-dimensional object" in the '342 Patent. Rolland '133 discloses a method of making a three-dimensional object. The elements of the wherein clause in the '342 Patent claim are disclosed in Example 34 of Rolland '133. In Example 34 of Rolland '133, after the dual-cure resin composition (an example of a polymer blend) has been exposed to UV irradiation, the UV-curable component in the resin composition cures to form a solidified network, while the thermally curable component remains "entangled but unreacted" in that network. The solidified network with the thermally curable component entangled but unreacted in the network is a three-dimensional object comprising a semi-interpenetrating polymer network. Because the curing is done sequentially (UV cure first, thermal cure second), the three-dimensional object also is a sequential interpenetrating polymer network.

934. Rolland '133 is but-for material to the patentability of at least Claim 1 of the '342 Patent because claim 1 of the '342 Patent is nearly identical to a claim that the Examiner, who is presumed to be reasonable, rejected as anticipated by disclosure in Rolland '133.

935. Applying the broadest reasonable interpretation and a preponderance-of-the-evidence standard, the Patent Office would not have allowed at least Claim 1 had it been aware of Rolland '133 in combination with the '330 Patent. The Examiner in the '963 Patent (great-great

grandparent application to the '342 Patent) rejected claim 1 as obvious over the '330 Patent in combination with another reference. The Examiner in the '963 Patent cited the '330 Patent for disclosing the apparatus elements of claim 1, which match the apparatus elements of claim 1 of the '342 Patent. Rolland '133 discloses every element of the polymerizable liquid in claim 1 of the '342 Patent.

936. As shown in the claim chart below, Rolland '133 combined with the '330 Patent discloses every limitation of Claim 1 of the '342 Patent. Defendant did not dispute the Examiner's characterization of the '330 Patent during prosecution of the '963 Patent.

| **U.S. PATENT NO. 11,358,342, CLAIM 1 COMPARED TO ROLLAND '133 IN VIEW OF THE '330 PATENT** | |
|---|---|
| **U.S. PATENT NO. 11,358,342** | **ROLLAND '133 IN VIEW OF THE '330 PATENT** |
| A method of forming a three-dimensional object, comprising: | Rolland '133 discloses "A method of forming a three-dimensional object"<br><br>Rolland '133, Abstract. |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween; | The '330 Patent discloses "providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween"<br><br>The '330 Patent discloses a build platform 74 as a carrier and a solidification substrate 79a with an elastomeric translucent layer 80a as an optically transparent member having a build surface, and the build region between the carrier and the build surface.<br><br>'330 Patent, Figs. 2A & 2B, 3, 12:46-56, 10:48-11:55. |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; | Rolland '133 discloses "filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component;" |

| U.S. PATENT NO. 11,358,342, CLAIM 1 COMPARED TO ROLLAND '133 IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 11,358,342** | **ROLLAND '133 IN VIEW OF THE '330 PATENT** |
| | Rolland '133 discloses filling a master template that serves as a build region with a polymerizable liquid mixture comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component that is different from the first component.<br><br>Rolland '133, ¶¶ 0367-0368. |
| (c) irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and | Rolland '133 discloses "irradiating said build region with light through said optically transparent member to form a solid polymer scaffold from said first component and also advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form;"<br><br>Rolland '133 disclose UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold). The chain-extended PFPE diisocyanate and PFPE tetrol (the thermal curing second component) are physically entangled in an uncured state in the rubbery photocured matrix.<br><br>Rolland '133, ¶¶ 0367-0368.<br><br>The '330 Patent discloses projecting solidification energy through the transparent solidification substrate 79a to polymerize the solidifiable material 92 to form a three- |

| U.S. PATENT NO. 11,358,342, CLAIM 1 COMPARED TO ROLLAND '133 IN VIEW OF THE '330 PATENT | |
|---|---|
| **U.S. PATENT NO. 11,358,342** | **ROLLAND '133 IN VIEW OF THE '330 PATENT** |
| | dimensional object 78 and moving the build platform 74 upward away from the solidification substrate 79a to allow the object 78 being formed to continue to grow according to the pattern being projected to the build region.<br><br>'330 Patent,13:64 - 14:20. |
| (d) subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, | Rolland '133 discloses "subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object."<br><br>Rolland '133 discloses heating the thermally curable material physically entangled in the stacked layers of photocured matrix material to form the three-dimensional microfluidic device.<br><br>Rolland '133, ¶0368. |
| wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component. | Rolland '133 discloses "wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component."<br><br>Rolland '133 discloses a polymer blend, an interpenetrating polymer network, a semi-interpenetrating polymer network, and a sequential interpenetrating polymer network formed from said first component and said second component.<br><br>Rolland '133, ¶¶0367-0368. |

937. The claim chart comparing Claim 1 of the '342 Patent to disclosure in the '330

Patent and Rolland '133 shows that the '330 Patent discloses every apparatus element of claim 1 and that Rolland '133 discloses every element of the polymerizable liquid. Together, Rolland '133 and the '330 Patent disclose every element of claim 1 of the '342 Patent. Rolland '133 and the '330 Patent are but-for material to at least claim 1 of the '342 Patent.

938. In the May 17, 2016 office action in the '963 Patent (great-great grandparent to the '342 Patent), the Examiner, who is presumed to be reasonable, concluded that the '330 Patent discloses every apparatus element of claim 1 of the '963 Patent. Defendant never argued against or contradicted the Examiner's conclusion related to the '330 Patent. Defendant did not amend the claims to revise any of the apparatus elements of the claims. The apparatus elements in claim 1 of the '342 Patent exactly match the apparatus elements in claim 1 of the '963 Patent. The apparatus elements in claim 1 of the '342 Patent are the same apparatus elements rejected by the Examiner in the '963 Patent using the '330 Patent.

939. Rolland '133 discloses a polymerizable liquid as recited in claim 1 of the '342 Patent. In Example 34, Rolland '133 discloses filling a master template that serves as a build region with a polymerizable liquid mixture comprising chain-extended perfluoropolyether (PFPE) dimethacrylate as the UV curing first component and a chain-extended PFPE diisocyanate and a PFPE tetrol as the thermal curing second component that is different from the first component. The chain-extended PFPE is a fluoropolymer chain made by using a diisocyanate linker to join shorter PFPE chains together. The diisocyanate linker has an isocyanate group on each tip. Each isocyanate group bonds to a hydroxyl group on the ends of the shorter PFPE chains to form a urethane bond. The end tips of the extended PFPE chain are capped with methacrylate-containing diisocyanate. The isocyanate group of the methacrylate-containing diisocyanate attaches to the end tip of the extended chain and the methacrylate group is left free to cross-link and make the chain-extended PFPE UV-hardenable. The methacrylate ends on the chain-extended PFPE crosslink with other methacrylate ends when the polymer composition is exposed to UV radiation. This is the light polymerizable liquid first component that forms the three-dimensional intermediate. The chain-extended PFPE diisocyanate and PFPE tetrol remain uncured after exposure to UV radiation. They are physically entangled in an uncured state in the rubbery-like photocured matrix.

They are the second solidifiable component carried in the scaffold formed by the cross-linked portions of the chain-extended PFPE in unsolidified or uncured form. The chain-extended PFPE diisocyanate is a fluoropolymer chain built by linking shorter PFPE chains together with a diisocyanate. When forming the PFPE diisocyanate, the amounts of ingredients are added in a ratio that will ensure that the resulting polymer chain is capped with isocyanate groups. The PFPE tetrol is a single PFPE chain (not chain-extended) that carries four total hydroxyl groups - two reactive hydroxyl groups (–OH) at each end. When the stacked layers are thermally cured, the isocyanate ends of the PFPE diisocyanate react with the hydroxyl ends of the PFPE tetrol to form urethane bonds tying the chains into a mechanically stable network that serve as the three-dimensional object in claim 1 of the ‘963 Patent.

940. Rolland ‘133 discloses a mixture comprising a light polymerizable first component (chain-extended PFPE dimethacrylate) and a second component (chain-extended PFPE diisocyanate and a PFPE tetrol) different from the first component that remains unsolidified or uncured and in the solid polymer scaffold formed by irradiating the first component, with the second component being subsequently heated or microwave irradiated or both to form a three-dimensional object.

941. Claim 1 of the ‘342 Patent recites, in part, a method of forming a three-dimensional object, comprising filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from

said first component and said second component.

942. Rolland ‘133 discloses filling said build region with a polymerizable liquid, said polymerizable liquid comprising a mixture of (i) a light polymerizable liquid first component, and (ii) a second solidifiable component that is different from said first component; irradiating said build region with light … to form a solid polymer scaffold from said first component and … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object and containing said second solidifiable component carried in said scaffold in unsolidified and/or uncured form; and subsequent to said irradiating step, heating, microwave irradiating, or both heating and microwave irradiating, said second solidifiable component in said three-dimensional intermediate to form said three-dimensional object, wherein said three-dimensional object comprises a polymer blend, interpenetrating polymer network, semi-interpenetrating polymer network, or sequential interpenetrating polymer network formed from said first component and said second component.

943. Rolland ‘133 and the ‘330 Patent collectively disclose every element of claim 1 of the ‘342 Patent.

**h. DeSimone Recognized Materiality Of The ‘728 Patent**

944. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘342 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

945. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘342 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the ‘728 Patent and actively involved in preparation and prosecution of the ‘342 Patent, and DeSimone is a named inventor on the ‘342 Patent so he knew what is described in the specification and he knew what was being claimed in the ‘342 Patent.

**i. Rolland Recognized Materiality Of The '728 Patent**

946. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to patentability for at least one claim of the '342 Patent because he is a named inventor on the '342 Patent so he knew and understood what was disclosed in the '728 Patent and what was claimed in the '342 Patent.

947. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '342 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent

**j. DeSimone Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

948. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

949. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '342 Patent.

**k. Rolland Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

950. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the '728 Patent.

951. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically

intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '342 Patent

**l. DeSimone Recognized Materiality Of Rolland '133**

952. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of Rolland '133 to the claims of the '342 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland '133 from the Patent Office.

953. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of Rolland '133 to the claims of the '342 Patent because he disclosed Rolland '133 inconsistently in related applications. DeSimone disclosed Rolland '133 in the parent and grandparent applications to the '342 Patent but chose to withhold disclosure of Rolland '133 in the '342 Patent.

954. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Desimone recognized the materiality of Rolland '133 to the claims of the '342 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of Rolland '133 and actively involved in preparation and prosecution of the '342 Patent and he was a named inventor on the '963 Patent so he knew what it disclosed and claimed.

**m. Rolland Recognized Materiality Of Rolland '133**

955. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that Rolland '133 was material to patentability for at least one claim of the '342 Patent because he was the only inventor for Rolland '133 and he is a named inventor on the '342 Patent so he knew and understood what was disclosed in Rolland '133 and what was claimed in the '342 Patent.

956. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized the materiality of Rolland '133 to the claims of the '342 Patent because he disclosed Rolland '133 inconsistently in related applications. Rolland disclosed Rolland '133 in the parent and grandparent applications to the '342 Patent but chose to withhold disclosure of Rolland '133 in the

‘342 Patent.

957. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that Rolland ‘133 was material to the patentability of at least one claim of the ‘342 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld Rolland ‘133.

**n. DeSimone Intended To Deceive The Patent Office By Not Disclosing Rolland ‘133**

958. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland ‘133.

959. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding Rolland ‘133 from the Patent Office because he knew it was but-for material to at least one claim of the ‘342 Patent.

960. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he disclosed Rolland ‘133 inconsistently in related applications. DeSimone disclosed Rolland ‘133 in the parent and grandparent applications to the ‘342 Patent but chose to withhold disclosure of Rolland ‘133 in the ‘342 Patent.

**o. Rolland Intended To Deceive The Patent Office By Not Disclosing Rolland ‘133**

961. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland ‘133.

962. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically

intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding Rolland '133 from the Patent Office because he knew it was but-for material to at least one claim of the '342 Patent.

963. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he disclosed Rolland '133 inconsistently in related applications. Rolland disclosed Rolland '133 in the parent and grandparent applications to the '342 Patent but chose to withhold disclosure of Rolland '133 in the '342 Patent.

**p. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office**

964. Pursuant to 37 C.F.R. §1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Patent Office, which includes a duty to disclose to the Patent Office all information known to that individual to be material to patentability.

965. Kenneth Sibley was an attorney who prosecuted the '342 Patent. Sibley was an attorney at Myers Bigel from May 1997 to October 2016. Sibley left Myers Bigel to join Defendant as Patent Counsel in October 2016. Sibley became Senior Patent Counsel at Defendant in June 2018 and remained with Defendant until May 2023. In his role as Patent Counsel and then Senior Patent Counsel at Defendant, Sibley was an attorney making prosecution decisions for the '342 Patent. Sibley owed a duty of disclosure to the Patent Office.

966. Sherry Murphy was an attorney who prosecuted the '342 Patent. Murphy owed a duty of disclosure to the Patent Office.

967. On information and belief, Fed. Rule Civ. Proc. 11(b)(3), Lori Herman was an attorney who prosecuted the '342 Patent. Herman was Of Counsel at Myers Bigel beginning in July 2020. On information and belief, Fed. Rule Civ. Proc. 11(b)(3), Herman was substantively involved in prosecution of the '342 Patent. Herman owed a duty of disclosure to the Patent Office.

**W. The '073 Patent**

968. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '073 Patent and claims of the '073 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed the '073 Patent**

969. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '073 Patent.

970. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

971. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object, comprising the steps of:

providing a carrier and a build plate,

> the build plate comprising a semipermeable member, and the semipermeable member comprising a build surface, with the build surface and the carrier defining a build region therebetween, and the build surface in fluid communication by way of the semipermeable member with a source of polymerization inhibitor;
>
> irradiating the build region through the build plate to produce a solid polymerized region in the build region, while forming or maintaining a liquid film release layer comprised of the polymerizable liquid formed between the solid polymerized region and the build surface, wherein polymerization of the liquid film release layer is inhibited by the polymerization inhibitor.

**2. Claims Of The '073 Patent Are Invalid**

972. Claims of the '073 Patent are invalid.

973. One or more of the claims of the '073 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

974. One or more of the claims of the '073 Patent claims are invalid at least under 35 U.S.C. section 103 by the '330 Patent in view of the '441 Patent and Velankar

**X. <u>The '938 Patent</u>**

975. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the '938 Patent and claims of the '938 Patent are invalid at least under Sections 101, 102, 103, and 112.

**1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed the '938 Patent**

976. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the '938 Patent.

977. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

978. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product that includes at least all of:

> An apparatus for forming a three-dimensional object from a polymerizable liquid, comprising:
>
> a build plate connected to said support, wherein the build plate is stationary in the X and Y direction, said build plate comprising a semipermeable member, said semipermeable member comprising a build surface, with said build surface and said carrier defining a build region therebetween, said build region configured to produce an object having at least one overhanging feature;
>
> the build surface being in fluid communication by way of the semipermeable member with a source of polymerization inhibitor so as to promote formation or maintenance of a liquid film release layer comprised of said polymerizable liquid formed between said solid polymerized region and said build surface, the polymerization of which liquid film is inhibited by said polymerization inhibitor.

**2. Claims Of The '938 Patent Are Invalid**

979. Claims of the '938 are invalid.

980. One or more of the claims of the ‘938 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

981. One or more of the claims of the ‘938 Patent claims are invalid at least under 35 U.S.C. section 103 by the ‘330 Patent and the ‘441 Patent.

## Y. The ‘895 Patent

982. Defendant cannot carry its burden that Plaintiff infringes or has infringed any claim of the ‘895 Patent and claims of the ‘895 Patent are invalid at least under Sections 101, 102, 103, and 112, and the ‘895 Patent is unenforceable for inequitable conduct in its prosecution.

### 1. Defendant Cannot Carry Its Burden To Prove That Plaintiff Infringes Or Has Infringed The ‘895 Patent

983. Defendant cannot carry its burden to prove that Plaintiff infringes or has infringed the ‘895 Patent.

984. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States an accused device or accused product.

985. Defendant cannot carry its burden to prove that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a claimed method that includes at least all of:

A method of forming a three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof, said method comprising:

filling said build region with a polymerizable liquid, said polymerizable liquid comprising at least one of:

(i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, and (iii) a blocked or reactive blocked chain extender;

irradiating said build region with light through said optically transparent member to form a solid blocked polymer scaffold and advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object,

with said intermediate containing said at least one of said blocked or reactive

blocked prepolymer, blocked or reactive blocked diisocyanate, and blocked or reactive blocked chain extender;

wherein said irradiating and/or said advancing steps are carried out while also concurrently:

(i) continuously maintaining a dead zone of polymerizable liquid in contact with said build surface, and

(ii) continuously maintaining a gradient of polymerization zone between said dead zone and said solid blocked polymer scaffold and in contact with each thereof, said gradient of polymerization zone comprising said polymerizable liquid in partially cured form.

**2. Claims Of The '895 Patent Are Invalid**

986. Claims of the '895 Patent are invalid.

987. One or more of the claims of the '895 Patent claims are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

988. One or more of the claims of the '895 Patent claims are invalid at least under 35 U.S.C. section 103 by the '728 Patent in view of the '330 Patent.

989. DeSimone intentionally withheld disclosure of the '728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the '728 Patent.

990. Rolland intentionally withheld disclosure of the '728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the '728 Patent.

**3. The '895 Patent Is Unenforceable for Inequitable Conduct In Its Prosecution**

991. The '895 Patent is unenforceable for inequitable conduct in its prosecution.

992. DeSimone committed inequitable conduct during prosecution of the '895 Patent.

993. Rolland committed inequitable conduct during prosecution of the '895 Patent.

994. Under 37 C.F.R. § 1.56, each individual associated with the filing and prosecution

of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability. Individuals associated with the filing or prosecution of a patent application are each inventor named in the application; each attorney or agent who prepares or prosecutes the application; and every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.

995. DeSimone is a named inventor on the ‘895 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56. DeSimone fully understands the duty of disclosure, when he spoke at Stanford University in November 2017, he explained: “When you write a patent you've got to [give a] full disclosure [of] what it is.” An Evening With Joseph DeSimone.

996. DeSimone signed an oath under 37 CFR § 1.63, for the ‘895 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates DeSimone’s Oath for the ‘895 Patent here as if fully set forth here.[164]

997. Rolland is a named inventor on the ‘895 Patent so had a duty of disclosure during the prosecution thereof under 37 C.F.R. § 1.56.

998. Rolland signed an oath under 37 CFR § 1.63, for the ‘895 Patent, attesting that he reviewed and understood the application and claims being filed and was aware that he owed a duty of candor to the Patent Office under 37 C.F.R. §1.56. Plaintiff incorporates Rolland’s Oath for the ‘895 Patent here as if fully set forth here.[165]

**a. The Prosecution Of The ‘895 Patent**

999. On November 8, 2023, Sherry Murphy (U.S. Patent Registration No. 53359), of Myers Bigel, filed Application No. 18/504,537, as a nonprovisional, continuation application of Application No. 17/655,275 (issued as U.S. Patent No. 11,850,803). The ‘275 Application claimed

---

[164] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[165] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

the benefit of PCT/US2015/036902 and a series of six provisionals (62/133,642 (3/16/2015); 62/129,187 (3/6/2015); 62/101,671 (1/9/2015); 62/036,161 (8/12/2014); 62/015,780 (6/23/2014)). The ‘902 PCT was filed on June 22, 2015, claiming priority to the series of six provisionals.

1000. During prosecution of the ‘895 Patent, Defendant submitted over 590 references collectively. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of all 590 references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of all 590 references.

**i. The ‘728 Patent**

1001. DeSimone did not disclose the ‘728 Patent in any IDS submitted to the Patent Office for the ‘895 Patent.

1002. Rolland did not disclose the ‘728 Patent in any IDS submitted to the Patent Office for the ‘895 Patent.

1003. DeSimone and Rolland filed the ‘728 Patent as the U.S. national stage application of a PCT Application filed on August 9, 2006. DeSimone and Rolland are named inventors on the ‘728 Patent. Liquidia Technologies, Inc. is a co-owner of the ‘728 Patent. The University of North Carolina is a co-owner of the ‘728 Patent.

1004. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the ‘728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the ‘728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

1005. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the ‘728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the ‘728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed the ‘728 Patent to the attorneys at Myers Bigel.

1006. DeSimone has stated that he views patents as a driver of innovation and that he

personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), because DeSimone personally engaged with the patenting process at a detailed level in his companies, DeSimone had an active role in the patenting process at Liquidia Technologies. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone's approval would have been required for the preparation and filing of the '728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia Technologies. DeSimone approved the preparation and filing of the '728 Patent at least because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was substantially involved in the prosecution of the '728 Patent at the Patent Office.

1007. DeSimone knew about the '728 Patent and knew what the '728 Patent disclosed.

1008. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone introduced Rolland to entrepreneurship and company creation using patents, and Rolland adopted DeSimone's belief that patents play a critical role in building and growing companies and adopted DeSimone's hands-on approach to patents. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland personally engaged with the patenting process for at least patents on which he was an inventor. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland's approval would have been required for the preparation and filing of the '728 Patent at least because he was a named inventor and he was actively involved in the patent process at Liquidia. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland approved the preparation and filing of the '728 Patent at least because he attested that he had when he executed the oath under 37 C.F.R. §1.56 for the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was substantially involved in the prosecution of the '728 Patent.

1009. Rolland knew about the '728 Patent and knew what the '728 Patent disclosed.

1010. The specification of the '880 Patent includes a reference to the '728 Patent in a listing of patents describing perfluoropolyether polymer materials that form a thin film or sheet of material that is flexible and can be used as the semipermeable membrane of the build plate. The specification reads, in relevant part:

> In some embodiments the build plate may be formed from a thin film or sheet of material which is flexible when separated from the apparatus of the invention … Particular materials include TEFLON AF® fluoropolymers, commercially available from DuPont. Additional materials include perfluoropolyether polymers such as described in U.S. Pat. Nos. 8,268,446; 8,263,129; 8,158,728; and 7,435,495.

The ‘895 Patent, 17:16-26.

1011. The duty to disclose material information under 37 C.F.R. § 1.56 is not satisfied by referring to a patent in a list of patents in the specification. A reference is not treated as having been properly submitted for consideration under Rule 56 unless the reference is submitted to the Patent Office in the manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. The "manner prescribed" requires a compliant information disclosure statement, including a list of the information submitted for consideration, separately listing U.S. patents and U.S. patent application publications, identifying each U.S. patent by inventor, patent number, and issue date, and otherwise satisfying the timing and content requirements of §§ 1.97 and 1.98.

1012. Rolland did not submit the ‘728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. Rolland failed to properly submit the ‘728 Patent to the Patent Office for consideration under Rule 56.

1013. DeSimone did not submit the ‘728 Patent to the Patent Office in a manner prescribed by 37 C.F.R. §§ 1.97 and 1.98. DeSimone failed to properly submit the ‘728 Patent to the Patent Office for consideration under Rule 56.

1014. The ‘895 Patent includes the ‘728 Patent in a string of patents describing perfluoropolyether polymer materials useful for constructing the build plate. The ‘895 Patent does not include the ‘728 Patent in a listing of patents in the polymerizable liquids section. On information and belief, Fed. R. Civ. Proc. 11(b)(3), inclusion of the ‘728 Patent in a list of patents disclosing materials useful for the semipermeable membrane would lead the Examiner to believe that the ‘728 Patent was not materially relevant to the polymerizable liquids recited in the claims.

1015. Rolland ‘133 was submitted in an information disclosure statement during prosecution of the ‘895 Patent. The ‘728 Patent is, however, not cumulative to Rolland ‘133. Especially not for the claim elements in at least claim 1 of the ‘895 Patent.

1016. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland copied a significant portion of the '728 Patent into Rolland '133. The '728 Patent, however, is not cumulative to Rolland '133 because Rolland did not copy all the '728 Patent dual cure chemistry disclosure into Rolland '133. The '728 Patent has additional dual cure chemistry disclosure that is not in Rolland '133, which includes a blocked diisocyanate that cleaves at high temperature to expose previously blocked isocyanate.

1017. DeSimone and Rolland filed a divisional application claiming priority to the '728 Patent. That application issued as U.S. Patent No. 8,444,899. DeSimone never submitted the '899 Patent for consideration by an examiner in any of the Dual Cure patents. Rolland never submitted the '899 Patent for consideration by an examiner in any of the Dual Cure patent.

**ii. "Excessively Lengthy Information Disclosure Statement"**

1018. During prosecution of commonly owned, related Application No. 15/240,157, which issued, on May 29, 2018, as U.S. Patent No. 9,982,164, the Examiner encouraged Defendant and their patent attorneys at Myers Bigel to provide "a concise explanation of why information is being submitted to the Patent Office and how it is understood to be relevant" when Defendant filed

> an **"excessively lengthy Information Disclosure Statement."**

Office Action mailed June 8, 2017, U.S. Patent No. 9,982,164 (emphasis added)

1019. The Examiner's statements were in response to Defendant filing an information disclosure statement with 310 references concurrently with application filing. Because of the excessive length of the IDS, the Examiner explained that only a "cursory review" of the listed references was given.

1020. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone through Defendant's attorneys at Myers Bigel never complied with the Examiner's request in the '164 Patent.

1021. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland, through Defendant's attorneys at Myers Bigel, never complied with the Examiner's request in the '164 Patent.

1022. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone continued with the practice of submitting "excessively lengthy" IDSs through Defendant's attorneys at Myers Bigel in all patents in the Dual Cure patent family, including the '895 Patent. The November 8 IDS submitted 559 references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), this IDS submission is a prime example of the practice of burying the examiner in references, which, on information and belief, Fed. R. Civ. Proc. 11(b)(3), results in the Examiner giving no more than a cursory review of the submitted references.

1023. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland continued with the practice of submitting "excessively lengthy" IDSs through Defendant's attorneys Myers Bigel in all patents in the Dual Cure patent family, including the '895 Patent. The November 8 IDS submitted 559 references. On information and belief, Fed. R. Civ. Proc. 11(b)(3), this IDS submission is a prime example of the practice of burying the examiner in references, which, on information and belief, Fed. R. Civ. Proc. 11(b)(3), results in the Examiner giving no more than a cursory review of the submitted reference.

1024. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone's intent in submitting excessively lengthy references was to ensure only a cursory review of the listed references in the Dual Cure patent family. On information and belief, Fed. R. Civ. Proc. 11(b)(3), with so many references to review, the Examiner does not have time to adequately review the submitted references or search for references that were not submitted, like the '728 Patent.

1025. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland's intent in submitting excessively lengthy references was to ensure only a cursory review of the listed references in the Dual Cure patent family. On information and belief, Fed. R. Civ. Proc. 11(b)(3), with so many references to review, the Examiner does not have time to adequately review the submitted references or search for references that were not submitted, like the '728 Patent.

**iii. November 8, 2023 Information Disclosure Statement**

1026. On November 8, 2023, concurrently with application filing, Murphy submitted an information disclosure statement submitting 559 references – 149 U.S. Patents, 91 U.S. Application Publications, 96 Foreign patent documents, and 223 Non-patent literature references.

Plaintiff incorporates the November 8, 2023 Information Disclosure Statement here as if fully set forth here.[166] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the November 8 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the November 8 IDS. DeSimone did not disclose the '728 Patent in the November 8 IDS. Rolland did not disclose the '728 Patent in the November 8 IDS.

1027. When Murphy filed the IDS with 559 references, Murphy did not include "a concise explanation of why information is being submitted to the Patent Office and how it is understood to be relevant," as requested by the Examiner in the related '164 Patent. Murphy submitted an excessively lengthy information disclosure statement at the direction of DeSimone and Rolland, even though the Examiner in the '164 Patent stated that only a cursory review would be given to excessively lengthy information disclosure statements.

1028. In the November 8 IDS, DeSimone was inventor or author for at least forty-two references and at least eighteen of these references were not prior art. In the November 8 IDS, Rolland was inventor or author for at least twenty-five references and at least twenty-two of these references were not prior art. Plaintiff incorporates the DeSimone references and the Rolland references from the November 8 IDS, including the twelve references listed below, here as if fully set forth here.[167] At least twelve of the non-prior art references were issued patents that are related to the Asserted Patents in the Dual Cure family. These applications share priority to the same six provisional applications with the '895 Patent, some of them being in the same direct continuation chain with the '895 patent, and are thus not prior art. A listing of a portion of the non-prior art references that DeSimone and Rolland submitted include:

1029. International application publication WO2015/200201, naming DeSimone, Rolland, and others as inventors is not prior art. WO '201 is the publication of an international application that had a national phase application in the U.S. and issued as the '142 Patent, the '164 Patent, and the '868 Patent. WO '201 shares the same six provisional applications as priority

[166] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[167] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

applications with the ‘880 Patent and is therefore not prior art to the ‘895 Patent.

1030. International application publication WO2015/200189, naming DeSimone, Rolland, and others as inventors, is not prior art. WO ‘189 shares the same six provisional applications as priority applications with the ‘880 Patent and is therefore not prior art to the ‘895 Patent.

1031. International application publication WO2015/200173, naming DeSimone, Rolland, and others as inventors is not prior art. WO 173 is the publication of an international application that had a national phase application in the U.S. and issued as the ‘963 Patent and the ‘342 Patent. WO 173 shares the same six provisional applications as priority applications with the ‘880 Patent and is therefore not prior art to the ‘895 Patent.

1032. International application publication WO2015/200179, naming DeSimone, Rolland, and others as inventors is not prior art. WO 179 is the publication of an international application that had a national phase application in the U.S. and issued as the ‘606 Patent, the ‘066 Patent, the ‘880 Patent, and the ‘895 Patent. WO 179 shares the same disclosure with the ‘880 Patent and is thus not prior art to the ‘895 Patent.

1033. Tumbleston and its Supplementary Materials are not prior art. The article and the supplementary materials were submitted as two separate references. DeSimone and Rolland are co-authors on the article. The submitted manuscript and submitted supplementary materials for Tumbleston were included as Appendices to U.S. Provisional Application No. 62/129,187, filed on March 6, 2015. The ‘880 Patent claims priority to the ‘187 PROV, and therefore, Tumbleston and its Supplementary Materials are not prior art to the ‘895 Patent.

1034. DeSimone’s TED presentation filmed on March 16, 2015, entitled “What if 3D Printing was 100x Faster?” is not prior art. The ‘880 Patent claims priority to six provisional applications filed between June 23, 2014, and March 16, 2015. Thus, the priority date for the ‘880 Patent is on or before the filming date of the TED presentation.

1035. DeSimone knew these references were not prior art but directed Murphy to submit them anyway as a part of a pattern of selectively disclosing references that were not prior art while intentionally withholding the ‘728 Patent from being submitted.

1036. Rolland knew these references were not prior art but directed Murphy to submit them anyway as a part of pattern of selectively disclosing references that were not prior art while intentionally withholding the ’728 Patent.

1037. In the November 8 IDS, Murphy also submitted U.S. Application Publication No. 2009/0061152, naming DeSimone, Rolland, and others as inventors. The ‘152 Publication, issued as U.S. Patent No. 8,420,124, is entitled “Methods for fabricating isolated micro- and nano-structures using soft or imprint lithography,” and is owned by the University of North Carolina. The ‘152 Publication is prior art but it is not but-for material to the ‘880 Patent like the ‘728 Patent is.

1038. The ‘152 Publication discloses the use of fluorinated elastomer-based materials, in particular perfluoropolyether (PFPE)-based materials, in high-resolution soft or imprint lithographic applications, such as micro- and nanoscale replica molding. It discloses a method for producing free-standing, isolated nanostructures of any shape using soft or imprint lithography technique. Perfluoropolyether chemistry was in many patent disclosures for Liquidia Technologies.

1039. The ‘728 Patent discloses dual cure chemistry and blocked diisocyanate chemistry, while the ‘152 Publication does not. The ‘728 Patent uses the term “dual cure” 48 times, while the ‘152 Publication has no instances of the term “dual cure.”

1040. DeSimone knew about the disclosure in ‘728 Patent and knew about the disclosure in the ‘152 Publication. Both the ‘152 Publication and the ‘728 Patent were prepared and prosecuted by attorneys at the law firm Alston & Bird. The ‘880 Patent was prepared and prosecuted by attorneys at a different law firm, Myers Bigel. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the attorneys at Myers Bigel did not know about the Alston & Bird-prepared applications until DeSimone told them about those applications. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone intentionally informed the attorneys at Myers Bigel of Alston & Bird-prepared patent references that did not disclose dual cure chemistry elements.

1041. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone directed Murphy to submit the ‘152 Publication to create the illusion of complying with Rule 56 by submitting a

patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry like the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone selectively disclosed the '152 Publication while intentionally withholding the '728 Patent from the Patent Office.

1042. Rolland knew about the disclosure in '728 Patent and knew about the disclosure in the '152 Publication. Both the '152 Publication and the '728 Patent were prepared and prosecuted by attorneys at the law firm Alston & Bird. The '880 Patent was prepared and prosecuted by attorneys at a different law firm, Myers Bigel. On information and belief, Fed. R. Civ. Proc. 11(b)(3), the attorneys at Myers Bigel did not know about the Alston & Bird-prepared applications until Rolland told them about those applications. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland intentionally informed the attorneys at Myers Bigel of Alston & Bird-prepared patent references that did not disclose dual cure chemistry elements.

1043. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland directed Murphy to submit the '152 Publication to create the illusion of complying with Rule 56 by submitting a patent document disclosing perfluoropolyethers but not one that also disclosed dual cure chemistry like the '728 Patent. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland selectively disclosed the '152 Publication while intentionally withholding the '728 Patent from the Patent Office.

**iv. January 10, 2024 Information Disclosure Statement**

1044. On January 10, 2024, Murphy submitted an IDS with 2 references. Plaintiff incorporates the January 10, 2024 Information Disclosure Statement here as if fully set forth here.[168] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 10 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 10 IDS. DeSimone did not disclose the '728 Patent in the January 10 IDS. Rolland did not disclose the '728 Patent in the January 10 IDS.

---

[168] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**v. February 12, 2024 Information Disclosure Statement**

1045. On February 12, 2024, Murphy submitted an IDS with 3 references. Plaintiff incorporates the February 12, 2024 Information Disclosure Statement here as if fully set forth here.[169] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 12 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 12 IDS. DeSimone did not disclose the '728 Patent in the February 12 IDS. Rolland did not disclose the '728 Patent in the February 12 IDS.

**vi. April 17, 2024 Information Disclosure Statement**

1046. On April 17, 2024, Murphy submitted an IDS with 3 references. Plaintiff incorporates the April 17, 2024 Information Disclosure Statement here as if fully set forth here.[170] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the April 17 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the April 17 IDS. DeSimone did not disclose the '728 Patent in the April 17 IDS. Rolland did not disclose the '728 Patent in the April 17 IDS.

**vii. June 6, 2024 Information Disclosure Statement**

1047. On June 6, 2024, Murphy submitted an IDS with 9 references. Plaintiff incorporates the June 6, 2024 Information Disclosure Statement here as if fully set forth here.[171] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the June 6 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the June 6 IDS. DeSimone did not disclose the '728 Patent in the June 6 IDS. Rolland did not disclose the '728 Patent in the June 6 IDS.

---

[169] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[170] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[171] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**viii. August 15, 2024 Information Disclosure Statement**

1048. On August 15, 2024, Murphy submitted an IDS with 2 references. Plaintiff incorporates the August 15, 2024 Information Disclosure Statement here as if fully set forth here.[172] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the August 15 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the August 15 IDS. DeSimone did not disclose the '728 Patent in the August 15 IDS. Rolland did not disclose the '728 Patent in the August 15 IDS.

**ix. October 10, 2024 Information Disclosure Statement**

1049. On October 10, 2024, Murphy submitted an IDS with 2 references. Plaintiff incorporates the October 10, 2024 Information Disclosure Statement here as if fully set forth here.[173] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the October 10 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the October 10 IDS. DeSimone did not disclose the '728 Patent in the October 10 IDS. Rolland did not disclose the '728 Patent in the October 10 IDS.

**x. November 11, 2024 Information Disclosure Statement**

1050. On November 11, 2024, Murphy submitted an IDS with 1 reference. Plaintiff incorporates the November 11, 2024 Information Disclosure Statement here as if fully set forth here.[174] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the November 11 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the November 11 IDS. DeSimone did not disclose the '728 Patent in the November 11 IDS. Rolland did not disclose the '728 Patent in the November 11 IDS.

[172] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[173] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[174] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**xi. February 2, 2025 Information Disclosure Statement**

1051. On February 2, 2025, Murphy submitted an IDS with 1 reference. Plaintiff incorporates the February 2, 2025 Information Disclosure Statement here as if fully set forth here.[175] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the February 2 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the February 2 IDS. DeSimone did not disclose the '728 Patent in the February 2 IDS. Rolland did not disclose the '728 Patent in the February 2 IDS.

**xii. April 3, 2025 Information Disclosure Statement**

1052. On April 3, 2025, Murphy submitted an IDS with 1 reference. Plaintiff incorporates the April 3, 2025 Information Disclosure Statement here as if fully set forth here.[176] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the April 3 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the April 3 IDS. DeSimone did not disclose the '728 Patent in the April 3 IDS. Rolland did not disclose the '728 Patent in the April 3 IDS.

**xiii. June 25, 2025 Information Disclosure Statement**

1053. On June 25, 2025, Murphy submitted an IDS with 1 reference. Plaintiff incorporates the June 25, 2025 Information Disclosure Statement here as if fully set forth here.[177] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the June 25 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the June 25 IDS. DeSimone did not disclose the '728 Patent in the June 25 IDS. Rolland did not disclose the '728 Patent in the June 25 IDS.

[175] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[176] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[177] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

**xiv. August 14, 2025 Information Disclosure Statement**

1054. On August 14, 2025, Murphy submitted an IDS with 1 reference. Plaintiff incorporates the August 14, 2025 Information Disclosure Statement here as if fully set forth here.[178] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the August 14 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the August 14 IDS. DeSimone did not disclose the '728 Patent in the August 14 IDS. Rolland did not disclose the '728 Patent in the August 14 IDS.

**xv. August 27, 2025 Office Action**

1055. On August 27, 2025, the Examiner mailed an office action rejecting claims 20, 21, 25, and 26 under 35 U.S.C. § 103 as being unpatentable over U.S. Patent Application Publication 2015/0097315 in combination with U.S. Patent Application Publication No. 2004/0014832. The Examiner also rejected the claims for non-statutory double patenting over claims of U.S. Patent Nos. 11,833,744, 11,034,084, 10,647,880, 10,538,031, 10,350,823, 10,343,331, 10,240,066, and 9,598,606. Plaintiff incorporates the August 27, 2025 Office Action here as if fully set forth here.[179]

**xvi. November 26, 2025 Response**

1056. On November 26, 2025, Murphy filed a Response submitting an electronic Terminal Disclaimer with respect to U.S. Patent Nos. 10,647,880, 10,240,066, and 9,598,606 on behalf of Defendant and an Information Disclosure Statement. Plaintiff incorporates the November 26, 2025 Response and Information Disclosure Statement here as if fully set forth here.[180] Murphy argued against the non-statutory double patenting rejection for U.S. Patent Nos. 11,833,744, 11,034,084, 10,538,031, 10,350,823, and 10,343,331. Murphy argued that claims 20, 21, 25, and 26 were not obvious over the '315 Publication and view of the '832 Publication at least because

> **neither** [the '315 Publication or the '832 Publication] **teach a three-dimensional** intermediate **object containing at least one** of the blocked or reactive blocked

---

[178] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[179] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[180] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

> prepolymer, **blocked** or reactive blocked **diisocyanate**, and blocked or reactive blocked chain extender.

Office Action Response mailed November 26, 2025, page 9. (emphasis added)

**xvii. November 26, 2025 Information Disclosure Statement**

1057. The Information Disclosure Statement Murphy submitted with the Response on November 11, 2025, submitted 11 references. Plaintiff incorporates the November 26, 2025 Information Disclosure Statement here as if fully set forth here.[181] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the November 11 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the November 11 IDS. DeSimone did not disclose the '728 Patent in the November 11 IDS. Rolland did not disclose the '728 Patent in the November 11 IDS.

**xviii. January 16, 2026 Notice of Allowance**

1058. On January 16, 2026, the Examiner mailed a Notice of Allowance allowing claims 20-39. Plaintiff incorporates the January 16, 2026 Notice of Allowance here as if fully set forth here.[182] The Examiner did not provide a Statement of Reasons for Allowance.

**xix. January 19, 2026 Information Disclosure Statement**

1059. On January 19, 2026, Murphy submitted an Information Disclosure Statement submitting 1 reference. Plaintiff incorporates the January 19, 2026 Information Disclosure Statement here as if fully set forth here.[183] On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the January 19 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the January 19 IDS. DeSimone did not disclose the '728 Patent in the January 19 IDS. Rolland did not disclose the '728 Patent in the January 19 IDS.

**xx. February 4, 2026 Corrected Notice Of Allowance**

1060. On February 4, 2026, the Examiner mailed a corrected Notice of Allowance,

---

[181] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[182] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[183] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

allowing claims 20-39, and signing off on the IDS submitted on January 19, 2026. Plaintiff incorporates the February 4, 2026 Corrected Notice of Allowance here as if fully set forth here.[184]

**xxi. March 13, 2026 Information Disclosure Statement**

1061. On March 13, 2026, Murphy submitted an Information Disclosure Statement submitting 1 reference. Plaintiff incorporates the March 13, 2026 Information Disclosure Statement here as if fully set forth here. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone was aware of, reviewed, and supervised the filing of the March 13 IDS. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland was aware of, reviewed, and supervised the filing of the March 13 IDS. DeSimone did not disclose the ‘728 Patent in the March 13 IDS. Rolland did not disclose the ‘728 Patent in the March 13 IDS.

**xxii. March 18, 2026 Corrected Notice Of Allowance**

1062. On March 18, 2026, the Examiner mailed a corrected Notice of Allowance, allowing claims 20-39, and signing off on the IDS submitted on March 13, 2026. Plaintiff incorporates the March 18, 2026 Corrected Notice of Allowance here as if fully set forth here.[185]

1063. On May 19, 2026, U.S. Patent No. 12,629,895 issued.

1064. Claim 1 of the ‘895 Patent recites, in part, a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, and (iii) a blocked or reactive blocked chain extender; irradiating … to form a solid blocked polymer scaffold … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said at least one of said blocked or reactive blocked prepolymer, blocked or reactive blocked diisocyanate, and blocked or reactive blocked chain extender … heating … said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof.

1065. The ‘728 Patent discloses a polymerizable liquid, said polymerizable liquid

[184] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.
[185] *Ritchie*, 342 F.3d at 908 – 09; Fed. R. Evid. 201.

comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, and (iii) a blocked or reactive blocked chain extender; irradiating … to form a solid blocked polymer scaffold … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said at least one of said blocked or reactive blocked prepolymer, blocked or reactive blocked diisocyanate, and blocked or reactive blocked chain extender … heating … said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof.

1066. Murphy argued that neither of the cited prior art (the ‘315 Publication or the ‘832 Publication) taught a three-dimensional intermediate object containing at least one of the blocked or reactive blocked prepolymer, blocked or reactive blocked diisocyanate, and blocked or reactive blocked chain extender.

1067. The ‘728 Patent discloses a three-dimensional intermediate object containing at least one of the blocked or reactive blocked prepolymer, blocked or reactive blocked diisocyanate, and blocked or reactive blocked chain extender – the feature that Murphy used to successfully argue for patentability of the claims of the ‘895 Patent.

1068. DeSimone never submitted the ‘728 Patent to the Patent Office in the ‘895 Patent.

1069. DeSimone knew about the ‘728 Patent, knew it was material to the patentability of at least one claim of the ‘895 Patent, and intentionally withheld it from the Patent Office.

1070. Rolland never submitted the ‘728 Patent to the Patent Office in the ‘895 Patent.

1071. Rolland knew about the ‘728 Patent, knew it was material to the patentability of at least one claim of the ‘895 Patent, and intentionally withheld it from the Patent Office.

1072. Between November 8, 2023, when Defendant filed the application that issued as the ‘880 Patent, and May 19, 2026, when the ‘880 Patent issued, Defendant submitted, through its attorneys at Myers Bigel P.A., at least 590 references to the Patent Office for consideration.

1073. Of the at least 590 references, at least 42 included DeSimone as an inventor or author, and at least 18 of those references were not prior art to the dual cure chemistry of the ‘895 Patent. Of the at least 590 references, at least 25 references included Rolland as an inventor, and at

least 22 of those references were not prior art to the dual cure chemistry of the ‘895 Patent.

1074. Even though Defendant submitted at least 590 references, and DeSimone was the inventor or author of some of the 590 references, and Defendant submitted references that were not prior art, DeSimone never submitted the ‘728 Patent, which DeSimone knew about, knew was but-for material, and knew was prior art, during prosecution of the ‘895 Patent.

1075. Even though Defendant submitted at least 590 references, and Rolland was the inventor or author of some of the 590 references, and Defendant submitted references that were not prior art, Rolland never submitted the ‘728 Patent, which Rolland knew about, knew was but-for material, and knew was prior art, during prosecution of the ‘895 Patent.

**b. DeSimone’s Inequitable Conduct With Respect To The ‘728 Patent**

1076. DeSimone knew about the ‘728 Patent because he is a named inventor on the ‘728 Patent. Additionally, DeSimone co-founded Liquidia Technologies and was an officer at Liquidia Technologies when the ‘728 Patent was prepared and prosecuted. DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone approved the preparation and filing of the application issued as the ‘728 Patent so knew what the ‘728 Patent disclosed.

1077. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the ‘728 Patent was prior art to the ‘895 Patent.

1078. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘895 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

1079. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘895 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the ‘728 Patent and actively involved in preparation and prosecution of the ‘895 Patent, and DeSimone is a named inventor on the ‘895 Patent so he knew what is described in the

specification and he knew what was being claimed in the '895 Patent.

1080. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the '728 Patent was material to the patentability of at least one claim of the '963 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent.

1081. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone knew that the '728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the '728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone never disclosed the '728 Patent to the attorneys at Myers Bigel.

1082. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized that the '728 Patent was material to the patentability of at least one claim of the '895 Patent and he directed, reviewed, and supervised the submission of over 500 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

1083. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 500 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

1084. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '895 Patent.

**c. Rolland's Inequitable Conduct With Respect To The '728 Patent**

1085. Rolland knew what the '728 Patent disclosed because he was a named inventor.

1086. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the '728 Patent was prior art to the '895 Patent.

1087. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to patentability for at least one claim of the '895 Patent because he is a named inventor on the '895 Patent so he knew and understood what was disclosed in the '728 Patent and what was claimed in the '895 Patent.

1088. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '895 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent.

1089. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland knew that the '728 Patent was prepared and prosecuted by a law firm different from Myers Bigel, and on information and belief, Fed. R. Civ. Proc. 11(b)(3), knew that the attorneys at Myers Bigel would not know about the '728 Patent unless he told them about it. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland never disclosed the '728 Patent to the attorneys at Myers Bigel.

1090. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '895 Patent and he directed, reviewed, and supervised the submission of over 500 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

1091. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 500 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the '728 Patent.

1092. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for

material or not prior art while intentionally withholding the '728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the '895 Patent.

**d. The '728 Patent Is But-For Material To The '895 Patent**

1093. The '728 Patent discloses a composition that has every element of the polymerizable liquid of at least claim 1 of the '895 Patent.

1094. Claim 1 of the '895 Patent recites, in part, a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, and (iii) a blocked or reactive blocked chain extender; irradiating … to form a solid blocked polymer scaffold … to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said at least one of said blocked or reactive blocked prepolymer, blocked or reactive blocked diisocyanate, and blocked or reactive blocked chain extender … heating … said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof.

1095. In Example 34 of the '728 Patent, a polymer composition comprising a UV curing portion and a thermally curing portion is mixed and poured into shallow molds where it is UV cured to form thin layers of polymerized material that has a rubbery like feel. The thin layers are stacked and then collectively thermally cured to adhere the layers to one another to form a three-dimensional object.

1096. The polymerizable liquid comprises chain-extended perfluoropolyether (PFPE) dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component. The chain-extended PFPE is a fluoropolymer chain made by using a diisocyanate linker to join shorter PFPE chains together. The diisocyanate linker has an isocyanate group on each tip. Each isocyanate group bonds to a hydroxyl group on the ends of the shorter PFPE chains to form a urethane bond. The end tips of the extended PFPE chain are capped with methacrylate-containing diisocyanate. The isocyanate group of the methacrylate-containing diisocyanate attaches to the end tip of the extended chain and the methacrylate group is

left free to cross-link and make the chain-extended PFPE UV-hardenable. The methacrylate ends on the chain-extended PFPE crosslink with other methacrylate ends when the polymer composition is exposed to UV radiation. The chain-extended PFPE diisocyanate and PFPE tetrol remains uncured after exposure to UV radiation. They are physically entangled in an uncured state in the rubbery-like photocured matrix. The chain-extended PFPE diisocyanate is a fluoropolymer chain built by linking shorter PFPE chains together with a diisocyanate. When forming the PFPE diisocyanate, the amounts of ingredients are added in a ratio that will ensure that the resulting polymer chain is capped with isocyanate groups. The PFPE tetrol is a single PFPE chain (not chain-extended) that carries four total hydroxyl groups - two reactive hydroxyl groups (–OH) at each end. When the stacked layers are thermally cured, the isocyanate ends of the PFPE diisocyanate react with the hydroxyl ends of the PFPE tetrol to form a urethane bond tying the chains into a mechanically stable network. Numerous urethane bonds are present in the mechanically stable network, thus forming a three-dimensional object comprised of polyurethane.

1097. The '728 Patent discloses a blocked diisocyanate (nomenclature 21-140B) that has similar function to the diisocyanate (nomenclature 21-140) but is "not moisture sensitive," and can serve as one component of a two-component thermally curable system. The blocking group "cleaves at high temp and reforms isocyanate," regenerating the reactive isocyanate group only upon heating, which can then react with the tetrol's hydroxyl groups to form urethane bonds. Substituting a chain-extended PFPE blocked diisocyanate for the chain-extended PFPE diisocyanate in Example 34 would therefore reduce the polymerizable liquid's moisture sensitivity and, because the isocyanate remains protected until thermal cure, avoid premature reaction before the intended thermal curing step—making the liquid more convenient to handle and store.

1098. The polymerizable liquid of Example 34 of the ‘728 Patent with the chain-extended PFPE diisocyanate replaced by chain-extended PFPE blocked diisocyanate discloses a polymerizable liquid comprising a blocked diisocyanate. Example 34 discloses irradiating a build region with light to form a solid blocked polymer scaffold to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, a three-dimensional object, with the intermediate containing the blocked diisocyanate and then heating the three-dimensional

intermediate sufficiently to form from the three-dimensional intermediate the three-dimensional object comprised of polyurethane.

1099. Applying the broadest reasonable interpretation and a preponderance-of-the-evidence standard, the Patent Office would not have allowed at least Claim 1 of the ‘895 Patent had it been aware of the ‘728 Patent in combination with the ‘330 Patent and the ‘441 Patent. Defendant submitted the ‘330 Patent and the ‘441 Patent during prosecution of the ‘895 Patent.

1100. The ‘330 Patent discloses a method of forming 3D objects using an apparatus having every element of the apparatus in claim 1 of the ‘895 Patent. In a reservoir-based stereolithography system like that of the ‘330 Patent, where the resin sits in an open container exposed to ambient conditions for extended build times, using a polymerizable liquid having moisture insensitivity is particularly advantageous. The polymerizable liquid in Examples 34 and 35 of the ‘728 Patent, modified to use a blocked diisocyanate instead of a nonblocked diisocyanate, is moisture insensitive.

1101. The ‘441 Patent discloses using a semipermeable fluoroelastomer film having permeability to oxygen as a build surface thereby allowing oxygen to diffuse through the fluoroelastomer film to provide an inhibited surface of deformable composition at the interface between the film and the exposed photoformed layer. The inhibited composition at the fluoroelastomer film surface is a continuously maintained dead zone of polymerizable liquid in contact with the build surface.

1102. The ‘441 Patent discloses a region slightly further away from the interface between the film and the exposed photoformed layer where the concentration of inhibitor is lower. In this region, the degree of cross-linking increases as the concentration of inhibitor dissipates. Moving to regions further away from the interface, the degree of crosslinking increases. This gradual reduction in inhibitor concentration when moving away from the interface causes a gradual transition from deformable composition to photoformed layer

1103. As shown in the claim chart below, the ‘728 Patent combined with the ‘330 Patent and the ‘441 Patent discloses every limitation of Claim 1 of the ‘895 Patent.

| U.S. PATENT NO. 12,629,895, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT AND THE '441 PATENT | |
|---|---|
| **U.S. PATENT NO. 12,629,895** | **THE '728 PATENT IN VIEW OF THE '330 PATENT AND THE '441 PATENT** |
| A method of forming a three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof, said method comprising: | The '728 Patent discloses "a method of forming a three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof."<br><br>'728 Patent, 143:42 – 147:32. |
| (a) providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween | The '330 Patent discloses "providing a carrier and an optically transparent member having a build surface, said carrier and said build surface defining a build region therebetween"<br><br>The '330 Patent discloses a build platform 74 as a carrier and a solidification substrate 79a with an elastomeric translucent layer 80a as an optically transparent member having a build surface, and the build region between the carrier and the build surface.<br><br>'330 Patent, Figs. 2A & 2B, 3, 12:46-56, 10:48-11:55. |
| (b) filling said build region with a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, and (iii) a blocked or reactive blocked chain extender; | The '728 Patent discloses "filling said build region with a polymerizable liquid, said polymerizable liquid comprising at least one of: (i) a blocked or reactive blocked prepolymer, (ii) a blocked or reactive blocked diisocyanate, and (iii) a blocked or reactive blocked diisocyanate chain extender".<br><br>The '728 Patent disclose UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold) in molds, which serve as the build region. The chain-extended PFPE diisocyanate and PFPE tetrol (the thermal curing second component) are physically |

| U.S. PATENT NO. 12,629,895, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT AND THE '441 PATENT | |
|---|---|
| **U.S. PATENT NO. 12,629,895** | **THE '728 PATENT IN VIEW OF THE '330 PATENT AND THE '441 PATENT** |
| | entangled in an uncured state in the rubbery photocured matrix.<br><br>'728 Patent, 143:49-144:28.<br><br>The '728 Patent discloses replacing a diisocyanate component with a blocked diisocyanate to remove moisture sensitivity from a polymerizable liquid. The blocked group cleaves as high temperature and reforms isocyanate.<br><br>'728 Patent, 51:1-7. |
| (c) irradiating said build region with light through said optically transparent member to form a solid blocked polymer scaffold and advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said at least one of said blocked or reactive blocked prepolymer, blocked or reactive blocked diisocyanate, and blocked or reactive blocked chain extender; wherein said irradiating and/or said advancing steps are carried out while also concurrently: | The '728 Patent discloses "irradiating said build region with light through said optically transparent member to form a solid blocked polymer scaffold and advancing said carrier away from said build surface to form a three-dimensional intermediate having the same shape as, or a shape to be imparted to, said three-dimensional object, with said intermediate containing said at least one of said blocked or reactive blocked prepolymer, blocked or reactive blocked diisocyanate, and blocked or reactive blocked chain extender; wherein said irradiating and/or said advancing steps are carried out while also concurrently:"<br><br>The '728 Patent discloses UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold). The diisocyanate can be modified to be a blocked diisocyanate that cleaves at high temperature. The chain-extended PFPE blocked diisocyanate and PFPE tetrol (the thermal curing second component) |

| U.S. PATENT NO. 12,629,895, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT AND THE '441 PATENT | |
|---|---|
| **U.S. PATENT NO. 12,629,895** | **THE '728 PATENT IN VIEW OF THE '330 PATENT AND THE '441 PATENT** |
| | are physically entangled in an uncured state in the rubbery photocured matrix.<br><br>'728 Patent, 143:49-144:28; 51:1-7.<br><br>The '330 Patent discloses projecting solidification energy through the transparent solidification substrate 79a to polymerize the solidifiable material 92 to form a three-dimensional object 78 and moving the build platform 74 upward away from the solidification substrate 79a to allow the object 78 being formed to continue to grow according to the pattern being projected to the build region.<br><br>'330 Patent,13:64 - 14:20. |
| (i) continuously maintaining a dead zone of polymerizable liquid in contact with said build surface, and | The '441 Patent discloses "(i) continuously maintaining a dead zone of polymerizable liquid in contact with said build surface."<br><br>The '441 Patent discloses using a fluoroelastomer film having permeability to oxygen as a build surface thereby allowing oxygen to diffuse through the fluoroelastomer film to provide an inhibited surface of deformable composition at the interface between the film and the exposed photoformed layer. The inhibited composition at the fluoroelastomer film surface is a continuously maintained dead zone of polymerizable liquid in contact with the build surface.<br><br>'441 Patent, 17:10-25. |
| (ii) continuously maintaining a gradient of polymerization zone between said dead zone and said solid blocked polymer scaffold and in contact with each thereof, said gradient of polymerization zone comprising said | The '441 Patent discloses "(ii) continuously maintaining a gradient of polymerization zone between said dead zone and said solid blocked polymer scaffold and in contact with each thereof, said gradient of polymerization zone comprising said polymerizable liquid in |

| U.S. PATENT NO. 12,629,895, CLAIM 1 COMPARED TO THE '728 PATENT IN VIEW OF THE '330 PATENT AND THE '441 PATENT | |
|---|---|
| **U.S. PATENT NO. 12,629,895** | **THE '728 PATENT IN VIEW OF THE '330 PATENT AND THE '441 PATENT** |
| polymerizable liquid in partially cured form; and then | partially cured form."<br><br>The '441 Patent discloses a region slightly further away from the interface between the film and the exposed photoformed layer where the concentration of inhibitor is lower. In this region, the degree of cross-linking increases as the concentration of inhibitor dissipates. Moving to regions further and further away from the interface, the degree of crosslinking increases. This gradual reduction in inhibitor concentration when moving away from the interface causes a gradual transition from deformable composition to photoformed layer.<br><br>'441 Patent, 13:48 – 14:20. |
| (d) heating or microwave irradiating said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof | The '728 Patent discloses "heating or microwave irradiating said three-dimensional intermediate sufficiently to form from said three-dimensional intermediate said three-dimensional object comprised of polyurethane, polyurea, or copolymer thereof."<br><br>The '728 Patent discloses heating the thermally curable material physically entangled in the stacked layers of photocured matrix material to form the three-dimensional microfluidic device.<br><br>'728 Patent, 143:65 – 144:29. |

1104. The claim chart comparing Claim 1 of the '895 Patent to disclosure in the '728 Patent, the '330 Patent, and the '441 Patent shows that the '330 Patent discloses every apparatus element of claim 1, the '441 Patent discloses the dead zone and the gradient of polymerization zone, and that the '728 Patent discloses every element of the polymerizable liquid. The '330 Patent discloses a build platform as a carrier and a solidification substrate with an elastomeric translucent layer as an optically transparent member having a build surface. A build region is

between the build platform and the solidification substrate with an elastomeric translucent layer.

1106. The ‘441 Patent discloses using a fluoroelastomer film having permeability to oxygen as a build surface thereby allowing oxygen to diffuse through the fluoroelastomer film to provide an inhibited surface of deformable composition at the interface between the film and the exposed photoformed layer. The inhibited composition at the fluoroelastomer film surface is a continuously maintained dead zone of polymerizable liquid in contact with the build surface.

1107. The ‘441 Patent also discloses a region slightly further away from the interface between the film and the exposed photoformed layer where the concentration of inhibitor is lower. In this region, the degree of cross-linking increases as the concentration of inhibitor dissipates. This gradual reduction in inhibitor concentration when moving away from the interface causes a gradual transition from deformable composition to photoformed layer which creates a gradient of polymerization zone.

1108. The ‘728 Patent discloses UV curing a polymerizable liquid comprising chain-extended PFPE dimethacrylate as the UV curing first component and chain-extended PFPE diisocyanate and PFPE tetrol as the thermal curing second component to form a rubbery layer-shaped photocured matrix (solid polymer scaffold). The ‘728 Patent discloses a blocked diisocyanate that cleaves at high temperature and provides moisture insensitivity. Replacing the chain-extended PFPE diisocyanate with a chain-extended PFPE blocked diisocyanate makes the composition less likely to be sensitive to moisture, which is advantageous for 3D printing applications. Upon UV curing the polymerizable liquid, the chain-extended PFPE dimethacrylate cross-links to form a solid polymer scaffold. In Example 34, the layers of solid polymer scaffold are stacked and the chain-extended PFPE blocked diisocyanate and PFPE tetrol (the thermal curing second component) are physically entangled in an uncured state in the stacked UV cured matrix. When the stacked layers are thermally cured, the isocyanate ends of the PFPE diisocyanate react with the hydroxyl ends of the PFPE tetrol to form a urethane bond tying the chains into a mechanically stable network. Numerous urethane bonds are present in the mechanically stable network, thus forming a three-dimensional object comprised of polyurethane.

1109. The ‘728 Patent, the ‘330 Patent, and the 441 Patent disclose every limitation of

claim 1 of the '895 Patent. The '728 Patent, the '330 Patent, and the '441 Patent are but-for material to at least claim 1 of the '895 Patent. **DeSimone Recognized Materiality Of The '728 Patent**

1110. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the '728 Patent to the claims of the '895 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

1111. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone recognized the materiality of the '728 Patent to the claims of the '895 Patent because, on information and belief, Fed. R. Civ. Proc. 11(b)(3), he was actively involved in the preparation of and prosecution of the '728 Patent and actively involved in preparation and prosecution of the '880 Patent, and DeSimone is a named inventor on the '895 Patent so he knew what is described in the specification and he knew what was being claimed in the '895 Patent.

**f. Rolland Recognized Materiality Of The '728 Patent**

1112. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to patentability for at least one claim of the '895 Patent because he is a named inventor on the '895 Patent so he knew and understood what was disclosed in the '728 Patent and what was claimed in the '895 Patent.

1113. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland recognized that the '728 Patent was material to the patentability of at least one claim of the '895 Patent because he selectively disclosed references to the Patent Office that were not but for material or were not prior art, but withheld the '728 Patent

**g. DeSimone Intended To Deceive The Patent Office By Not Disclosing The '728 Patent**

1114. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the

Patent Office, like the ‘728 Patent.

1115. On information and belief, Fed. R. Civ. Proc. 11(b)(3), DeSimone specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the ‘728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the ‘895 Patent.

**h. Rolland Intended To Deceive The Patent Office By Not Disclosing The ‘728 Patent**

1116. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office, and he directed, reviewed, and supervised the submission of over 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, the ‘728 Patent.

1117. On information and belief, Fed. R. Civ. Proc. 11(b)(3), Rolland specifically intended to deceive the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while intentionally withholding the ‘728 Patent from the Patent Office because he knew it was but-for material to at least one claim of the ‘895 Patent.

**i. Lawyers Who Owed A Duty Of Candor And Good Faith To The Patent Office**

1118. Pursuant to 37 C.F.R. §1.56, each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Patent Office, which includes a duty to disclose to the Patent Office all information known to that individual to be material to patentability.

1119. Lori Herman was an attorney who was responsible for prosecution of the ‘895 Patent. Herman joined Defendant in April 2023 as Senior Counsel – Intellectual Property and moved to her role as Assistant General Counsel – IP in June 2024. Herman owed a duty of disclosure to the Patent Office.

1120. Sherry Murphy was an attorney who prosecuted the ‘895 Patent. Murphy owed a

duty of disclosure to the Patent Office.

## V. LEGAL CLAIMS[186]

### A. The '601 Patent

#### 1. Legal Claim I Non-Infringement Of The '601 Patent

1121. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1122. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '601 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '601 Patent.

1123. Defendant cannot carry its burden that Plaintiff has infringed the '601 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1124. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '601 Patent.

1125. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '601 Patent.

#### 2. Legal Claim II Invalidity Of Claims Of The '601 Patent

1126. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1127. One or more of the claims of the '601 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1128. One or more of the claims of the '601 Patent are invalid at least under 35 U.S.C. 103 by the '330 Patent in view of the '441 Patent.

---

[186] For brevity, Plaintiff does not repeat the phrase "on information and belief, Fed. R. Civ. Proc. 11(b)(3)," each time an assertion is realleged in the Legal Claims section below. To the extent any assertion was pled on information and belief elsewhere in this Amended Complaint, it is likewise pled on information and belief here in the Legal Claims section.

### B. The '142 Patent

#### 1. Legal Claim III
#### Non-Infringement Of The '142 Patent

1129. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1130. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '142 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '142 Patent.

1131. Defendant cannot carry its burden that Plaintiff has infringed the '142 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1132. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '142 Patent.

1133. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '142 Patent.

#### 2. Legal Claim IV
#### Invalidity Of Claims Of The '142 Patent

1134. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1135. One or more of the claims of the '142 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1136. One or more of the claims of the '142 Patent are invalid at least under 35 U.S.C. 102 or 103 by Velankar.

### C. The '920 Patent

#### 1. Legal Claim V
#### Non-Infringement Of The '920 Patent

1137. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1138. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the ‘920 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the ‘920 Patent.

1139. Defendant cannot carry its burden that Plaintiff has infringed the ‘920 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1140. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the ‘920 Patent.

1141. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the ‘920 Patent.

**2. Legal Claim VI**
**Invalidity Of Claims Of The ‘920 Patent**

Invalidity Of Claims Of The ‘920 Patent

1142. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1143. One or more of the claims of the ‘920 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1144. One or more of the claims of the ‘920 Patent are invalid at least under 35 U.S.C. 103 by the ‘330 Patent in view of the ‘441 Patent.

**D. <u>The ‘606 Patent</u>**

**1. Legal Claim VII**
**Non-Infringement Of The ‘606 Patent**

1145. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1146. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the ‘606 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the ‘606 Patent.

1147. Defendant cannot carry its burden that Plaintiff has infringed the ‘606 Patent either

literally or under the doctrine of equivalents and either directly or indirectly.

1148. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '606 Patent.

1149. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '606 Patent.

#### 2. Legal Claim VIII
#### Invalidity Of Claims Of The '606 Patent

1150. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1151. One or more of the claims of the '606 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1152. One or more of the claims of the '606 Patent are invalid at least under 35 U.S.C. 103 by Velankar in view of the '330 Patent.

### E. <u>The '963 Patent</u>

#### 1. Legal Claim IX
#### Non-Infringement Of The '963 Patent

1153. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein

1154. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '963 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '963 Patent.

1155. Defendant cannot carry its burden that Plaintiff has infringed the '963 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1156. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '963 Patent.

1157. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold,

offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the ‘963 Patent.

**2. Legal Claim X**
**Invalidity Of Claims Of The ‘963 Patent**

1158. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1159. One or more of the claims of the ‘963 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

**a. Invalidity based on the ‘728 Patent**

1160. One or more of the claims of the ‘963 Patent are invalid at least under 35 U.S.C. 103 by the ‘728 Patent in view of the ‘330 Patent.

1161. DeSimone intentionally withheld disclosure of the ‘728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the ‘728 Patent.

1162. Rolland intentionally withheld disclosure of the ‘728 Patent from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose the ‘728 Patent.

**b. Invalidity based on Rolland ‘133**

1163. One or more of the claims of the ‘963 Patent are invalid at least under 35 U.S.C. 103 by Rolland ‘133 in view of the ‘330 Patent.

1164. DeSimone intentionally withheld disclosure of Rolland ‘133 from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose Rolland ‘133.

1165. Rolland intentionally withheld disclosure of Rolland ‘133 from the Patent Office at least when he selectively disclosed other references that were not but-for material or were not prior art while simultaneously failing to disclose Rolland ‘133.

**3. Legal Claim XI**
**Unenforceability Of The ‘963 Patent For Inequitable Conduct**

1166. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation

contained in Paragraphs 1 - 1120 as if fully set forth herein.

1167. The ‘963 Patent is unenforceable for inequitable conduct.

**a. The ‘728 Patent Was But-For Material To The ‘963 Patent**

1168. The ‘728 Patent is prior art to the ‘963 Patent under 35 U.S.C. §102(a)(1) because the ‘728 Patent was published before the effective filing date of the ‘963 Patent.

1169. The ‘728 Patent was But-For Material to the ‘963 Patent.

1170. Applying the preponderance of the evidence standard and giving the claims their broadest reasonable construction, the Patent Office would not have allowed at least Claim 1 of the ‘963 Patent had it been aware of the ‘728 Patent at least because:

a. The Patent Office rejected Claim 28 of the ‘550 Application, which was a claim substantively matching Claim 1 of the ‘963 Patent, as anticipated by disclosure copied from the ‘728 Patent, and

b. The ‘728 Patent discloses elements identified by the Examiner in the ‘963 Patent as the basis for allowance of Claim 1.

1171. The ‘728 Patent was never disclosed to the Patent Office during prosecution of the ‘963 Patent.

**b. Rolland ‘133 Was But-For Material To The ‘963 Patent**

1172. Rolland ‘133 is prior art to the ‘963 Patent under 35 U.S.C. §102(a)(1) because Rolland ‘133 was published before the effective filing date of the ‘963 Patent.

1173. Rolland ‘133 Was But-For Material to the ‘963 Patent.

1174. Applying the preponderance of the evidence standard and giving the claims their broadest reasonable construction, the Patent Office would not have allowed at least Claim 1 of the ‘963 Patent had it been aware of Rolland ‘133 at least because:

a. The Patent Office rejected Claim 28 of the ‘550 Patent, a claim substantively matching Claim 1 of the ‘963 Patent, as anticipated by Rolland ‘133, and

b. Rolland ‘133 discloses elements identified by the Examiner in the ‘963 Patent as the basis for allowance of Claim 1.

1175. Rolland '133 was never disclosed to the Patent Office during prosecution of the '963 Patent.

**c. DeSimone Specifically Intended To Deceive The Patent Office**

1176. DeSimone knew of the '728 Patent, knew that it was material to the '963 Patent, and made a deliberate decision to withhold the '728 Patent from the Patent Office during prosecution of the '963 Patent.

**i. DeSimone Owed A Duty To The Patent Office**

1177. DeSimone owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '963 Patent.

**ii. DeSimone Knew About The '728 Patent**

1178. DeSimone knew about the '728 Patent because he was a named co-inventor on the '728 Patent.

**iii. DeSimone Recognized The Materiality Of The '728 Patent**

1179. DeSimone recognized the materiality of the '728 Patent to the claims of the '963 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

a. DeSimone directed the patent attorney for Defendant to submit at least 400 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

b. At least twenty of these references named DeSimone as an inventor so he reasonably knew what they disclosed, and at least ten of those references were not prior art to the '963 Patent.

1180. DeSimone recognized the materiality of the '728 Patent to the claims of the '963 Patent because he was a named inventor on the '728 Patent, he was actively involved in the

preparation of and prosecution of the '728 Patent, he was a named inventor on the '963 Patent, and he was actively involved in preparation and prosecution of the '963 Patent. DeSimone knew what was described and claimed in the '728 Patent and the '963 Patent.

**iv. DeSimone Deliberately Withheld The '728 Patent From The Patent Office**

1181. DeSimone deliberately withheld the '728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

1182. DeSimone, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '963 Patent and intentionally chose not to include the '728 Patent

**d. DeSimone Specifically Intended To Deceive The Patent Office**

1183. DeSimone knew of Rolland '133, knew that it was material to the '963 Patent, and made a deliberate decision to withhold Rolland '133 from the Patent Office during prosecution of the '963 Patent.

**i. DeSimone Owed A Duty To The Patent Office**

1184. DeSimone owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '963 Patent.

**ii. DeSimone Knew About Rolland '133**

1185. DeSimone knew about Rolland '133 because he co-founded Liquidia Technologies and was an officer at Liquidia Technologies when Rolland '133 was prepared and prosecuted. DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, DeSimone approved the preparation and filing of the application published as Rolland '133.

**iii. DeSimone Recognized The Materiality of Rolland '133**

1186. DeSimone recognized the materiality of Rolland '133 to the claims of the '963

Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland '133 from the Patent Office.

a. DeSimone directed the patent attorney for Defendant to submit at least 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

b. At least twenty of these references named DeSimone as an inventor so he reasonably knew what they disclosed, and at least ten of those references were not prior art to the '963 Patent.

1187. DeSimone recognized the materiality of Rolland '133 to the claims of the '963 Patent because he was actively involved in the preparation of and prosecution of Rolland '133, he was a named inventor on the '963 Patent, and he was actively involved in preparation and prosecution of the '963 Patent. DeSimone knew what was described and claimed in Rolland '133 and the '963 Patent.

**iv. DeSimone Deliberately Withheld Rolland '133 From The Patent Office**

1188. DeSimone deliberately withheld Rolland '133 from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland '133 from the Patent Office.

1189. DeSimone, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '963 Patent and intentionally chose not to include Rolland '133.

**e. Rolland Specifically Intended To Deceive The Patent Office**

1190. Rolland knew of the '728 Patent, knew that it was material to the '963 Patent, and made a deliberate decision to withhold the '728 Patent from the Patent Office during prosecution of the '963 Patent.

**i. Rolland Owed A Duty To The Patent Office**

1191. Rolland owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '963 Patent.

**ii. Rolland Knew About The '728 Patent**

1192. Rolland knew about the '728 Patent because he was a named co-inventor on the '728 Patent.

**iii. Rolland Recognized The Materiality Of The '728 Patent**

1193. Rolland recognized the materiality of the '728 Patent to the claims of the '963 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

a. Rolland directed the patent attorney for Defendant to submit at least 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

b. At least eight of these references named Rolland as an inventor so he reasonably knew what they disclosed, and at least a portion of those references were not prior art to the '963 Patent.

1194. Rolland recognized the materiality of the '728 Patent to the claims of the '963 Patent because he was a named inventor on the '728 Patent, he was actively involved in the preparation of and prosecution of the '728 Patent, he was a named inventor on the '963 Patent, and he was actively involved in preparation and prosecution of the '963 Patent. Rolland knew what was described and claimed in the '728 Patent and the '963 Patent.

**iv. Rolland Deliberately Withheld The '728 Patent From The Patent Office**

1195. Rolland deliberately withheld the '728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those

references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

1196. Rolland, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the ‘963 Patent and intentionally chose not to include the ‘728 Patent

**f. Rolland Specifically Intended To Deceive The Patent Office**

1197. Rolland knew of Rolland ‘133, knew that it was material to the ‘963 Patent, and made a deliberate decision to withhold Rolland ‘133 from the Patent Office during prosecution of the ‘963 Patent.

**i. Rolland Owed A Duty To The Patent Office**

1198. Rolland owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the ‘963 Patent.

**ii. Rolland Knew About Rolland ‘133**

1199. Rolland knew about Rolland ‘133 because he was the sole named inventor for Rolland ‘133. On information and belief, Rolland approved the preparation and filing of the application published as Rolland ‘133.

**iii. Rolland Recognized The Materiality of Rolland ‘133**

1200. Rolland recognized the materiality of Rolland ‘133 to the claims of the ‘963 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland ‘133 from the Patent Office.

a. Rolland directed the patent attorney for Defendant to submit at least 400 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland ‘133.

b. At least eight of these references named Rolland as an inventor so he reasonably knew what they disclosed, and at least a portion of those

references were not prior art to the '963 Patent.

1201. Rolland recognized the materiality of Rolland '133 to the claims of the '963 Patent because he was a named inventor on Rolland '133, he was actively involved in the preparation of and prosecution of Rolland '133, he was a named inventor on the '963 Patent, and he was actively involved in preparation and prosecution of the '963 Patent. Rolland knew what was described and claimed in Rolland '133 and the '963 Patent.

**iv. Rolland Deliberately Withheld Rolland '133 From The Patent Office**

1202. Rolland deliberately withheld Rolland '133 from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland '133 from the Patent Office.

1203. Rolland, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '963 Patent and intentionally chose not to include Rolland '133.

**F. <u>The '164 Patent</u>**

**1. Legal Claim XII**
**Non-Infringement Of The '164 Patent**

1204. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein

1205. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '164 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '164 Patent.

1206. Defendant cannot carry its burden that Plaintiff has infringed the '164 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1207. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '164 Patent.

1208. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold,

offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the ‘164 Patent.

**2. Legal Claim XIII**
**Invalidity Of Claims Of The ‘164 Patent**

1209. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1210. One or more of the claims of the ‘164 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1211. One or more of the claims of the ‘164 Patent are invalid at least under 35 U.S.C. 102 or 103 by Velankar.

**G. <u>The ‘181 Patent</u>**

**1. Legal Claim XIV**
**Non-Infringement Of The ‘181 Patent**

1212. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1213. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the ‘181 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the ‘181 Patent.

1214. Defendant cannot carry its burden that Plaintiff has infringed the ‘181 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1215. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the ‘181 Patent.

1216. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the ‘181 Patent.

**2. Legal Claim XV**
**Invalidity Of Claims Of The ‘181 Patent**

1217. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1

- 1120 as if fully set forth herein.

1218. One or more of the claims of the '181 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1219. One or more of the claims of the '181 Patent are invalid at least under 35 U.S.C. 103 by the '330 Patent in view of the '441 Patent.

## H. The '066 Patent

### 1. Legal Claim XVI Non-Infringement Of The '066 Patent

1220. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1221. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '066 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '066 Patent.

1222. Defendant cannot carry its burden that Plaintiff has infringed the '066 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1223. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '066 Patent.

1224. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '066 Patent.

### 2. Legal Claim XVII Invalidity Of Claims Of The '066 Patent

1225. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1226. One or more of the claims of the '066 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1227. One or more of the claims of the '066 Patent are invalid at least under 35 U.S.C. 103 by the '330 Patent in view of Velankar.

### I. The '699 Patent

#### 1. Legal Claim XVIII Non-Infringement Of The '699 Patent

1228. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1229. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '699 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '699 Patent.

1230. Defendant cannot carry its burden that Plaintiff has infringed the '699 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1231. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '699 Patent.

1232. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '699 Patent.

#### 2. Legal Claim XIX Invalidity Of Claims Of The '699 Patent

1233. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1234. One or more of the claims of the '699 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1235. One or more of the claims of the '699 Patent are invalid at least under 35 U.S.C. 103 by the '330 Patent in view of the '441 Patent.

### J. The '880 Patent

#### 1. Legal Claim XX Non-Infringement Of The '880 Patent

1236. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1237. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '880 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '880 Patent.

1238. Defendant cannot carry its burden that Plaintiff has infringed the '880 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1239. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '880 Patent.

1240. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '880 Patent.

### 2. Legal Claim XXI
### Invalidity Of Claims Of The '880 Patent

1241. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1242. One or more of the claims of the '880 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1243. One or more of the claims of the '880 Patent are invalid at least under 35 U.S.C. 103 by the '728 Patent in view of the '330 Patent.

1244. DeSimone and Rolland are named inventors on the '728 Patent.

### 3. Legal Claim XXII
### Unenforceability Of The '880 Patent For Inequitable Conduct

1245. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1246. The '880 Patent is unenforceable for inequitable conduct.

#### a. The '728 Patent Was But-For Material To The '963 Patent

1247. The '728 Patent is prior art to the '880 Patent under 35 U.S.C. §102(a)(1) because the '728 Patent was published before the effective filing date of the '880 Patent.

1248. The '728 Patent was But-For Material to the '880 Patent.

1249. Applying the preponderance of the evidence standard and giving the claims their broadest reasonable construction, the Patent Office would not have allowed at least Claim 1 of the '963 Patent had it been aware of the '728 Patent at least because Example 34 of the '728 Patent in view of the description of blocked diisocyanate (21-140B) describes a polymerizable liquid comprising a blocked diisocyanate that forms a three dimensional intermediate containing the blocked diisocyanate and then heating the three-dimensional intermediate to form a three-dimensional object comprised of polyurethane.

1250. The '728 Patent was never disclosed to the Patent Office during prosecution of the '880 Patent.

**b. DeSimone Specifically Intended To Deceive The Patent Office**

1251. DeSimone knew of the '728 Patent, knew that it was material to the '880 Patent, and made a deliberate decision to withhold the '728 Patent from the Patent Office during prosecution of the '880 Patent.

**i. DeSimone Owed A Duty To The Patent Office**

1252. DeSimone owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '880 Patent.

**ii. DeSimone Knew About The '728 Patent**

1253. DeSimone knew about the '728 Patent because he was a named co-inventor on the '728 Patent.

**iii. DeSimone Recognized The Materiality Of The '728 Patent**

1254. DeSimone recognized the materiality of the '728 Patent to the claims of the '880 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

c. DeSimone directed the patent attorney for Defendant to submit at least 300 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for

materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

d. At least fifteen of these references named DeSimone as an inventor so he reasonably knew what they disclosed, and at least seven of those references were not prior art to the ‘880 Patent.

1255. DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘880 Patent because he was a named inventor on the ‘728 Patent, he was actively involved in the preparation of and prosecution of the ‘728 Patent, he was a named inventor on the ‘880 Patent, and he was actively involved in preparation and prosecution of the ‘880 Patent. DeSimone knew what was described and claimed in the ‘728 Patent and the ‘880 Patent.

#### iv. DeSimone Deliberately Withheld The ‘728 Patent From The Patent Office

1256. DeSimone deliberately withheld the ‘728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

1257. DeSimone, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the ‘880 Patent and intentionally chose not to include the ‘728 Patent.

### c. Rolland Specifically Intended To Deceive The Patent Office

1258. Rolland knew of the ‘728 Patent, knew that it was material to the ‘880 Patent, and made a deliberate decision to withhold the ‘728 Patent from the Patent Office during prosecution of the ‘880 Patent.

#### i. Rolland Owed A Duty To The Patent Office

1259. Rolland owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the ‘880 Patent.

**ii. Rolland Knew About The '728 Patent**

1260. Rolland knew about the '728 Patent because he was a named co-inventor on the '728 Patent.

**iii. Rolland Recognized The Materiality Of The '728 Patent**

1261. Rolland recognized the materiality of the '728 Patent to the claims of the '880 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

a. Rolland directed the patent attorney for Defendant to submit at least 300 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

b. At least eight of these references named Rolland as an inventor so he reasonably knew what they disclosed, and at least six of those references were not prior art to the '880 Patent.

1262. Rolland recognized the materiality of the '728 Patent to the claims of the '880 Patent because he was a named inventor on the '728 Patent, he was actively involved in the preparation of and prosecution of the '728 Patent, he was a named inventor on the '880 Patent, and he was actively involved in preparation and prosecution of the '880 Patent. Rolland knew what was described and claimed in the '728 Patent and the '880 Patent.

**iv. Rolland Deliberately Withheld The '728 Patent From The Patent Office**

1263. Rolland deliberately withheld the '728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

1264. Rolland, on information and belief, supervised and was substantially involved in

preparing all IDS submissions during prosecution of the ‘880 Patent and intentionally chose not to include the ‘728 Patent.

### K. The ‘856 Patent

#### 1. Legal Claim XXIII Non-Infringement Of The ‘856 Patent

1265. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1266. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the ‘856 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the ‘856 Patent.

1267. Defendant cannot carry its burden that Plaintiff has infringed the ‘856 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1268. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the ‘856 Patent.

1269. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the ‘856 Patent.

#### 2. Legal Claim XXIV Invalidity Of Claims Of The ‘856 Patent

1270. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1271. One or more of the claims of the ‘856 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1272. One or more of the claims of the ‘856 Patent are invalid at least under 35 U.S.C. 103 by the ‘330 Patent in view of the ‘441 Patent.

### L. <u>The '868 Patent</u>

#### 1. Legal Claim XXV Non-Infringement Of The '868 Patent

1273. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1274. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '868 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '868 Patent.

1275. Defendant cannot carry its burden that Plaintiff has infringed the '868 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1276. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '868 Patent.

1277. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '868 Patent.

#### 2. Legal Claim XXVI Invalidity Of Claims Of The '868 Patent

1278. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1279. One or more of the claims of the '868 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1280. One or more of the claims of the '868 Patent are invalid at least under 35 U.S.C. 103 by the '728 Patent in view of the '330 Patent.

1281. DeSimone and Rolland are named inventors on the '728 Patent.

#### 3. Legal Claim XXVII Unenforceability Of The '868 Patent For Inequitable Conduct

1282. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1283. The ‘868 Patent is unenforceable for inequitable conduct.

**a. The ‘728 Patent Was But-For Material To The ‘868 Patent**

1284. The ‘728 Patent is prior art to the ‘868 Patent under 35 U.S.C. §102(a)(1) because the ‘728 Patent was published before the effective filing date of the ‘868 Patent.

1285. The ‘728 Patent was But-For Material to the ‘868 Patent.

1286. Applying the preponderance of the evidence standard and giving the claims their broadest reasonable construction, the Patent Office would not have allowed at least Claim 1 of the ‘963 Patent had it been aware of the ‘728 Patent at least because:

a. The ‘728 Patent discloses elements identified by the Examiner in the Notice of Allowance for the ‘868 Patent as missing from the cited prior art.

b. The ‘728 Patent in Example 34 discloses forming a three dimensional object and describes that upon UV irradiation, the UV-curable component in the resin composition cures to form a solidified network, while the thermally curable component remains “entangled but unreacted” in that network. The phrase “entangled but unreacted” means that the thermally curable component or second solidifiable component was unsolidified after a UV curing step, as recited in claim 1 of the ‘868 Patent. Upon subsequent heating, the thermally curable component cures within the partially cured network, thereby forming a three-dimensional object.

1287. The ‘728 Patent was never disclosed to the Patent Office during prosecution of the ‘868 Patent.

**b. DeSimone’s Specifically Intended To Deceive The Patent Office**

1288. DeSimone knew of the ‘728 Patent, knew that it was material to the ‘868 Patent, and made a deliberate decision to withhold the ‘728 Patent from the Patent Office during prosecution of the ‘868 Patent.

**i. DeSimone Owed A Duty To The Patent Office**

1289. DeSimone owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the

‘868 Patent.

**ii. DeSimone Knew About The ‘728 Patent**

1290. DeSimone knew about the ‘728 Patent because he was a named co-inventor on the ‘728 Patent.

**iii. DeSimone Recognized The Materiality Of The ‘728 Patent**

1291. DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘868 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

a. DeSimone directed the patent attorney for Defendant to submit at least 320 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

b. At least seventeen of these references named DeSimone as an inventor so he reasonably knew what they disclosed, and at least seven of those references were not prior art to the dual cure chemistry of the ‘868 Patent.

1292. DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘868 Patent because he was a named inventor on the ‘728 Patent, he was actively involved in the preparation of and prosecution of the ‘728 Patent, he was a named inventor on the ‘868 Patent, and he was actively involved in preparation and prosecution of the ‘868 Patent. DeSimone knew what was described and claimed in the ‘728 Patent and the ‘868 Patent

**iv. DeSimone Deliberately Withheld The ‘728 Patent From The Patent Office**

1293. DeSimone deliberately withheld the ‘728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

1294. DeSimone, on information and belief, supervised and was substantially involved in

preparing all IDS submissions during prosecution of the ‘868 Patent and intentionally chose not to include the ‘728 Patent.

**c. Rolland’s Specifically Intended To Deceive The Patent Office**

1295. Rolland knew of the ‘728 Patent, knew that it was material to the ‘868 Patent, and made a deliberate decision to withhold the ‘728 Patent from the Patent Office during prosecution of the ‘868 Patent.

**i. Rolland Owed A Duty To The Patent Office**

1296. Rolland owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the ‘868 Patent.

**ii. Rolland Knew About The ‘728 Patent**

1297. Rolland knew about the ‘728 Patent because he was a named co-inventor on the ‘728 Patent.

**iii. Rolland Recognized The Materiality Of The ‘728 Patent**

1298. Rolland recognized the materiality of the ‘728 Patent to the claims of the ‘868 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

a. Rolland directed the patent attorney for Defendant to submit at least 320 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

b. At least twelve of these references named Rolland as an inventor so he reasonably knew what they disclosed, and at least nine of those references were not prior art to the dual cure chemistry of the ‘868 Patent.

1299. Rolland recognized the materiality of the ‘728 Patent to the claims of the ‘868

Patent because he was a named inventor on the '728 Patent, he was actively involved in the preparation of and prosecution of the '728 Patent, he was a named inventor on the '868 Patent, and he was actively involved in preparation and prosecution of the '868 Patent. Rolland knew what was described and claimed in the '728 Patent and the '868 Patent.

**iv. Rolland Deliberately Withheld The '728 Patent From The Patent Office**

1300. Rolland deliberately withheld the '728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

1301. Rolland, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '868 Patent and intentionally chose not to include the '728 Patent.

**M. <u>The '516 Patent</u>**

**1. Legal Claim XXVIII**
**Non-Infringement Of The '516 Patent**

1302. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1303. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '516 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '516 Patent.

1304. Defendant cannot carry its burden that Plaintiff has infringed the '516 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1305. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '516 Patent.

1306. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '516 Patent.

**2. Legal Claim XXIX**
**Invalidity Of Claims Of The '516 Patent**

1307. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1308. One or more of the claims of the '516 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1309. One or more of the claims of the '516 Patent are invalid at least under 35 U.S.C. 103 by the '330 Patent in view of the '441 Patent.

**N. <u>The '342 Patent</u>**

**1. Legal Claim XXX**
**Non-Infringement Of The '342 Patent**

1310. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1311. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '342 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '342 Patent.

1312. Defendant cannot carry its burden that Plaintiff has infringed the '342 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1313. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '342 Patent.

1314. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '342 Patent.

**2. Legal Claim XXXI**
**Invalidity Of Claims Of The '342 Patent**

1315. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1316. One or more of the claims of the '342 Patent are invalid at least under 35 U.S.C.

sections 101, 102, 103, and 112.

1317. One or more of the claims of the '342 Patent are invalid at least under 35 U.S.C. 103 by the '728 Patent in view of the '330 Patent.

1318. DeSimone and Rolland are named inventors on the '728 Patent.

1319. One or more of the claims of the '342 Patent are invalid at least under 35 U.S.C. 103 by Rolland '133 in view of the '330 Patent.

1320. Rolland is the sole named inventor on Rolland '133.

### 3. Legal Claim XXXII Unenforceability Of The '342 Patent For Inequitable Conduct

1321. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1322. The '342 Patent is unenforceable for inequitable conduct.

#### a. The '728 Patent Was But-For Material To The '342 Patent

1323. The '728 Patent is prior art to the '342 Patent under 35 U.S.C. §102(a)(1) because the '728 Patent was published before the effective filing date of the '342 Patent.

1324. The '728 Patent was But-For Material to the '342 Patent.

1325. Applying the preponderance of the evidence standard and giving the claims their broadest reasonable construction, the Patent Office would not have allowed at least Claim 1 of the '342 Patent had it been aware of the '728 Patent at least because the Patent Office rejected Claim 28 of the '550 Application, which was a claim substantively matching Claim 1 of the '963 Patent, as anticipated by disclosure copied from the '728 Patent.

1326. The '728 Patent was never disclosed to the Patent Office during prosecution of the '342 Patent.

#### b. Rolland '133 Was But-For Material To The '342 Patent

1327. Rolland '133 is prior art to the '342 Patent under 35 U.S.C. §102(a)(1) because Rolland '133 was published before the effective filing date of the '342 Patent.

1328. Rolland '133 Was But-For Material to the '342 Patent.

1329. Applying the preponderance of the evidence standard and giving the claims their

broadest reasonable construction, the Patent Office would not have allowed at least Claim 1 of the '342 Patent had it been aware of Rolland '133 at least because The Patent Office rejected Claim 28 of the '550 Patent, a claim substantively matching Claim 1 of the '342 Patent, as anticipated by Rolland '133.

1330. Rolland '133 was never disclosed to the Patent Office during prosecution of the '342 Patent.

**c. DeSimone Specifically Intended To Deceive The Patent Office**

1331. DeSimone knew of the '728 Patent, knew that it was material to the '342 Patent, and made a deliberate decision to withhold the '728 Patent from the Patent Office during prosecution of the '342 Patent.

**i. DeSimone Owed A Duty To The Patent Office**

1332. DeSimone owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '342 Patent.

**ii. DeSimone Knew About The '728 Patent**

1333. DeSimone knew about the '728 Patent because he was a named co-inventor on the '728 Patent.

**iii. DeSimone Recognized The Materiality Of The '728 Patent**

1334. DeSimone recognized the materiality of the '728 Patent to the claims of the '342 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

a. DeSimone directed the patent attorney for Defendant to submit at least 350 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

b. At least twenty-seven of these references named DeSimone as an inventor so he reasonably knew what they disclosed, and at least nine of those references were not prior art to the '342 Patent.

1335. DeSimone recognized the materiality of the '728 Patent to the claims of the '342 Patent because he was a named inventor on the '728 Patent, he was actively involved in the preparation of and prosecution of the '728 Patent, he was a named inventor on the '342 Patent, and he was actively involved in preparation and prosecution of the '342 Patent. DeSimone knew what was described and claimed in the '728 Patent and the '342 Patent.

**iv. DeSimone Deliberately Withheld The '728 Patent From The Patent Office**

1336. DeSimone deliberately withheld the '728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

1337. DeSimone, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '342 Patent and intentionally chose not to include the '728 Patent.

**d. DeSimone Specifically Intended To Deceive The Patent Office**

1338. DeSimone knew of Rolland '133, knew that it was material to the '342 Patent, and made a deliberate decision to withhold Rolland '133 from the Patent Office during prosecution of the '342 Patent.

**i. DeSimone Owed A Duty To The Patent Office**

1339. DeSimone owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '342 Patent.

**ii. DeSimone Knew About Rolland '133**

1340. DeSimone knew about Rolland '133 because he co-founded Liquidia Technologies and was an officer at Liquidia Technologies when Rolland '133 was prepared and prosecuted.

DeSimone has stated that he personally engages with the patent process at a detailed level. On information and belief, DeSimone approved the preparation and filing of the application published as Rolland ‘133.

**iii. DeSimone Recognized The Materiality of Rolland ‘133**

1341. DeSimone recognized the materiality of Rolland ‘133 to the claims of the ‘342 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland ‘133 from the Patent Office.

a. DeSimone directed the patent attorney for Defendant to submit at least 350 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland ‘133.

b. At least twenty-seven of these references named DeSimone as an inventor so he reasonably knew what they disclosed, and at least nine of those references were not prior art to the ‘342 Patent.

1342. DeSimone recognized the materiality of Rolland ‘133 to the claims of the ‘342 Patent because he disclosed Rolland ‘133 inconsistently in related applications. DeSimone disclosed Rolland ‘133 in the parent and grandparent applications to the ‘342 Patent but chose to withhold disclosure of Rolland ‘133 in the ‘342 Patent.

1343. DeSimone recognized the materiality of Rolland ‘133 to the claims of the ‘342 Patent because he was actively involved in the preparation of and prosecution of Rolland ‘133, he was a named inventor on the ‘342 Patent, and he was actively involved in preparation and prosecution of the ‘342 Patent. DeSimone knew what was described and claimed in Rolland ‘133 and the ‘342 Patent.

**iv. DeSimone Deliberately Withheld Rolland '133 From The Patent Office**

1344. DeSimone deliberately withheld Rolland '133 from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland '133 from the Patent Office.

1345. DeSimone deliberately withheld Rolland '133 from the Patent Office because he disclosed Rolland '133 inconsistently in related applications. DeSimone disclosed Rolland '133 in the parent and grandparent applications to the '342 Patent but chose to withhold disclosure of Rolland '133 in the '342 Patent.

1346. DeSimone, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '342 Patent and intentionally chose not to include Rolland '133.

**e. Rolland Specifically Intended To Deceive The Patent Office**

1347. Rolland knew of the '728 Patent, knew that it was material to the '342 Patent, and made a deliberate decision to withhold the '728 Patent from the Patent Office during prosecution of the '342 Patent.

**i. Rolland Owed A Duty To The Patent Office**

1348. Rolland owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '342 Patent.

**ii. Rolland Knew About The '728 Patent**

1349. Rolland knew about the '728 Patent because he was a named co-inventor on the '728 Patent.

**iii. Rolland Recognized The Materiality Of The '728 Patent**

1350. Rolland recognized the materiality of the '728 Patent to the claims of the '342 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding

the ‘728 Patent from the Patent Office.

a. Rolland directed the patent attorney for Defendant to submit at least 350 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

b. At least seven of these references named Rolland as an inventor so he reasonably knew what they disclosed, and at least seven of those references were not prior art to the ‘342 Patent.

1351. Rolland recognized the materiality of the ‘728 Patent to the claims of the ‘342 Patent because he was a named inventor on the ‘728 Patent, he was actively involved in the preparation of and prosecution of the ‘728 Patent, he was a named inventor on the ‘342 Patent, and he was actively involved in preparation and prosecution of the ‘342 Patent. Rolland knew what was described and claimed in the ‘728 Patent and the ‘342 Patent.

**iv. Rolland Deliberately Withheld The ‘728 Patent From The Patent Office**

1352. Rolland deliberately withheld the ‘728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

1353. Rolland, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the ‘342 Patent and intentionally chose not to include the ‘728 Patent.

**f. Rolland Specifically Intended To Deceive The Patent Office**

1354. Rolland knew of Rolland ‘133, knew that it was material to the ‘342 Patent, and made a deliberate decision to withhold Rolland ‘133 from the Patent Office during prosecution of the ‘342 Patent.

**i. Rolland Owed A Duty To The Patent Office**

1355. Rolland owed a duty to disclose to the Patent Office all information known to him

to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '342 Patent.

**ii. Rolland Knew About Rolland '133**

1356. Rolland knew about Rolland '133 because he was the sole named inventor for Rolland '133. On information and belief, Rolland approved the preparation and filing of the application published as Rolland '133.

**iii. Rolland Recognized The Materiality of Rolland '133**

1357. Rolland recognized the materiality of Rolland '133 to the claims of the '342 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland '133 from the Patent Office.

a. Rolland directed the patent attorney for Defendant to submit at least 350 references to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like Rolland '133.

b. At least seven of these references named Rolland as an inventor so he reasonably knew what they disclosed, and at least seven of those references were not prior art to the '342 Patent.

1358. Rolland recognized the materiality of Rolland '133 because he disclosed Rolland '133 inconsistently in related applications. DeSimone disclosed Rolland '133 in the parent and grandparent applications to the '342 Patent but chose to withhold disclosure of Rolland '133 in the '342 Patent.

1359. Rolland recognized the materiality of Rolland '133 to the claims of the '342 Patent because he was a named inventor on Rolland '133, he was actively involved in the preparation of and prosecution of Rolland '133, he was a named inventor on the '342 Patent, and he was actively involved in preparation and prosecution of the '342 Patent. Rolland knew what was described and claimed in Rolland '133 and the '342 Patent.

**iv. Rolland Deliberately Withheld Rolland '133 From The Patent Office**

1360. Rolland deliberately withheld Rolland '133 from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding Rolland '133 from the Patent Office.

1361. Rolland deliberately withheld Rolland '133 from the Patent Office because he disclosed Rolland '133 inconsistently in related applications. DeSimone disclosed Rolland '133 in the parent and grandparent applications to the '342 Patent but chose to withhold disclosure of Rolland '133 in the '342 Patent.

1362. Rolland, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '342 Patent and intentionally chose not to include Rolland '133.

**O. <u>The '073 Patent</u>**

**1. Legal Claim XXXIII
Non-Infringement Of The '073 Patent**

1363. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1364. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '073 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '073 Patent.

1365. Defendant cannot carry its burden that Plaintiff has infringed the '073 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1366. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '073 Patent.

1367. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '073 Patent.

**2. Legal Claim XXXIV**
**Invalidity Of Claims Of The '073 Patent**

1368. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1369. One or more of the claims of the '073 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1370. One or more of the claims of the '073 Patent are invalid at least under 35 U.S.C. 103 by the '330 Patent in view of the '441 Patent and Velankar.

**P. The '895 Patent**

**1. Legal Claim XXXV**
**Non-Infringement Of The '895 Patent**

1371. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1372. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '895 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '895 Patent.

1373. Defendant cannot carry its burden that Plaintiff has infringed the '895 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1374. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '895 Patent.

1375. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process within the scope of any claim of the '895 Patent.

**2. Legal Claim XXXVI**
**Invalidity Of Claims Of The '895 Patent**

1376. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1377. One or more of the claims of the '895 Patent are invalid at least under 35 U.S.C.

sections 101, 102, 103, and 112.

1378. One or more of the claims of the ‘895 Patent are invalid at least under 35 U.S.C. 103 by the ‘728 Patent in view of the ‘330 Patent and the ‘441 Patent.

1379. DeSimone and Rolland are named inventors on the ‘728 Patent.

### 3. Legal Claim XXXVII Unenforceability Of The ‘895 Patent For Inequitable Conduct

1380. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1381. The ‘895 Patent is unenforceable for inequitable conduct.

#### a. The ‘728 Patent Was But-For Material To The ‘895 Patent

1382. The ‘728 Patent is prior art to the ‘895 Patent under 35 U.S.C. §102(a)(1) because the ‘728 Patent was published before the effective filing date of the ‘895 Patent.

1383. The ‘728 Patent was But-For Material to the ‘895 Patent.

1384. Applying the preponderance of the evidence standard and giving the claims their broadest reasonable construction, the Patent Office would not have allowed at least Claim 1 of the ‘895 Patent had it been aware of the ‘728 Patent at least because Example 34 of the ‘728 Patent in view of the description of blocked diisocyanate (21-140B) describes a polymerizable liquid comprising a blocked diisocyanate that forms a three dimensional intermediate containing the blocked diisocyanate and then heating the three-dimensional intermediate to form a three-dimensional object comprised of polyurethane.

1385. The ‘728 Patent was never disclosed to the Patent Office during prosecution of the ‘895 Patent.

#### b. DeSimone’s Specifically Intended To Deceive The Patent Office

1386. DeSimone knew of the ‘728 Patent, knew that it was material to the ‘895 Patent, and made a deliberate decision to withhold the ‘728 Patent from the Patent Office during prosecution of the ‘895 Patent.

##### i. DeSimone Owed A Duty To The Patent Office

1387. DeSimone owed a duty to disclose to the Patent Office all information known to

him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the ‘895 Patent.

**ii. DeSimone Knew About The ‘728 Patent**

1388. DeSimone knew about the ‘728 Patent because he was a named co-inventor on the ‘728 Patent.

**iii. DeSimone Recognized The Materiality Of The ‘728 Patent**

1389. DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘895 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from the Patent Office.

a. DeSimone directed the patent attorney for Defendant to submit at least 500 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the ‘728 Patent.

b. At least forty-two of these references named DeSimone as an inventor or author so he reasonably knew what they disclosed, and at least eighteen of those references were not prior art to the ‘895 Patent.

1390. DeSimone recognized the materiality of the ‘728 Patent to the claims of the ‘895 Patent because he was a named inventor on the ‘728 Patent, he was actively involved in the preparation of and prosecution of the ‘728 Patent, he was a named inventor on the ‘895 Patent, and he was actively involved in preparation and prosecution of the ‘895 Patent. DeSimone knew what was described and claimed in the ‘728 Patent and the ‘895 Patent.

**iv. DeSimone Deliberately Withheld The ‘728 Patent From The Patent Office**

1391. DeSimone deliberately withheld the ‘728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the ‘728 Patent from

the Patent Office.

1392. DeSimone, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '895 Patent and intentionally chose not to include the '728 Patent.

**c. Rolland Specifically Intended To Deceive The Patent Office**

1393. Rolland knew of the '728 Patent, knew that it was material to the '895 Patent, and made a deliberate decision to withhold the '728 Patent from the Patent Office during prosecution of the '895 Patent.

**i. Rolland Owed A Duty To The Patent Office**

1394. Rolland owed a duty to disclose to the Patent Office all information known to him to be material to patentability under 37 C.F.R. §1.56 because he was a named inventor for the '895 Patent.

**ii. Rolland Knew About The '728 Patent**

1395. Rolland knew about the '728 Patent because he was a named co-inventor on the '728 Patent.

**iii. Rolland Recognized The Materiality Of The '728 Patent**

1396. Rolland recognized the materiality of the '728 Patent to the claims of the '895 Patent because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

a. Rolland directed the patent attorney for Defendant to submit at least 500 references to the Patent Office to bury the Examiner in references to inhibit adequate consideration of submitted references or adequate searching for materially relevant references not submitted to the Patent Office, like the '728 Patent.

b. At least twenty-five of these references named Rolland as an inventor so he reasonably knew what they disclosed, and at least twenty-two of those references were not prior art to the '895 Patent.

1397. Rolland recognized the materiality of the '728 Patent to the claims of the '895 Patent because he was a named inventor on the '728 Patent, he was actively involved in the preparation of and prosecution of the '728 Patent, he was a named inventor on the '895 Patent, and he was actively involved in preparation and prosecution of the '895 Patent. Rolland knew what was described and claimed in the '728 Patent and the '895 Patent.

**iv. Rolland Deliberately Withheld The '728 Patent From The Patent Office**

1398. Rolland deliberately withheld the '728 Patent from the Patent Office because he selectively disclosed patents or patent applications to the Patent Office even though he knew those references were either not but-for material or not prior art while withholding the '728 Patent from the Patent Office.

1399. Rolland, on information and belief, supervised and was substantially involved in preparing all IDS submissions during prosecution of the '895 Patent and intentionally chose not to include the '728 Patent.

**Q. <u>The '938 Patent</u>**

**1. Legal Claim XXXVIII**
**Non-Infringement Of The '938 Patent**

1400. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1401. Plaintiff has no burden to produce evidence or to persuade that it has not and does not infringe the '938 Patent; Plaintiff does not adopt any duty to produce evidence or to persuade that it does not infringe the '938 Patent.

1402. Defendant cannot carry its burden that Plaintiff has infringed the '938 Patent either literally or under the doctrine of equivalents and either directly or indirectly.

1403. To the extent Plaintiff has not, in the United States, made, used, sold, offered for sale, or imported into the United States an accused device or accused product, Defendant cannot carry its burden that Plaintiff has infringed the '938 Patent.

1404. Defendant cannot carry its burden to establish that Plaintiff has made, used, sold, offered for sale, or imported into the United States a device or product manufactured by a process

within the scope of any claim of the ‘938 Patent.

**2. Legal Claim XXXIX**
**Invalidity Of Claims Of The ‘938 Patent**

1405. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 - 1120 as if fully set forth herein.

1406. One or more of the claims of the ‘938 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112.

1407. One or more of the claims of the ‘938 Patent are invalid at least under 35 U.S.C. 103 by the ‘330 Patent and the ‘441 Patent.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendant:

A. a judgment that Plaintiff has not infringed any claim of the ‘601 Patent;

B. a judgment that the claims of the ‘601 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

C. a judgment that Plaintiff has not infringed any claim of the ‘142 Patent;

D. a judgment that all claims of the ‘142 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

E. a judgment that Plaintiff has not infringed any claim of the ‘920 Patent;

F. a judgment that all claims of the ‘920 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

G. a judgment that Plaintiff has not infringed any claim of the ‘606 Patent;

H. a judgment that all claims of the ‘606 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

I. a judgment that Plaintiff has not infringed any claim of the ‘963 Patent;

J. a judgment that all claims of the ‘963 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

K. a judgment that the ’963 Patent are unenforceable under 35 U.S.C. § 282;

L. a judgment that Plaintiff has not infringed any claim of the ‘164 Patent;

M. a judgment that all claims of the ‘164 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

N. a judgment that Plaintiff has not infringed any claim of the ‘181 Patent;

O. a judgment that all claims of the ‘181 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

P. a judgment that Plaintiff has not infringed any claim of the ‘066 Patent;

Q. a judgment that all claims of the ‘066 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

R. a judgment that Plaintiff has not infringed any claim of the ‘699 Patent;

S. a judgment that all claims of the ‘699 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

T. a judgment that Plaintiff has not infringed any claim of the ‘880 Patent;

U. a judgment that all claims of the ‘880 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

V. a judgment that the ’880 Patent are unenforceable under 35 U.S.C. § 282;

W. a judgment that Plaintiff has not infringed any claim of the ‘856 Patent;

X. a judgment that all claims of the ‘856 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

Y. a judgment that Plaintiff has not infringed any claim of the ‘868 Patent;

Z. a judgment that all claims of the ‘868 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

AA. a judgment that the ’868 Patent are unenforceable under 35 U.S.C. § 282;

BB. a judgment that Plaintiff has not infringed any claim of the ‘516 Patent;

CC. a judgment that all claims of the ‘516 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

DD. a judgment that Plaintiff has not infringed any claim of the ‘342 Patent;

EE. a judgment that all claims of the ‘342 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

FF. a judgment that the ‘342 Patent are unenforceable under 35 U.S.C. § 282;

GG. a judgment that Plaintiff has not infringed any claim of the ‘073 Patent;

HH. a judgment that all claims of the ‘073 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

II. a judgment that Plaintiff has not infringed any claim of the ‘895 Patent;

JJ. a judgment that all claims of the ‘895 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

KK. a judgment that all claims of the ‘895 Patent are unenforceable under 35 U.S.C. § 282;

LL. a judgment that Plaintiff has not infringed any claim of the ‘938 Patent;

MM. a judgment that all claims of the ‘938 Patent are invalid at least under 35 U.S.C. sections 101, 102, 103, and 112;

NN. a declaration that this an exceptional case under 35 U.S.C. § 285 and awarding Plaintiff its attorneys’ fees, costs, and expenses incurred in this action;

OO. an award to Plaintiff of its costs and disbursements; and

PP. an award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues so triable.

Date: July 17, 2026

RIMON, P.C.

By: /s/Michael F. Heafey
Michael F. Heafey (SBN 153499)
michael.heafey@rimonlaw.com
Zheng Liu (SBN 229311)
zheng.liu@rimonlaw.com
545 Middlefield Road, Suite 250
Menlo Park, California 94025
Telephone: (650) 461-4433
Facsimile: (650) 461-4433

John E. Handy (admitted *pro hac vice*)

john.handy@rimonlaw.com
8484 Westpark Drive, Suite 810
McLean, Virginia 22102
Telephone: (703) 559-7360
Facsimile: (703) 559-7360
Email: john.handy@rimonlaw.com

*Attorneys for Plaintiff, LuxCreo Inc.*